**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SEAKEEPER, INC.,** | |
| Plaintiff, | |
| v. | Case No.: 1:26-cv-01332-MJM |
| **STARBOARD YACHT GROUP**, **LLC,** | |
| Defendant. | |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 11

ARGUMENT .......................................................................................................................... 11

    I.      INJUNCTIVE RELIEF IS PROPER. ................................................................... 11

          A.     Seakeeper Has a Strong Likelihood of Success on Its Claims. ................. 11

               1.     Defendant's Unauthorized Use of Seakeeper Marks Following Termination of the Agreement and Ride Agreement. ..................................................................................... 12

               2.     Defendant's Continued Unauthorized Use of the Seakeeper Marks Is Highly Likely to Create Confusion Given Defendant's Former Authorized Dealer Status............................. 14

          B.     Seakeeper Will Suffer Irreparable Harm from Defendant's Continued Unauthorized Use of the Seakeeper Marks and Breach of Its Post-Termination Obligations. .................................................. 15

          C.     The Balance of Equities Strongly Favors Granting a Preliminary Injunction and Temporary Restraining Order. ........................................... 17

          D.     A Temporary Restraining Order and Preliminary Injunction Would Be in the Public Interest. ............................................................... 18

    II.     THE COURT SHOULD FIX A NOMINAL INJUNCTION BOND. ................... 19

    III.    THE COURT SHOULD ORDER DEFENDANT'S LANDLORDS AND INTERNET SERVICE PROVIDERS TO REMOVE INFRINGING CONTENT FROM DEFENDANT'S STOREFRONTS, WEBSITE, AND SOCIAL MEDIA ACCOUNTS. ............................................................................ 19

CONCLUSION ....................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ark. Best Corp. v. Carolina Freight Corp.*,
   60 F. Supp. 2d 517 (W.D.N.C. 1999)..................................................................................19

*Australian Gold, Inc. v. Hatfield*,
   436 F.3d 1228 (10th Cir. 2006) .........................................................................................14

*Bose Corp. v. Chen*,
   2013 WL 12137836 (D. Mass. Aug. 19, 2013) ................................................................20

*BSN Med., Inc. v. Witkowski*,
   2008 WL 11511454 (W.D.N.C. Nov. 21, 2008) ..............................................................14

*Burger King Corp. v. Mason*,
   710 F.2d 1480 (11th Cir. 1983) .........................................................................................14

*Church of Scientology, Int'l v. Elmira Mission of the Church of Scientology*,
   794 F.2d 38 (2d Cir. 1986).............................................................................................15, 16

*DISH Network, LLC v. Dima Furniture, Inc.*,
   2019 WL 2498224 (D. Md. June 17, 2019)......................................................................19

*Fairbanks Cap. Corp. v. Kenney*,
   303 F. Supp. 2d 583 (D. Md. 2003) ..................................................................................15

*Future Motion, Inc. v. Lai*,
   2023 WL 11113647 (D. Or. Dec. 29, 2023)......................................................................20

*Helene Curtis Indus., Inc. v. Church & Dwight Co.*,
   560 F.2d 1325 (7th Cir. 1977) ...........................................................................................17

*Heron Enterprises, LLC v. Starboard Yacht Group LLC*,
   ECF 1, Case No. 25-cv-61374 (S.D. Fla. July 7, 2025)......................................................4

*Hershey Co. v. Friends of Steve Hershey*,
   33 F. Supp. 3d 588 (D. Md. 2014) ....................................................................................17

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
   174 F.3d 411 (4th Cir. 1999) .............................................................................................19

*ICENY USA, LLC v. M & M's, LLC*,
   421 F. Supp. 3d 204 (D. Md. 2019) ....................................................................... 14, 16, 18

*J.O.P. v. U.S. Dep't of Homeland Security*,
   2019 WL 3536786 (D. Md. Aug. 2, 2019) .......................................................................11

*JFJ Toys, Inc. v. Sears Holding Corp.*,
    237 F. Supp. 3d 311 (D. Md. 2017) ......................................................................... 11

*Ledo Pizza Sys., Inc. v. Singh*,
    983 F. Supp. 2d 632 (D. Md. 2013) ........................................................................ 18

*Merry Maids Ltd. Partnership v. Kamara*,
    33 F. Supp. 2d 443 (D. Md. 1998) ............................................................... 14, 15, 18

*Millennium Funding, Inc. v. Doe*,
    2021 WL 5217018 (E.D. Va. Oct. 15, 2021)............................................................ 17

*NaturaLawn of Am., Inc. v. W. Grp., LLC*,
    484 F. Supp. 2d 392 (D. Md. 2007) ........................................................................ 11

*Otter Prods., LLC v. Anke Grp. Indus. Ltd.*,
    2013 WL 5910882 (D. Nev. Jan. 8, 2013)............................................................... 20

*Real Truth About Obama v. Fed. Election Comm'n*,
    575 F.3d 342 (4th Cir. 2009) .................................................................................. 11

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) .................................................................................. 15

*Starboard Yacht Grp. LLC v. M/V Octopussy*,
    Case No. 23-cv-61696 (S.D. Fla. Feb. 20, 2026) ...................................................... 4

*Sterling Acceptance Corp. v. Tommark, Inc.*,
    227 F. Supp. 2d 454 (D. Md. 2002) ........................................................................ 12

*Toolchex, Inc. v. Trainor*,
    634 F. Supp. 2d 586 (E.D. Va. 2008)................................................................. 17, 18

*Travelers Cas. & Sur. Co. of Am. v. C.R. Calderon Constr., Inc.*,
    2017 WL 2256600 (D. Md. May 22, 2017)............................................................... 17

*Under Armour, Inc. v. Exclusive Innovations, Inc.*,
    2021 WL 2042320 (D. Md. May 21, 2021)............................................................... 15

*Vivere Adventures, Ltd. v. Starboard Yacht Grp., LLC*,
    Case No. 25-cv-61065 (S.D. Fla. June 24, 2025)....................................................... 4

*Winter v. Natural Res. Def. Council, Inc.*,
    129 S. Ct. 365 (2008)............................................................................................. 11

*Wudi Indus. (Shanghai) Co. v. Wong*,
    143 F.4th 250 (4th Cir. 2025).................................................................................. 18

**Statutes, Rules & Regulations**

15 U.S.C. § 1116(a) ................................................................................................................ 15

Fed. R. Civ. P. 65(c) ............................................................................................................... 19

Fed. R. Civ. P. 65(d)(2)(C) ..................................................................................................... 20

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Seakeeper, Inc. ("Seakeeper") moves this Court for a temporary restraining order and preliminary injunction. In support, Seakeeper states as follows:

## **INTRODUCTION**

Defendant, Starboard Yacht Group LLC ("Defendant" or "SYG"), is a former licensee that continues to unlawfully use Seakeeper's marks even after its license agreement with Seakeeper was validly terminated. As an illegal holdover licensee, Defendant's continued unlawful use of Seakeeper's marks offers consumers the incorrect impression that Defendant remains authorized to sell and service Seakeeper marine products. Defendant also continues to describe itself online as "Seakeeper-certified" and a "Seakeeper Dealer," in plain defiance of its post-termination duty to refrain from making any statements suggesting continued affiliation with Seakeeper. Defendant has refused to remove the infringing and unlawful online content even after repeated demands from Seakeeper and the filing of this lawsuit.

Defendant's infringement of Seakeeper's trademark is a clear violation of the Lanham Act and the dealer agreements, and Seakeeper's success on the merits is highly likely. Seakeeper is suffering irreparable injury from the loss of control over its valuable mark and good name as a leading manufacturer of marine motion control technology. The harm to Seakeeper is particularly acute here, where Defendant is a former licensee, and Defendant's continued use of Seakeeper's marks inevitably results in customer confusion. To protect Seakeeper from further irreparable harm, the Court should enter an order enjoining Defendant from using Seakeeper's marks and directing Defendant's landlords and internet service providers to remove the infringing content from Seakeeper's store premises and internet pages, respectively.

## BACKGROUND

### I.    The Parties

Seakeeper has manufactured marine gyro stabilizers since 2008 and is the world leader in marine motion control technology. **Exhibit 1**, Declaration of Michael Hand ("Hand Decl."), ¶ 2. Seakeeper products eliminate boat roll and pitch, resulting in a smoother boating experience. *Id.* And, through continuous and extensive use in commerce for the past 18 years, Seakeeper has developed substantial goodwill and valuable common law trademark rights in the Seakeeper name and associated marks. *Id.* ¶ 3. Seakeeper owns and has applied to register multiple United States trademarks incorporating the Seakeeper name and mark (collectively with the common law trademark rights, the "Seakeeper Marks"), including word marks, stylized marks, and composite marks used in connection with its products and services. *Id.* ¶ 4; Compl., ECF 1, ¶ 11. Seakeeper's extensive use and promotion of the Seakeeper Marks have resulted in substantial goodwill and widespread recognition, rendering the marks strong and distinctive. Ex. 1, Hand Decl., ¶ 4.

Defendant Starboard Yacht Group, LLC provides maintenance, repair, and upgrade services for boats. Relevant here, Defendant is a former authorized dealer of Seakeeper products who, after valid and lawful termination, continues to breach its contracts with Seakeeper and infringe Seakeeper's Marks. *See generally* Compl., ECF 1.

### II.    The Agreements

The parties entered into two agreements authorizing Defendant to sell Seakeeper products. On April 12th, 2019, the parties entered into a Certified Dealer Non-Exclusive Agreement (the "Agreement"), in which Seakeeper appointed Defendant as an authorized Seakeeper dealer and agreed that Defendant could sell, install, and service Seakeeper gyro stabilizer products for the

2

term of the Agreement. *See* Ex. 1, Hand Decl., ¶ 6; Agreement, ECF 3, ¶ 8.[1] As part of the Agreement, Defendant was granted a limited, non-exclusive, non-transferable, and non-sublicensable license to use Seakeeper's trademarks during the term of the Agreement. *See* ECF 3, ¶ 52.

The terms of the Agreement permit termination (1) by written notice that a party wishes not to extend the term of the Agreement another year, at least 60 days before the end of the term; or (2) by written notice, at any time, for cause. *See* ECF 3, ¶¶ 71-72. The Agreement sets forth numerous grounds for termination for cause, including, among other grounds, if Defendant "conducts itself or its business so as to adversely affect the good name, reputation or goodwill" of Seakeeper. *Id*. ¶ 72.4.

Pursuant to the Agreement, upon termination, Defendant agreed it "shall immediately":

(i)      "Cease and refrain from the sale, promotion and offering of the Products";

(ii)     Return to Seakeeper "any promotional materials associated with the Products";

(iii)    "Cease use of all Trademarks and remove them from all signs, advertising, letterheads, Web sites and other materials on which they may appear" and "discontinue all representations from which it might be inferred that any relationship exists between the parties"; and

(iv)     "Surrender to [Seakeeper] . . . trademark . . . registrations . . . which DEALER may have obtained in connection with the products," among other actions.

*Id*. ¶¶ 75.1 to 75.4.

On February 2, 2024, the parties entered into another agreement, the Seakeeper Ride Certified Dealer Agreement (the "Ride Agreement"), in which Seakeeper appointed Defendant as an authorized dealer of Seakeeper Ride products, a line different from Seakeeper's gyro stabilizers. *See* Ex. 1, Hand Decl., ¶ 7; Ride Agreement, ECF 4, ¶ 2. The Ride Agreement is otherwise

---

[1] The Agreements at issue were filed conditionally under seal at ECF 1-1 and ECF 1-2 on April 3, 2026. *See* Motion to Seal Exhibits, ECF 5 (Apr. 3, 2026), which remains pending.

substantially similar to the Agreement, providing for similar duties, licensing, termination provisions, and post-termination obligations. *See* Compl., ECF 1, ¶¶ 21-27 (describing the nearly identical provisions in the Ride Agreement).

## III.    The Terminations

Beginning in approximately June 2024, Seakeeper began receiving complaints from customers regarding Defendant. Ex. 1, Hand Decl., ¶ 8. Specifically, from June 2024 to December 2024, more than ten customers reached out to Seakeeper to state they had given deposits to Defendant for Seakeeper products and to ask why the products had not yet been shipped by Seakeeper. *Id.* Upon investigation, Seakeeper had no record of Defendant ever placing product orders with Seakeeper on behalf of those customers, despite Defendant collecting customer deposits. *Id.* From June 2024 to December 2024, Seakeeper also received complaints from customers regarding Defendant's work quality. *Id.* ¶ 9. Specifically, customers reported to Seakeeper that Defendant had left customers' Seakeeper products half-installed, had repaired or installed Seakeeper products incorrectly, and had failed to complete necessary warranty repairs on Seakeeper products. *Id.*[2]

From June 2024 to December 2024, Seakeeper's sales team attempted to work with

---

[2] Default judgments have been entered against Defendant in cases brought by customers alleging similar circumstances. For example, in *Vivere Adventures, Ltd. v. Starboard Yacht Group LLC*, Vivere alleged it paid Defendant over $78,000 to install a Seakeeper on Vivere's vessel, but that Defendant never installed the Seakeeper product, otherwise damaged the vessel, and failed to "provide proof that it actually ordered the Seakeeper with the monies provided by VIVERE." *See* Amend. Compl., ECF 6, *Vivere Adventures, Ltd. v. Starboard Yacht Grp., LLC*, Case No. 25-cv-61065 (S.D. Fla. June 24, 2025); *see also* Final Default Judgment, ECF 38, *Vivere Adventures, Ltd. v. Starboard Yacht Grp., LLC*, Case No. 25-cv-61065 (S.D. Fla. Jan. 14, 2026). Similarly, in another lawsuit, the court entered a default judgment against Defendant, finding counter-plaintiff had paid Defendant more than $786,000 to purchase and install three Seakeeper units, which Defendant failed to deliver. *See* Order, ECF 299, *Starboard Yacht Grp. LLC v. M/V Octopussy*, Case No. 23-cv-61696 (S.D. Fla. Feb. 20, 2026). Another plaintiff alleged Defendant conducted a similar scheme involving Humphree marine products, in *Heron Enterprises, LLC v. Starboard Yacht Group LLC*, ECF 1, Case No. 25-cv-61374 (S.D. Fla. July 7, 2025).

Defendant to remedy the customer complaints and improve Defendant's work quality and financial practices as a Seakeeper dealer—to no avail. *Id.* ¶ 10. On December 2, 2024, Seakeeper terminated for cause the Agreement and Ride Agreement and, along with them, Defendant's status as an authorized dealer due to Defendant's actions in conducting its business so as to adversely affect the good name, reputation, and goodwill of Seakeeper.[3] *Id.* ¶ 11 & **Exhibit 2**, 12/2/24 Termination Letter. More specifically, Seakeeper terminated the Agreements based on Defendant's "misalignment with Seakeeper's mission and core values" and a "persistent lack of transparent communication," among other reasons. Ex. 1, Hand Decl., ¶ 12. As of the dates of termination, Defendant became a former licensee and was no longer authorized to use the Seakeeper Marks or to promote, represent an affiliation with, or sell Seakeeper products or services in any capacity whatsoever.

### IV.    Defendant's Continued Unlawful Conduct

In February 2025, months after the Seakeeper Agreement was terminated, Seakeeper was alerted that Defendant collected money on an extended warranty relating to a Seakeeper product. Ex. 1, Hand Decl., ¶ 14. Seakeeper contacted Defendant and agreed to process the order related to the warranty but informed Defendant that any further orders would not be accepted. *Id.* Seakeeper reminded Defendant that it was no longer an authorized Seakeeper dealer. *Id.* Seakeeper also demanded that Defendant comply with the Agreements and remove all Seakeeper material from its website. *Id.*

Defendant refused to comply, necessitating a series of cease-and-desist letters from Seakeeper. *Id.* ¶ 15. On July 9, 2025, Seakeeper again demanded that Defendant remove all

---

[3] Seakeeper inadvertently failed to expressly include the Ride Agreement in its December 2, 2024 notice to Defendant terminating the parties' agreements. Ex. 1, Hand Decl., ¶ 13. Seakeeper thereafter formally terminated the Ride Agreement with Defendant on February 11, 2026. *Id.*

Seakeeper material from its website, cease attempts to procure Seakeeper products to sell, refrain from representing itself as affiliated with or endorsed by Seakeeper, and provide Seakeeper with written confirmation of the same. *See id.* ¶ 16 & **Exhibit 3**, 7/9/25 Letter. Defendant again refused to comply. Ex. 1, Hand Decl., ¶ 16. On October 30, 2025, Seakeeper again demanded that Defendant cease its breaching and infringing conduct. *Id.* ¶ 17 & **Exhibit 4**, 10/30/25 Letter. Again, Defendant refused. Ex. 1, Hand Decl., ¶ 17. And on February 11, 2026, and March 4, 2026, Seakeeper yet again demanded that Defendant cease its breaching and infringing conduct under both the terminated Agreement and the terminated Ride Agreement. *See id.* ¶¶ 18-19; **Exhibit 5**, 2/11/26 Letter; **Exhibit 6**, 3/4/26 Letter. Defendant refused, forcing Seakeeper to initiate this lawsuit for trademark infringement, false designation of origin, unfair competition, and breach of contract. *See* Compl., ECF 1.

Defendant was served with Seakeeper's Complaint on April 10, 2026. *See* Return of Service, ECF 9. Despite this, as of the date of this Motion, Defendant continues to prominently display Seakeeper Marks on its website and falsely hold itself out as an authorized Seakeeper dealer. Ex. 1, Hand Decl., ¶ 21. For example, Defendant's home page features the following:



*Id.* ¶ 22.

Defendant also continues to maintain dedicated pages on its website for Seakeeper Ride products:



*Id.* ¶ 23.

Defendant also continues to falsely represent itself as a "Certified Seakeeper Dealer" and a Seakeeper "Dealer of the Year":





*Id.* ¶ 24.

Defendant further falsely represents on its website that it is a "trusted Seakeeper-certified service center" and "partner" with Seakeeper and purports to offer "Seakeeper stabilizer services and repairs," including "Annual Seakeeper Services," "Seakeeper Repairs," "Seakeeper Trade-ins," and "Extended Seakeeper Warranties":





## Upkeep your Seakeeper. Keep up your experience.

When it comes to maintaining your Seakeeper gyro stabilizer, Starboard Yacht Group is your trusted Seakeeper-certified service center. We offer a full range of Seakeeper services—from annual inspections to complete system repairs—ensuring your yacht remains stable and comfortable on the water. Our experienced technicians in Fort Lauderdale, Dania Beach, Fort Pierce, West Palm Beach, Key Largo, and across South Florida are equipped to handle any Seakeeper issue, upgrade, or trade-in, allowing you to enjoy your time on the water without interruptions.

Beyond installations, Starboard Yacht Group offers:

- Annual Seakeeper Services
- Seakeeper Repairs
- Seakeeper Trade-ins
- Extended Seakeeper Warranties
- Water Pump Upgrades
- Dry Box Upgrades

 **Stabilization Transformations**

Stabilization is the greatest marine innovation of our lifetime, and Starboard partners with industry leaders Seakeeper and Humphree to uplift your experience with it. Ensure your stability, safety, and serenity both at rest and underway with minimal compromises.

**Explore Stabilizer Upgrades**

*Id.* ¶ 25.

Defendant also infringes Seakeeper's Marks on its social media accounts, continuing to suggest he is an authorized Seakeeper dealer despite termination:



*Id.* ¶ 26.

Defendant also continues to display signage that includes Seakeeper's Marks. For example, based upon a photograph depicted on Defendant's website, Defendant displays a Seakeeper Mark on the front exterior of its location in Fort Pierce, Florida:



Defendant is a textbook holdover licensee. Seakeeper has repeatedly requested that Defendant stop breaching the Agreements and infringing on Seakeeper's Marks. But Defendant refuses, forcing Seakeeper to seek immediate injunctive relief to prevent further irreparable harm

10

and loss of control over its business reputation and valuable marks. For the below reasons, the Court should enter a temporary restraining order and preliminary injunction.

## LEGAL STANDARD

To obtain preliminary injunctive relief, the plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that the injunction is in the public interest." *Real Truth About Obama v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)). The standard is the same for a temporary restraining order. *J.O.P. v. U.S. Dep't of Homeland Security*, 2019 WL 3536786, at *4 (D. Md. Aug. 2, 2019).

## ARGUMENT

### I.      INJUNCTIVE RELIEF IS PROPER.

"Violation of a trademark is a claim especially suited to injunctive relief because it can result in irreparable harm where there is an inherent injury to the goodwill and reputation of the plaintiff." *NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484 F. Supp. 2d 392, 401 (D. Md. 2007). The Court should grant the requested temporary restraining order and preliminary injunction to enjoin further irreparable harm to Seakeeper from Defendant's unauthorized use of its valuable protected marks.

#### A.      Seakeeper Has a Strong Likelihood of Success on Its Claims.

Defendant's continued willful and unauthorized use of Seakeeper Marks is in clear violation of federal trademark law, Maryland common law of unfair competition, and the parties' agreements. To establish a claim of trademark infringement under the Lanham Act, a plaintiff must prove that it owns a valid and protectable mark and that the defendant's unauthorized use of that mark creates a likelihood of confusion. *JFJ Toys, Inc. v. Sears Holding Corp.*, 237 F. Supp. 3d

311, 327 (D. Md. 2017). "[T]he test for . . . unfair competition under Maryland law is the same as that under the Lanham Act, namely proof of the likelihood of confusion." *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 466 (D. Md. 2002).

### 1. Defendant's Unauthorized Use of Seakeeper Marks Following Termination of the Agreement and Ride Agreement.

Defendant and Seakeeper entered into the Agreement and the Ride Agreement (together, the "Agreements") to allow Defendant to sell, install, and service Seakeeper and Seakeeper Ride products as an authorized dealer. ECF 3, ¶ 8; ECF 4, ¶ 2. The Agreements granted Defendant a limited license to use the Seakeeper Marks during the term of the Agreements, with the licenses to expire automatically upon termination of the Agreements. ECF 3, ¶¶ 52, 75; ECF 4, ¶¶ 30, 55. The Agreements required Defendant, as an authorized dealer, to use its best efforts to promote and sell Seakeeper products and enhance the goodwill and reputation of Seakeeper. ECF 3, ¶ 19; ECF 4, ¶ 13. The Agreements allowed Seakeeper to terminate for cause if Defendant "conduct[ed] itself or its business so as to adversely affect the good name, reputation or goodwill" of Seakeeper. ECF 3, ¶ 72.4; ECF 4, ¶ 52.2.

Beginning in approximately June 2024, Seakeeper began receiving complaints from customers that Defendant had taken deposits for the purchase of Seakeeper products but had never placed those orders with Seakeeper. Ex. 1, Hand Decl., ¶ 8. Customers also complained about the quality of Defendant's work on their vessels, such as leaving Seakeeper products incompletely or incorrectly installed and failing to complete necessary warranty repairs. *Id.* ¶¶ 8-9. After attempting to work with Defendant for nearly six months to remedy these customer complaints, Seakeeper ultimately terminated the Agreements on December 2, 2024 and February 11, 2026, respectively, citing various deficiencies in how Defendant was conducting its business that reflected poorly on Seakeeper and undermined its goodwill and reputation. *Id.* ¶¶ 10-11. These

included Defendant's failure to understand Seakeeper's service processes, impacting operational efficiency, a misalignment with Seakeeper mission and core values, Defendant's lack of communication with Seakeeper, Defendant's failure to timely provide required information within agreed-upon timelines, Defendant's consistent year-over-year decline in sales, and Defendant's financial obligations consistently exceeding provided credit limits. *Id.* ¶ 12.

The Agreements provided that Defendant's license to use the Seakeeper Marks would "terminate automatically" upon termination of the Agreements for any reason. ECF 3, ¶ 52; ECF 4, ¶ 30. In the event of termination for any reason, Defendant was required to "immediately" cease and refrain "from the sale, promotion and offering of the Products" and to stop using the Seakeeper Marks "and remove them from all signs, advertising, letterheads, Web sites and other materials on which they may appear." ECF 3, ¶¶ 75.1 & 75.3; ECF 4, ¶¶ 55.1 & 55.2. In addition, in the event of termination, Defendant was required to discontinue all representations "from which it might be inferred that any relationship exists between the parties." ECF 3, ¶ 75.3; ECF 4, ¶ 55.2.

"[I]mmediately" upon termination of the Agreements, Defendant became a former licensee and was no longer authorized to use the Seakeeper Marks, represent any affiliation with Seakeeper, or sell Seakeeper products. ECF 3, ¶ 75; ECF 4, ¶ 55. Nevertheless, despite four written demands and formal receipt of Seakeeper's Complaint, Defendant has refused to remove materials containing the Seakeeper Marks from its physical signage, website, and social media accounts and to refrain from representing itself as affiliated with or endorsed by Seakeeper. Compl., ECF 1, ¶¶ 30-39; Ex. 1, Hand Decl., ¶¶ 11-21. Defendant continues to prominently display the Seakeeper Marks and falsely represents itself as "Seakeeper-certified" and a "Seakeeper Dealer" on its website and social media accounts. Ex. 1, Hand Decl., ¶¶ 21-26. These are plain and clear

13

infringements on Seakeeper's valuable protected marks and violations of Defendant's post-termination duties under the Agreements.

> **2.    Defendant's Continued Unauthorized Use of the Seakeeper Marks Is Highly Likely to Create Confusion Given Defendant's Former Authorized Dealer Status.**

Courts in the Fourth Circuit have long recognized that in holdover licensee cases, the risk of confusion is presumed:

> In the context of franchise cases specifically, courts have found a high risk of consumer confusion when a terminated franchisee continues to use the former franchisor's trademarks. *See, e.g.*, *Merry Maids Ltd. Partnership v. Kamara*, 33 F. Supp. 2d 443, 445 (D. Md. 1998) (collecting cases). This potential for confusion is particularly acute following the termination of a franchisor-franchisee relationship because of the parties' past affiliation and the ease of their association in the public's mind. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks"). Because "[a]ny shortcomings of the franchise" would be attributed to the franchisor, "continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement." *Id.* at 1493.

*ICENY USA, LLC v. M & M's, LLC*, 421 F. Supp. 3d 204, 217 (D. Md. 2019); *see also BSN Med., Inc. v. Witkowski*, 2008 WL 11511454, at *2 (W.D.N.C. Nov. 21, 2008) ("[A] former distributor's use of a trademark that falsely suggests it is part of a manufacturer's authorized dealer network creates consumer confusion and constitutes infringement.") (citing *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238-41 (10th Cir. 2006)).

Defendant's status as a former authorized Seakeeper dealer will cause confusion so long as Defendant continues to display the Seakeeper Marks, sell Seakeeper products, and hold itself out as a certified dealer in violation of the Lanham Act, Maryland common law of unfair competition, and the parties' Agreements. Seakeeper therefore has a strong likelihood of success on its claims for trademark infringement, unfair competition, and breach of the Agreements.

14

**B.      Seakeeper Will Suffer Irreparable Harm from Defendant's Continued Unauthorized Use of the Seakeeper Marks and Breach of Its Post-Termination Obligations.**

A plaintiff seeking a temporary restraining order or preliminary injunction for trademark infringement is "entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits" for a violation of the Lanham Act.[4] 15 U.S.C. § 1116(a). Because customer confusion is presumed in a holdover licensee case such as this (*see supra* I.A.2), Seakeeper has similarly established the requisite irreparable harm. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002) ("[A] presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion."); *Church of Scientology, Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 43 (2d Cir. 1986) ("[A] licensor who establishes a likelihood of confusion as to product source in a trademark infringement suit simultaneously demonstrates the requisite irreparable harm essential to obtaining a preliminary injunction."); *Fairbanks Cap. Corp. v. Kenney*, 303 F. Supp. 2d 583, 590 (D. Md. 2003) ("The irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is enormous, immediate, and presumed in law."). Irreparable harm is presumed because there is "no meaningful monetary recovery available" for the "inherent injury to the good will and reputation of the plaintiff" caused by trademark infringement. *Merry Maids L.P. v. Kamara*, 33 F. Supp. 2d 443, 445 (D. Md. 1998).

"[A] licensor's plea for injunctive relief is stronger than the ordinary trademark plaintiff's," because "irreparable harm **always** flows from unlawful use and confusion" in the context of a holdover licensee, whom consumers will assume remains associated with the plaintiff. *Church of*

---

[4] "This recent amendment to the Lanham Act was meant to codify the presumption already recognized by many courts in trademark infringement cases." *Under Armour, Inc. v. Exclusive Innovations, Inc.*, 2021 WL 2042320, at *6 (D. Md. May 21, 2021).

*Scientology*, 794 F.2d at 43 (emphasis in original). That is equally true here: Defendant's status as a former authorized dealer makes consumers especially likely to believe—incorrectly—that Defendant remains affiliated with Seakeeper. Consumers visiting Defendant's website, social media accounts, and physical locations are falsely led to believe that Defendant is still a licensed dealer of Seakeeper products and that Defendant is authorized to provide the repairs, trade-ins, upgrades, and extended Seakeeper warranty services that Defendant continues to advertise. Ex. 1, Hand Decl., ¶ 27. Seakeeper's valuable customer goodwill, name, and brand loyalty—built over nearly two decades—is irreparably harmed each time a customer takes its vessel to Defendant and receives Seakeeper products and/or services from Defendant, whose quality—deficiencies in which caused Seakeeper to terminate the relationship—is no longer overseen or controlled by Seakeeper. *Id.* ¶¶ 2, 3, 28; *see also, e.g.*, *ICENY USA, LLC*, 421 F. Supp. 3d at 222 (reasoning that because plaintiff no longer had "control over the nature and quality of the goods or service being offered," its reputation and goodwill would be irreparably damaged "if customers are dissatisfied but do not recognize that Defendants' business is no longer a member of [plaintiff's] franchise network"). Moreover, Defendant's continued conduct "also imposes irreparable harm because it signals to other [licensees] that their agreements can be violated without consequences." *ICENY USA, LLC*, 421 F. Supp. 3d at 222.

Denying a preliminary injunction in this context perpetuates continued customer confusion and improperly "puts the [licensor's] reputation beyond its own control." *Church of Scientology*, 794 F.2d at 44. Seakeeper needs immediate injunctive relief to restore control over its valuable protected marks and prevent further irreparable harm to its good name.

C.    **The Balance of Equities Strongly Favors Granting a Preliminary Injunction and Temporary Restraining Order.**

Defendant will experience no unfair hardship as a result of being ordered to cease infringement of the Seakeeper Marks and comply with its post-termination obligations under the Agreements. "[A]ny harm that a party suffers as a result of being required to stop willfully infringing on another party's trademark carries 'little' weight in evaluating the balance of hardships." *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) (citing *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977)). In fact, the infringer's alleged hardship of compliance "does not affect the balancing of interests" whatsoever. *Millennium Funding, Inc. v. Doe*, 2021 WL 5217018, at *14 (E.D. Va. Oct. 15, 2021). Likewise, "requiring a party to comply with its contractual obligations does not constitute harm" that might militate against an injunction. *Travelers Cas. & Sur. Co. of Am. v. C.R. Calderon Constr., Inc.*, 2017 WL 2256600, at *5 (D. Md. May 22, 2017) (quoting *Toolchex*, 634 F. Supp. 2d at 593).

Defendant's infringing conduct threatens to cause substantial and irreparable harm to the strong reputation and goodwill that Seakeeper has carefully built over nearly two decades. Compl., ECF 1, ¶ 7. By contrast, Defendant will not suffer any cognizable injury if a preliminary injunction and temporary restraining order against further infringement and breach of contract are issued. Any alleged harm Defendant may face from having to discontinue unlawful practices "will have been self-inflicted" and is categorically "outweighed by the damage done by the trademark infringement." *Hershey Co. v. Friends of Steve Hershey*, 33 F. Supp. 3d 588, 596 (D. Md. 2014); *see also Millennium Funding*, 2021 WL 5217018, at *14 (granting injunction where "the only 'hardship' [defendant] would suffer" was "the requirement to follow clearly established trademark law and to cease . . . its unlawful [conduct]"). The balance of equities weighs strongly in favor of

17

enforcing Seakeeper's rights and preventing further irreparable harm to its goodwill and reputation.

### D. A Temporary Restraining Order and Preliminary Injunction Would Be in the Public Interest.

"[T]he public has a strong interest in avoiding consumer confusion about the identity of the enterprise from which goods and services are purchased." *Ledo Pizza Sys., Inc. v. Singh*, 983 F. Supp. 2d 632, 640 (D. Md. 2013) (quoting *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008)). "Preventing consumers from being confused serves the public interest . . . as does preventing trademarks from being used deceptively . . . [and] protecting the interests of trademark owners." *Toolchex*, 634 F. Supp. 2d at 594; *see also Wudi Indus. (Shanghai) Co. v. Wong*, 143 F.4th 250, 261 (4th Cir. 2025) ("preventing consumer confusion" is an "important factor[] that [is] consistent with the public interest"); *Merry Maids L.P.*, 33 F. Supp. 2d at 446 ("Preventing infringement . . . serves the public interest in preventing consumer confusion."). The public's "strong interest" in avoiding further confusion about Defendant's affiliation with Seakeeper and license to sell and service Seakeeper products warrants immediate injunctive relief against further infringement.

It is also "in the public interest to . . . enforce valid contracts," especially those governing rights and duties regarding valuable trademarks. *ICENY USA, LLC*, 421 F. Supp. 3d at 223. That includes enforcing Defendant's obligations under the Agreements to cease use of the Seakeeper Marks, including on its physical signage, website, and social media accounts; refrain from acquiring, selling, and servicing Seakeeper products; and forgo making any representations which may infer a relationship between Seakeeper and Defendant. Compl., ECF 1, ¶¶ 64, 70. The public interest would be well-served by enforcing these obligations through immediate injunctive relief.

## II.    THE COURT SHOULD FIX A NOMINAL INJUNCTION BOND.

Federal Rule of Civil Procedure 65(c) requires a district court to fix a bond whenever it grants a preliminary injunction or temporary restraining order. The district court is vested "with wide discretion in determining the amount of an injunction bond" and, in setting the amount, "should be guided by the purpose underlying Rule 65(c)," which serves "to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Ark. Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 521 (W.D.N.C. 1999) (citing *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999)). "Where the district court determines that the risk of harm is remote . . . a nominal bond may suffice." *Id.* An injunction "is likely to be upheld," and a nominal bond is appropriate, in holdover licensee cases "given that prima facie proof of trademark infringement raises a presumption of injury and harm[.]" *Id.* (fixing nominal bond of $100 for preliminary injunction).

Seakeeper's strong likelihood of success on the merits of its trademark infringement, unfair competition, and breach of contract claims warrants setting a nominal bond of no more than $100 for a preliminary injunction and temporary restraining order.

## III.    THE COURT SHOULD ORDER DEFENDANT'S LANDLORDS AND INTERNET SERVICE PROVIDERS TO REMOVE INFRINGING CONTENT FROM DEFENDANT'S STOREFRONTS, WEBSITE, AND SOCIAL MEDIA ACCOUNTS.

Defendant willfully continues to unlawfully use Seakeeper's Marks on its storefronts, website, and social media accounts despite repeated demands to cease infringement. In addition to an order enjoining Defendant from further infringement and breach of contract, the Court should direct Defendant's internet service providers to remove the infringing online content. *See DISH Network, LLC v. Dima Furniture, Inc.*, 2019 WL 2498224, at *8 (D. Md. June 17, 2019) (finding internet service provider to be acting in "active concert or participation" with infringing defendant

19

within meaning of Federal Rule of Civil Procedure 65(d)(2)(C) and ordering ISP to remove infringing online content, because defendant "depend[ed] on" the ISP's service and "[w]ithout access to [ISP]'s servers, [defendant]'s infringing activities will be hindered").[5] The Court should enter a similar order here to ensure false online statements and unauthorized use of Seakeeper's valuable protected marks are brought to an end. And for the same reasons, the Court should also direct Defendant's landlords to remove from Defendant's storefronts and buildings any signage bearing the Seakeeper Marks that Defendant fails to take down.

## **CONCLUSION**

The Court should grant Seakeeper's motion for a temporary restraining order and preliminary injunction enjoining Defendant's further infringement of the Seakeeper Marks and further violation of its post-termination obligations. The order should direct Defendant's internet service providers and landlords to remove any infringing content that Defendant fails to take down. A proposed Temporary Restraining Order and Preliminary Injunction is being submitted herewith.

---

[5] Courts elsewhere have similarly entered preliminary injunctions requiring ISPs to remove infringing content from the defendant's website or altogether disable the website. *See Bose Corp. v. Chen*, 2013 WL 12137836, at *4 (D. Mass. Aug. 19, 2013) (non-party ISPs must "immediately temporarily disable, remove all content, and otherwise render inoperable each Infringing Web Site"); *Future Motion, Inc. v. Lai*, 2023 WL 11113647, at *3 (D. Or. Dec. 29, 2023) (requiring ISPs having notice of the order to "remove the infringing content from websites having content controlled by Defendant" and "provide notice of compliance to [plaintiff]'s counsel"); *Otter Prods., LLC v. Anke Grp. Indus. Ltd.*, 2013 WL 5910882, at *4 (D. Nev. Jan. 8, 2013) (similar removal and confirmation requirements).

Dated: April 24, 2026

/s/ Anthony F. Jankoski

Anthony F. Jankoski (No. 30570)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street N.W., Suite 1100
Washington, D.C. 20005
Tel: (202) 230-5000
Fax: (202) 842-8465
anthony.jankoski@faegredrinker.com

Traci T. McKee (FL #53088) (Admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Tel: (239) 286-6900
Fax: (239) 244-9053
traci.mckee@faegredrinker.com

*Attorneys for Plaintiff Seakeeper, Inc.*

21