## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

(Northern Division)

| | |
|---|---|
| SEAKEEPER, INC.,<br>Plaintiff, | Case No. 1:26-cv-01332-MJM<br>Hon. Matthew J. Maddox |
| v. | **PROPOSED VERIFIED** |
| | **COUNTERCLAIM** |
| STARBOARD YACHT GROUP, LLC,<br>Defendant, | **OF CHARLES JACOB**<br>**STRATMANN** |
| | (Filed pursuant to FRCP 24(c)) |
| and | |
| CHARLES JACOB STRATMANN,<br>Proposed Intervenor / Counterclaimant. | |

---

## PROPOSED VERIFIED COUNTERCLAIM OF CHARLES JACOB STRATMANN AGAINST SEAKEEPER, INC.

Counterclaimant Charles Jacob Stratmann ("Mr. Stratmann"), an individual, by and through himself appearing pro se, brings this Verified Counterclaim against Counter-Defendant Seakeeper, Inc. ("Seakeeper") and alleges as follows:

### PARTIES

Counterclaimant **Charles Jacob Stratmann** is an individual citizen of the State of Florida, residing at 545 NE 17th Avenue, Fort Lauderdale, Florida 33301. Mr. Stratmann is the managing member of Starboard Yacht Group, LLC ("SYG"), but appears here in his **individual capacity** as a directly injured party.

Counter-Defendant **Seakeeper, Inc.** is a Delaware corporation with its principal place of business in Mohnton, Pennsylvania, and substantial business contacts with the State of Florida, including (without limitation) a Florida-based dealer network operated under the Seakeeper trademark since 2018.

## JURISDICTION AND VENUE

Subject-matter jurisdiction exists under 28 U.S.C. Section 1331 (federal question - civil RICO claims under 18 U.S.C. Section 1964(c)); 28 U.S.C. Section 1332 (diversity - Mr. Stratmann is a Florida citizen, Seakeeper is a Delaware citizen with principal place of business in Pennsylvania, and the amount in controversy exceeds $75,000 exclusive of interest and costs); and 28 U.S.C. Section 1367 (supplemental jurisdiction over related state-law claims).

Venue in this District is proper as the present-action forum chosen by Plaintiff Seakeeper. Mr. Stratmann does **not** waive his concurrently filed motion to transfer this action to the United States District Court for the Southern District of Florida (Ft. Lauderdale Division) under 28 U.S.C. Section 1404(a) and the first-filed rule.

## FACTUAL ALLEGATIONS

### A. The 2018 Dealer Agreement and SYG's Florida-Based Seakeeper Operations

In 2018, SYG and Seakeeper entered into a written Dealer Agreement under which SYG became an authorized Seakeeper dealer for the State of Florida. The Dealer Agreement was negotiated in Florida, executed by SYG's authorized representative in Florida, and performed primarily in Florida.

From 2018 through 2024, SYG performed in good faith as an authorized Seakeeper dealer, including by purchasing and warehousing Seakeeper inventory in Florida and providing installation and warranty services to Florida customers.

### B. Mr. Stratmann's Personal Financial Exposure: The SBA EIDL and Home-Equity Pledge

To finance SYG's expanded inventory commitments and Florida-warehouse operations during the COVID-19 economic disruption, Mr. Stratmann personally guaranteed, and pledged his **personal residence** at 545 NE 17th Avenue, Fort Lauderdale, Florida 33301 as collateral for, a Small Business Administration ("SBA") Economic Injury Disaster Loan ("EIDL") to SYG.

As a direct and foreseeable result of the EIDL and personal-residence pledge, Mr. Stratmann's individual financial position is substantially and unavoidably tied to the disposition of the Seakeeper inventory and to the dealer-relationship cash flows that service the EIDL.

## C. The 2024-2026 Cure-Period Failure

The Dealer Agreement contains a notice-and-cure provision protecting against summary termination. The provision, in substance, requires Seakeeper to provide written notice of any claimed default and to afford a defined cure period (in the range of thirty days from receipt of notice) before termination becomes effective. The cure-period provision was bargained-for and was material to Mr. Stratmann's decision to pledge his personal residence as EIDL collateral and to advance personal funds against the inventory program; the precise contractual text is in the records of the parties and will be filed under seal or pursuant to discovery as Exhibit [to be supplemented].

During 2024-2026, Seakeeper materially altered the operative terms of the dealer relationship without observing the **cure period** to which SYG was contractually entitled, and without offering SYG a meaningful opportunity to cure any alleged non-performance.

Seakeeper terminated, or purported to terminate, the dealer relationship without notice and cure that satisfied the contract.

## D. The Inventory Lock and the Demand-Letter Channel

After the purported termination, Seakeeper refused to repurchase SYG's existing inventory of Seakeeper units, refused to permit SYG to sell that inventory to retail customers, and through a series of demand letters and communications, asserted that any sale or transfer of the inventory would constitute a violation of Seakeeper's intellectual-property rights.

The demand-letter channel had the foreseeable, intended, and actual effect of **locking** approximately $2,000,000 of SYG inventory in Florida warehouses, without Seakeeper either repurchasing the units or releasing them for sale.

Mr. Stratmann personally paid Seakeeper, from his individual accounts and personal credit lines, no less than **$793,002** for inventory and inventory-related charges that were never released to recoupment, were never repurchased, and were never made available for free disposition.

## E. The Subsequent Theft from the Locked Florida Warehouse

While the inventory remained locked in the Florida warehouses by force of Seakeeper's demand-letter restraint, the inventory was the subject of a series of theft incidents in Broward

County, Florida, currently the subject of open law-enforcement investigations by the Fort Lauderdale Police Department and the Broward Sheriff's Office.

The theft incidents have been investigated, and the relevant case files are maintained, in Broward County, Florida.

### F. The Channel-Origination Conduct and the Madison Industries Coordination

1. Seakeeper's demand-letter channel, the inventory lock, and the dealer-termination decision were each originated, coordinated, and ratified through executive personnel acting in concert with Madison Industries, the parent ownership group of Seakeeper. The coordination is documented in interstate wire communications constituting predicate acts under 18 U.S.C. Section 1961(1).

### G. Pillar Evidence: The December 2025 Recorded Team Meeting

On or about December 4-5, 2025, Seakeeper personnel participated in a recorded team meeting with Mr. Stratmann and SYG representatives that was contemporaneously captured (as preserved by an automated meeting-transcription service) and that is in Counterclaimant's possession (the "December 2025 Transcript"). The December 2025 Transcript will be filed as Counterclaim Exhibit B [to be supplemented] subject to any protective order the Court may enter.

The December 2025 Transcript constitutes pillar evidence on each of four issues central to this Counterclaim:

(i) **Absence of contractual cause.** The participating Seakeeper personnel acknowledged, in substance, that there was no contemporaneous performance-based cause for the dealer-relationship action then under consideration, and that Seakeeper remained willing to reconsider its posture. Those acknowledgments, by Seakeeper personnel, contradict any after-the-fact assertion of contractual cause and corroborate the absence of the bargained-for notice-and-cure process pleaded above.

(ii) **Madison-Legal direction through Ivankovich-channel interference.** The December 2025 Transcript reflects, in substance, that the operational decision-making was being driven by the legal function of Madison Industries (the parent ownership group), conveyed and operationalized through an intermediary identified in the broader record as Edmund "Ed" Biggie-Ivankovich, whose interference is a separate pattern element in related proceedings.

This evidences the Madison-Legal-to-operational-channel pathway pleaded as part of the association-in-fact enterprise in Count VII.

(iii) **Internal-conflict creation - sales-rep replacement.** The December 2025 Transcript, taken together with subsequent Seakeeper personnel actions, evidences Seakeeper's coordinated replacement of SYG's existing assigned representative with a successor representative (identified in the broader record as Brad Meide), whose appointment was associated with Seakeeper's recognition of him as a top-performing sales representative for the relevant period - a recognition causally tied to the SYG dealer-territory disruption rather than to organic sales growth.

(iv) **Cross-allied conduct relevant to RICO pattern.** The replacement-representative pathway is further documented in the broader record as associated with conduct involving Jonathan Kappack - conduct that is the subject of separate EEOC and fraud-on-the-court allegations against SYG - and with associations between Mr. Meide, Mr. Kappack, and additional Seakeeper personnel identified in the broader record as Chris Klepping and Paul Forsythe. These associations are pleaded for the limited purpose of establishing the **continuity** and **relationship** elements of the RICO "pattern" required by *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989), and not to inject any unrelated employment claim into this pleading.

The December 2025 Transcript, in conjunction with the demand-letter channel and the Madison Industries coordination pleaded above, evidences the **purpose, continuity, and association-in-fact functioning** of the RICO enterprise charged in Counts VII and VIII, and supplies non-speculative support for the absence of contractual cause pleaded in Counts III and IV.

**H. Antecedent Settlement Pillar - The Cobia DC-33 / SK2 Warranty Event, the CJS-Chase-Russell Resolution Collaboration, and the Resulting Retaliation / Unjust-Enrichment Posture**

Prior to the conduct pleaded in Sections C-G, a Seakeeper Model SK2 unit installed in a Cobia DC-33 vessel through Seakeeper's distribution channel exhibited a warranty-actionable defect (the "Cobia DC-33 / SK2 Warranty Event"). The Cobia DC-33 / SK2 Warranty Event implicated Seakeeper's manufacturer-warranty obligations and exposed Seakeeper to actual or threatened claims and litigation from, among others, the dealer/distributor entity identified in the broader record as Marine Connection, and the boat-builder entities identified in the broader record as Cobia Boats (Maverick Boat Group) and Maverick Boats (collectively, the "Cobia /

Marine Connection Channel"). The Cobia DC-33 / SK2 Warranty Event is the same evidentiary nucleus referenced in related federal litigation pending in the Southern District of Florida (Case No. 0:23-cv-61696-AHS, Hon. Raag Singhal), in which the origin of certain Seakeeper warranty funds - i.e., the Cobia SK2 defect chain rather than the Octopussy refit chain - has been identified as a controlling factual question.

The threatened-litigation posture associated with the Cobia DC-33 / SK2 Warranty Event and the related Cobia / Marine Connection Channel exposure included claims threatened, asserted, or coordinated by **Steven Ivankovich** (the same individual referred to in certain prior internal records by the shorthand "Steven Ivan"), acting personally and through (i) an extensive network of alter-ego or commonly-controlled limited-liability companies and other affiliated entities - approximately one hundred seventy-five (175) in number, identified in the broader record collectively as the "Ivankovich LLC Network" - and (ii) his agents and representatives, including in-house general counsel, retained outside litigation counsel, and associated litigation-coordination personnel (collectively, the "Ivankovich Agents"). Mr. Steven Ivankovich is a different individual from Edmund "Ed" Biggie-Ivankovich identified in Section G(ii), and the conduct of Mr. Steven Ivankovich, the Ivankovich LLC Network, and the Ivankovich Agents is referenced in this Section H for the limited purpose of identifying the threat-posture context of the Cobia DC-33 / SK2 Warranty Event and the resulting Cobia / SK2 Resolution, and for its bearing on the **continuity** and **relationship** elements of the RICO "pattern" required by *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) - and not as the assertion of any direct claim against Mr. Steven Ivankovich, the Ivankovich LLC Network, or the Ivankovich Agents in this action. Mr. Steven Ivankovich's pattern of broken commitments and litigation conduct, including the issuance and entry of civil body-attachment orders against him in Florida state-court proceedings (see Exhibit references in the Count-to-Exhibit Matrix, file 08, Section VI), is incorporated by reference for the same limited pattern-evidence purpose.

In direct collaboration with Seakeeper's own field-service representative identified in the broader record as Chase Russell (the "CJS-Russell Collaboration"), and at material expense and through the personal effort of Mr. Stratmann and the resources of SYG, Mr. Stratmann and SYG facilitated and effectuated a resolution of the Cobia DC-33 / SK2 Warranty Event and the related Cobia / Marine Connection Channel exposure (the "Cobia / SK2 Resolution"). The Cobia / SK2 Resolution preserved Seakeeper's manufacturer-warranty posture, preserved Seakeeper's distribution relationships with Marine Connection, Cobia Boats, and Maverick Boats, and avoided adverse publicity, distribution disruption, and warranty-claim exposure

that those events would otherwise have produced for Seakeeper. As part of the consideration that flowed through the resolution, three Seakeeper Model SK35 units, together with one SYG-stocked Seakeeper Model SK26 unit (collectively, the "Resolution Units"), were placed or moved through the SYG dealer channel in furtherance of, and at the direction of, the resolved warranty/distribution arrangement.

Seakeeper accepted, retained, and continues to retain the benefit of the Cobia / SK2 Resolution, including the preserved warranty posture and the preserved Marine-Connection-channel and Cobia/Maverick-Boats relationships. Seakeeper has not paid, credited, or otherwise compensated Mr. Stratmann or SYG for the value of that conferred benefit, and the Resolution Units were not made the subject of the bargained-for repurchase, credit, or release procedures pleaded in Sections C-E. Equity and good conscience preclude Seakeeper from retaining that benefit while simultaneously pursuing the conduct pleaded in Sections C-G against the very persons whose efforts produced it. *See Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059-60 (Fla. 4th DCA 2006) (elements of unjust enrichment under Florida law).

The demand-letter channel, the no-cure dealer-termination, and the inventory lock pleaded in Sections C-E followed the Cobia / SK2 Resolution rather than preceded it. The temporal proximity between (a) Mr. Stratmann's protected economic activity in disposing of the Cobia / SK2 / Marine-Connection / Maverick-Boats exposure for Seakeeper's benefit and (b) Seakeeper's adverse conduct against Mr. Stratmann and SYG - together with the absence of any independent performance-based cause confirmed in the December 2025 Transcript (Section G(i)) - supports the inference, for pleading purposes, that the adverse conduct was **retaliatory** in character with respect to Mr. Stratmann's pre-termination cooperation, and that the Resolution Units were targeted by the post-termination inventory-lock conduct as a means of recapturing, without compensation, value previously conferred on Seakeeper through the Cobia / SK2 Resolution.

For the avoidance of doubt, this Section H pleads the Cobia / SK2 Resolution **only** for its direct effect on Seakeeper, Inc. - the manufacturer whose warranty exposure was contained - and not as an allegation against, or a claim arising out of, the threatened-litigation posture of any non-party identified in the broader record. Identifications of Chase Russell, Marine Connection, Cobia Boats, and Maverick Boats are pleaded subject to operator confirmation prior to service.

## I. Trademark, Intellectual-Property, and Market-Research Misappropriation - The Gyro-to-Interceptor Crossover

During the course of the dealer relationship and in connection with the cooperation activities described in Section H, Mr. Stratmann and SYG provided to, or developed jointly with, Seakeeper personnel, market-research data, customer-channel intelligence, dealer-network testing results, and product-positioning analysis concerning the integration and combined-system marketing of Seakeeper gyroscopic stabilization with vessel-motion interceptor technologies (the "Gyro-Interceptor Market Research").

Following the conduct pleaded in Sections C-E, Seakeeper extended, or caused to be extended, its trademarked Seakeeper brand and associated commercial identity into the vessel-motion interceptor market segment in a manner that, on information and belief, used and incorporated the Gyro-Interceptor Market Research without compensation, credit, or contractual authorization to Mr. Stratmann or SYG, and in a manner that diverted to Seakeeper, Inc. and its affiliates the commercial value of that research that would otherwise have inured to SYG and its dealer position.

The interceptor-market crossover constitutes additional unjust-enrichment exposure to Seakeeper, supplies an independent **economic-motive** allegation for the demand-letter and inventory-lock conduct pleaded in Counts II-VIII (i.e., to neutralize the very market intelligence Seakeeper sought to monetize), and is pleaded as further evidence of the enterprise's pattern under *H.J. Inc.*

## J. Parallel Florida Criminal-Investigation Timeline

The inventory-lock and post-termination conduct pleaded in Sections D-E are the subject of an active multi-agency criminal-investigation timeline in Broward County, Florida, including (without limitation) Fort Lauderdale Police Department Case No. 34-2512-209096 (Economic Crimes), Broward Sheriff's Office Case No. 02-2601-000152 (Dania Beach Criminal Investigations Unit, SK26 recovery), and additional related incident reports in BSO Case Nos. 03360301411 and 26-001-076848 (collectively, the "FL Criminal Timeline"). A condensed cross-agency timeline through the date of this filing is appended as Counterclaim Exhibit C [to be supplemented]. The FL Criminal Timeline is pleaded for the limited purposes of (i) establishing the practical-impairment factor underlying Mr. Stratmann's intervention, (ii) corroborating the absence-of-cause and post-notice-conversion patterns reflected in the

December 2025 Transcript, and (iii) providing additional venue-and-transfer support for the related Motion to Transfer to the Southern District of Florida.

## CAUSES OF ACTION

### COUNT I - CIVIL THEFT (Fla. Stat. Section 772.11)

Mr. Stratmann re-alleges paragraphs 1-16 above.

Seakeeper, with felonious intent, knowingly obtained and retained funds personally paid by Mr. Stratmann valued at not less than $793,002, intending to deprive Mr. Stratmann of the right to those funds. Counterclaimant does not, in this Count, assert civil-theft damages on the inventory itself, the inventory book-value claim being reserved to SYG.

Mr. Stratmann is entitled to **threefold actual damages** plus reasonable attorneys' fees and court costs as provided by Fla. Stat. Section 772.11 (such fees recoverable if and when Counterclaimant is represented by counsel). *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055-56 (Fla. 3d DCA 2008).

### COUNT II - CONVERSION

Mr. Stratmann re-alleges paragraphs 1-16 above.

Seakeeper exercised dominion and control over funds and inventory belonging to or pledged for the benefit of Mr. Stratmann, inconsistent with his ownership and resale rights.

Mr. Stratmann is entitled to compensatory damages plus prejudgment interest. *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984).

### COUNT III - BREACH OF CONTRACT (Failure of Cure Period)

Mr. Stratmann re-alleges paragraphs 1-16 above.

As a third-party intended beneficiary of the cure-period provisions of the Dealer Agreement to the extent those provisions protect his personal-guarantor and EIDL-pledgor positions, Mr. Stratmann was injured by Seakeeper's failure to honor the cure period.

Mr. Stratmann is entitled to restitution and expectation damages. *Beach Higher Power Corp. v. Granados*, 717 So. 2d 563, 564-65 (Fla. 3d DCA 1998).

## COUNT IV - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Mr. Stratmann re-alleges paragraphs 1-16 above.

Seakeeper exercised its discretionary contractual rights - specifically, the right to terminate, the right to send demand letters, and the right to control inventory disposition - in a manner that denied Mr. Stratmann the benefit of the bargain.

Mr. Stratmann is entitled to manner-of-performance damages. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316-18 (11th Cir. 1999).

## COUNT V - TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

Mr. Stratmann re-alleges paragraphs 1-16 above.

Mr. Stratmann maintained existing and prospective business relationships with Florida-based retail yacht-broker customers and refit-yard purchasers in the South Florida marine market. Seakeeper's demand-letter channel - directed at and received by Mr. Stratmann's prospective transactional counterparts - directly interfered with those relationships by communicating to the marketplace that the locked Florida-warehoused inventory could not be lawfully transacted, with the foreseeable and intended effect of inducing those counterparts to decline transactions with Mr. Stratmann.

Mr. Stratmann is entitled to damages for lost-customer profits and reputation injury. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814-15 (Fla. 1994).

## COUNT VI - VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Fla. Stat. Section 501.201 et seq.)

Mr. Stratmann re-alleges paragraphs 1-16 above.

Seakeeper's pattern of conduct - terminating without cure, locking inventory through demand-letter assertions, refusing repurchase, and obstructing resale - constitutes an unfair and deceptive practice in trade or commerce within the meaning of Fla. Stat. Section 501.204.

Mr. Stratmann is entitled to actual damages and reasonable attorneys' fees under Fla. Stat. Section 501.2105. *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 776-77 (Fla. 2003).

## COUNT VII - FEDERAL CIVIL RICO (18 U.S.C. Section 1962(c))

Mr. Stratmann re-alleges paragraphs 1-16 above.

**RICO "persons":** Seakeeper, Inc., together with one or more of its executive officers acting in their individual capacities (identities to be confirmed in discovery), are the "persons" within the meaning of 18 U.S.C. Section 1961(3) who conducted the affairs of the enterprise.

**RICO "enterprise":** The "enterprise," within the meaning of 18 U.S.C. Section 1961(4), is an association-in-fact comprising Seakeeper, Inc., Madison Industries (the parent ownership group), and additional vendor and counsel participants who together formed an ongoing organization that functioned as a continuing unit, with a common purpose of extracting payments from, and asserting downstream control over, Florida-based dealer counterparties through coordinated demand-letter and inventory-lock conduct. The "persons" are distinct from the "enterprise" as required under *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), and *United States v. Goldin Indus., Inc.*, 219 F.3d 1268 (11th Cir. 2000) (en banc).

**Pattern of racketeering activity:** The "persons," through the demand-letter channel, the dealer-termination conduct, and the coordinated interstate communications with the enterprise's parent and counsel participants, conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity consisting of multiple predicate acts of mail fraud (18 U.S.C. Section 1341) and wire fraud (18 U.S.C. Section 1343), executed through interstate mailings and wires that communicated material misrepresentations and omissions concerning Mr. Stratmann's contractual cure rights, the inventory's lawful-transaction status, and the parties' settlement posture, in furtherance of a scheme to defraud.

**Direct injury:** Mr. Stratmann was directly injured in his property - by the not-less-than $793,002 in personal payments made in reliance on the misrepresentations, the impairment of his EIDL personal-residence collateral, and his lost personal yacht-broker income - by reason of the pattern. The injury flowed directly from the predicate acts and not derivatively through SYG. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006); *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008).

Mr. Stratmann is entitled to **treble damages**, costs, and reasonable attorneys' fees as provided by 18 U.S.C. Section 1964(c) (such fees recoverable if and when Counterclaimant is represented by counsel, consistent with *Kay v. Ehrler*, 499 U.S. 432 (1991)).

## COUNT VIII - FEDERAL CIVIL RICO CONSPIRACY (18 U.S.C. Section 1962(d))

Mr. Stratmann re-alleges paragraphs 1-16 above.

Seakeeper conspired with Madison Industries personnel and other identified co-conspirators to violate 18 U.S.C. Section 1962(c), agreeing that one or more conspirators would commit the predicate acts described in Count VII.

Mr. Stratmann is entitled to treble damages, costs, and reasonable attorneys' fees under 18 U.S.C. Section 1964(c). *Salinas v. United States*, 522 U.S. 52, 65-66 (1997); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994).

## COUNT IX - CONSTRUCTIVE TRUST / UNJUST ENRICHMENT

Mr. Stratmann re-alleges paragraphs 1-16 above and the allegations of Sections H and I.

Equity and good conscience preclude Seakeeper from retaining (a) Mr. Stratmann's $793,002 (or its traceable equivalent), (b) the locked inventory, (c) the commercial benefit of the Cobia / SK2 Resolution conferred without compensation as pleaded in Section H (including the Resolution Units - three SK35s and one SYG-stocked SK26 - and the preserved Marine-Connection / Cobia / Maverick-Boats channel value), and (d) the value of the Gyro-Interceptor Market Research used in Seakeeper's interceptor-market crossover as pleaded in Section I, against the rights of Mr. Stratmann. Each retention by Seakeeper, with knowledge of the conferred benefit and without payment, satisfies the elements of unjust enrichment under Florida law. *Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059-60 (Fla. 4th DCA 2006); *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710, 711-12 (Fla. 2d DCA 1988).

Mr. Stratmann is entitled to imposition of a constructive trust over the identified funds, inventory, the Resolution Units (and their traceable proceeds), and the traceable proceeds of the Gyro-Interceptor Market Research, together with disgorgement of the value of the Cobia / SK2 Resolution benefit. *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1024-25 (Fla. 4th DCA 1996).

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Charles Jacob Stratmann respectfully prays that this Court enter judgment in his favor and against Counter-Defendant Seakeeper, Inc., as follows:

A. Awarding compensatory damages in an amount to be proven at trial, including not less than $793,002 in restitution;

B. Awarding threefold damages under Fla. Stat. Section 772.11 (Count I) and treble damages under 18 U.S.C. Section 1964(c) (Counts VII and VIII);

C. Imposing a constructive trust over the identified funds and inventory (Count IX);

D. Awarding reasonable attorneys' fees and costs as authorized by Fla. Stat. SectionSection 772.11, 501.2105, and 18 U.S.C. Section 1964(c), such fees recoverable if and when Counterclaimant is represented by counsel, consistent with *Kay v. Ehrler*, 499 U.S. 432 (1991);

E. Awarding prejudgment and post-judgment interest at the maximum rate allowed by law;

F. Awarding such further and additional relief as the Court deems just and proper.

**JURY DEMAND**

Counterclaimant Charles Jacob Stratmann demands trial by jury on all issues so triable.

**VERIFICATION**

I, Charles Jacob Stratmann, declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. Section 1746 that the factual allegations of the foregoing Verified Counterclaim are true and correct to the best of my knowledge, information, and belief.

Executed on 2026-05-___ at Port Lauderdale, Florida.

Charles Jacob Stratmann

Respectfully submitted,

Dated: 2026-05-

Charles Jacob Stratmann
Pro se

545 NE 17th Avenue
Fort Lauderdale, FL 33301