IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

NORTHERN DIVISION

SEAKEEPER, INC.,

Plaintiff,

v.

STARBOARD YACHT GROUP, LLC,

Defendant.

**Case No. 1:26-cv-01332-MJM**

**Judge Matthew J. Maddox**

# DECLARATION OF CHARLES JACOB STRATMANN IN SUPPORT OF MOTION FOR APPOINTMENT OF PRO BONO COUNSEL

I, Charles Jacob Stratmann, also known as "Jake Stratmann," declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 as follows:

1. I am over the age of eighteen (18), of sound mind, and competent to make this Declaration. I have personal knowledge of the facts stated below, and if called to testify I could and would testify competently to them. My full legal name is Charles Jacob Stratmann; "Jake" is the familiar form of my middle name (Jacob) by which I am commonly known in business and personal correspondence. Both names refer to the same individual.

1. I am the sole managing member of Defendant Starboard Yacht Group, LLC ("SYG"), a Florida limited liability company with its principal place of business in Fort Lauderdale, Florida.

1. I make this Declaration in support of SYG's Motion for Appointment of Pro Bono Counsel from the Court's Federal Pro Bono Panel filed contemporaneously herewith.

## I. SYG'S CORPORATE STRUCTURE AND FINANCIAL POSITION

1. SYG is a single-member Florida limited liability company. I am its sole managing member. SYG has no other equity holders.

1. SYG's primary business has been marine-services dealer operations, including formerly serving as an authorized dealer for Plaintiff Seakeeper, Inc.'s gyroscopic stabilization products under successive dealer agreements.

1. As of the date of this Declaration, SYG has no liquid capital available to retain federal trademark-defense counsel at prevailing market rates. SYG's operating accounts contain only nominal balances sufficient to maintain corporate existence (registered-agent fees, annual report filings, and basic accounting). SYG has no line of credit, no available credit facility, and no readily-marketable assets that could be liquidated to fund a substantial federal-court retainer in time to meet the Court's deadlines.

1. SYG's cash-flow position is the direct result of the underlying dispute. Plaintiff's December 2, 2024 termination of the 2019 dealer agreement, the asserted termination of the 2024 Ride agreement, the post-termination conduct alleged by both parties, and the resulting business disruption have substantially impaired SYG's revenue.

1. I am willing, if the Court so directs, to submit additional financial documentation under seal -- including bank statements, tax returns, accounts-receivable schedules, and a statement of assets and liabilities -- to permit the Court to make a particularized financial finding. I do not include those documents with this public Declaration in order to avoid disclosure of competitively sensitive financial information of a non-party (the LLC's customers, vendors, and counterparties) and to protect personal privacy interests of the managing member, but they are available for in-camera review on request.

## I-A. ATTEMPTED PRO SE FILING OF SYG'S RESPONSIVE PLEADINGS AND THE CLERK'S RETURN

8A. On May 1, 2026 at 21:39 ET, I attempted to submit the following five pleadings to the United States District Court for the District of Maryland through the Court's Electronic Document Submission System (EDSS): (i) Answer, Affirmative Defenses, and Demand for Jury Trial; (ii) Motion to Stay or, in the Alternative, to Transfer Venue to the Southern District of Florida; (iii) Notice of Opposition to Plaintiff's Motion for Temporary Restraining Order

and Preliminary Injunction; (iv) Declaration of Charles Jacob Stratmann in Support of Defendant's Pleadings; and (v) Certificate of Service. Those pleadings are attached to the accompanying Motion as Exhibits A through E. The EDSS submission receipt is attached as Exhibit H.

8B. Contemporaneously with the EDSS submission, on May 1, 2026 at 21:46 ET, I served the same five pleadings on counsel for Plaintiff at Faegre Drinker Biddle & Reath LLP -- specifically, Anthony D. Jankoski, Traci A. McKee, and Elizabeth E. Wurm -- by electronic mail pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 102.1(c). The service email is attached to the accompanying Motion as Exhibit F. Service on Plaintiff's counsel was effective and remains effective regardless of the Clerk's subsequent EDSS return.

8C. On May 4, 2026 at 08:47 ET, the Clerk's Office returned the EDSS submission to me by email, unprocessed, citing two clerical defects: (i) the EDSS agreement requires original ink signatures and does not accept the "/s/" electronic signature convention; and (ii) the filing did not contain the District of Maryland case number on its face. The Clerk's return email is attached to the accompanying Motion as Exhibit G. The Clerk's return was based solely on those form defects and did not adjudicate any question of representational capacity.

8D. While preparing the cure submission with original ink signatures and the corrected case-number formatting, I recognized that, regardless of clerical conformity, Local Rule 101.1(a) bars Starboard Yacht Group, LLC from appearing in this Court except through licensed counsel. My individual diligence cannot supply that representational capacity. I accordingly held the cure submission and prepared the present Motion. Exhibits A through E are submitted as documentary evidence of timely good-faith merits engagement -- not as filed pleadings of record. The 21-day responsive-pleading window of Fed. R. Civ. P. 12(a)(1)(A)(i) was met by good-faith attempt; the structural Local Rule 101.1(a) bar is what now requires this Court's intervention.

## II. EFFORTS TO RETAIN PRIVATE COUNSEL

1. Beginning when SYG first received notice of this action and continuing through the date of this Declaration, I have undertaken substantial efforts to retain qualified counsel to represent SYG in this action. Those efforts include the following:

(a) I have contacted multiple federal trademark and commercial litigation firms with offices in or admitted to the District of Maryland and inquired about representation, hourly rates, and retainer requirements. The retainers quoted have ranged from approximately fifteen thousand

dollars ($15,000) on the low end to in excess of one hundred thousand dollars ($100,000) for full-service trademark defense, with hourly rates between approximately $400 and $1,150 per hour. SYG cannot fund any of these retainers from its own resources.

(b) I have contacted federal trademark and commercial litigation firms in the Southern District of Florida (where SYG resides and where the parallel first-filed action is pending) and inquired about representation. The retainers and rates quoted have been comparable to the Maryland figures.

(c) I have contacted multiple firms regarding the possibility of contingency or partial-contingency representation keyed to SYG's compulsory counterclaims, the Lanham Act fee-shifting provision (15 U.S.C. Section 1117(a) under the Octane Fitness standard), and the civil RICO treble-damages remedy (18 U.S.C. Section 1964(c)). I am willing to consider, and SYG is willing to enter into, contingency or hybrid arrangements that may make appointed or retained representation economically feasible. As of the date of this Declaration, no firm has executed a representation agreement.

(d) I have inquired with SYG's existing insurance carriers regarding coverage for the present action. Coverage analysis is ongoing. SYG does not, as of the date of this Declaration, have a confirmed defense-cost-coverage commitment from any carrier.

## III. EFFORTS TO OBTAIN PRO BONO OR REDUCED-FEE REPRESENTATION

1. In addition to private-market efforts, I have contacted multiple Maryland and federal pro bono and reduced-fee resources, including the following:

(a) The Court's Pro Bono Coordinator (United States District Court for the District of Maryland);

(b) The Pro Bono Resource Center of Maryland;

(c) The Maryland Volunteer Lawyers Service Microenterprise Project;

(d) The Federal Bar Association -- Maryland Chapter Pro Bono Panel;

(e) Civil Justice, Inc., a Baltimore-based non-profit law firm and statewide network of solo and small-firm attorneys whose intake schedule is Tuesdays and Thursdays;

(f) The University of Maryland Carey School of Law Intellectual Property Legal Clinic;

(g) The University of Baltimore School of Law Intellectual Property Clinic.

1. The general response from these resources has been one or more of the following: (i) the resource's intake criteria are limited to indigent individuals and do not extend to commercial entities; (ii) the resource does not handle Lanham Act trademark defense or other federal commercial litigation; (iii) the resource may be able to refer to a network attorney willing to enter for the LLC, but no firm referral commitment has yet been obtained; or (iv) the matter is under intake review with the relevant resource as of the date of this Declaration. Diligent efforts continue.

## IV. EFFORTS TO ENGAGE LITIGATION FINANCE

1. I have explored, and continue to explore, third-party litigation finance as a means of funding counsel. The compulsory counterclaims asserted on behalf of SYG include theories of recovery (Lanham Act fee shifting, civil RICO treble damages, trade-secret misappropriation under DTSA and Florida law) that, if successful, would generate a recovery sufficient to repay reasonable financing. As of the date of this Declaration, no funding commitment has been obtained, and the underwriting process for litigation finance typically requires weeks to months -- a timeline materially longer than the May 21, 2026 deadline imposed by Local Rule 105.2(a) on the Plaintiff's pending Motion for Clerk's Entry of Default.

## V. SYG'S COMMITMENT TO COOPERATE WITH APPOINTED COUNSEL

1. If the Court appoints pro bono counsel from the Federal Pro Bono Panel, I commit, on behalf of SYG and individually, to:

(a) Provide appointed counsel with full and immediate access to all SYG documents, communications, contracts, financial records, and witnesses relevant to this action;

(b) Cooperate in good faith with all reasonable scheduling, discovery, deposition, and trial-preparation requirements;

(c) Reimburse reasonable out-of-pocket expenses (filing fees, copying, deposition transcripts, expert fees) to the extent SYG develops funds during the pendency of the litigation;

(d) Be available for consultation, document review, and witness preparation on reasonable notice;

(e) Consider in good faith any contingency, partial-contingency, or fee-conversion arrangement that appointed counsel and the Court deem appropriate, including arrangements