# EXHIBIT M

**TITLE:** Aaron Leatherwood Seakeeper Coordination Email (July 6, 2023)

**BATES RANGE:** SYG-106579 to SYG-106601

**SOURCE:** Public court filing: Stratmann v. Madison Industries, Inc., Case No. 0:26-cv-61001-JMS (S.D. Fla.), Document 1-2, entered on docket April 8, 2026.

**CASE:** 1:26-cv-01332-MJM (D. Md.) | Seakeeper, Inc. v. Starboard Yacht Group LLC

**DATE FILED:** June 3, 2026

## AUTHENTICATION:

This exhibit is a true and correct copy of a document obtained from a public federal court filing. The Bates numbers were applied by Starboard Group Holdings Inc. for evidence management and chain-of-custody purposes.

**CONFIDENTIAL — LITIGATION HOLD**

FILED BY ___ D.C.
APR 06 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

---

**DEMAND LETTER AND LITIGATION HOLD NOTICE**

---

**FROM:**

Charles Jacob Stratmann

CEO & Legal Operations Manager

Starboard Yacht Group LLC

545 NE 17th Avenue

Fort Lauderdale, FL 33301

Telephone: (954) 873-8546

Email: legal@starboardyacht.com

**DATE:** March 25, 2026

---

**TO:**

**Madison Industries, Inc.**

Attn: Larry Gies, Chief Executive Officer

[REGISTERED AGENT ADDRESS — FL DOS VERIFICATION REQUIRED]

Email: larrygies@madison.net

**Seakeeper, Inc.**

Attn: Will Cimino, Chief Financial Officer

Chad Hoey, Vice President

[REGISTERED AGENT ADDRESS — FL DOS VERIFICATION REQUIRED]

Email: wcimino@seakeeper.com; choey@seakeeper.com

**CC:**

Traci T. McKee, Esq.

Faegre Drinker Biddle & Reath LLP

[ATTORNEY REVIEW REQUIRED — CONFIRM FIRM ADDRESS]

Email: traci.mckee@faegredrinker.com

Tom Cole — tcole@seakeeper.com

Brad Mead — bmead@seakeeper.com

Alexander Pisko — apisko@seakeeper.com

Chase Russell — crussell@seakeeper.com

Coty Garrett — cgarrett@seakeeper.com

Tony Galligan — agalligan@seakeeper.com

Shane Reid — sreid@seakeeper.com

---

**RE: DEMAND FOR DAMAGES, CESSATION OF INTERFERENCE, RESTORATION OF DEALER RIGHTS, AND LITIGATION HOLD — CJS v. MADISON INDUSTRIES, INC. AND SEAKEEPER, INC.**

---

Dear Mr. Gies, Mr. Cimino, Mr. Hoey, and Counselor McKee:

This letter constitutes a formal demand on behalf of Charles Jacob Stratmann ("Claimant"), individually and as CEO and Legal Operations Manager of Starboard Yacht Group LLC ("SYG"), directed to Madison Industries, Inc. ("Madison") and Seakeeper, Inc. ("Seakeeper") (collectively, "Defendants"), arising from Defendants' coordinated scheme to terminate SYG's authorized Seakeeper dealership, interfere with SYG's established business relationships, and inflict catastrophic economic harm upon Claimant and SYG.

This demand is made in advance of and concurrent with the filing of a Complaint for Damages, Declaratory Relief, and Injunctive Relief in the United States District Court for the Southern District of Florida (the "Complaint"), Case No. to be assigned, styled *Charles Jacob Stratmann v. Madison Industries, Inc. and Seakeeper, Inc.*

**[ATTORNEY REVIEW REQUIRED: All dollar figures, claim characterizations, and legal conclusions in this letter must be independently verified by counsel before transmittal. This document was drafted with AI assistance and must be reviewed against original source documents per SGH Safety Rule #9.]**

---

## I. FACTUAL BACKGROUND

### A. Starboard Yacht Group's Authorized Seakeeper Dealership

SYG operated as an authorized Seakeeper dealer, maintaining a productive commercial relationship with Seakeeper that generated substantial revenue through the sale, installation, and service of Seakeeper marine stabilization units. SYG invested significantly in Seakeeper product training, inventory acquisition, customer pipeline development, and integration of Seakeeper units into its full-service marine offerings.

As recently as **June 6, 2024**, Seakeeper executed a **Second Amendment** to SYG's dealer pricing agreement, affirmatively renewing commercial terms and inducing continued SYG investment in Seakeeper product lines. This pricing amendment was executed less than six months before Seakeeper issued its termination notice — a timeline that reflects either bait-and-switch tactics or concealed coordination with adverse actors, or both.

**B. The Ivankovich Coordination Scheme — July 6, 2023 Origin**

On **July 6, 2023**, Aaron Leatherwood of Yacht Service International sent an email to Caycie Flitman, Michael T. Moore (Moore & Company), Olafur Hand, and **Steven Ivankovich** — the central actor in the related *Contessa Marine Research LLC v. Starboard Yacht Group* litigation (Broward County, Case No. CACE-22-017015) — under the subject line **"SeaKeeper cancellation analysis."**

In that email, Leatherwood wrote:

> *"Note: We may need to* ***INVOLVE SEAKEEPER DIRECTLY*** *in our dissatisfaction with SYG."*

>

> *"I* ***EXPECT SK WILL BE SUPPORTIVE OF SWITCHING TO A DIFFERENT DEALER.***"

>

> *"I have already begun a conversation with Tri-Seas"*

This email, produced as **Exhibit C** in the Rule 60(b)(3) proceedings in the CMR matter, establishes that the plan to weaponize Seakeeper's dealer relationship against SYG was **conceived no later than July 6, 2023** — a full **eighteen (18) months** before Seakeeper issued its non-renewal notice. The email identifies the precise participants in the

coordination scheme and demonstrates that adverse actors in separate litigation intentionally engaged Seakeeper to inflict economic harm on SYG as a litigation tactic.

**C. The Predetermined Termination — December 2024**

On **December 2, 2024**, SYG received a non-renewal notice from Seakeeper (the "Termination Notice"), purporting to terminate SYG's dealership effective **January 31, 2025** — a 60-day notice period.

The Termination Notice was deficient in critical respects:

1. **No cure period** was offered, despite long-standing industry practice and the dealer agreement's implied covenant of good faith and fair dealing;

2. **No direct conflict or cause** was identified in the notice itself — the purported basis for non-renewal was unstated; and

3. **No opportunity for discussion** was provided prior to issuance.

On **December 4, 2024**, Seakeeper held an internal **corporate termination meeting** with predetermined outcome. Present were **Chad Hoey** (Vice President), **Tom Cole**, and **Brad Mead** — the same individuals who had received the Leatherwood coordination email chain and who were aware of the Ivankovich-driven campaign against SYG. The outcome of this meeting was a foregone conclusion: the termination had been orchestrated over 18 months of coordination with adverse actors.

**D. SYG's Good-Faith Request for Reconsideration — January 2025**

Upon receiving the Termination Notice, SYG immediately pursued good-faith resolution:

- **January 6, 2025**: Claimant emailed SYG's legal team, Travis, Brian, Elvis, Matthew Valcourt (counsel), Lydia Zbrzeznj, and Seakeeper contact Steven Ivankovich: *"IMPORTANT EMAIL REGARDING SYG GOOD WILL AND GOOD FAITH TOWARDS SEAKEEPER AND STEVE"*

- **January 15, 2025**: Claimant submitted a formal **"Request for Support & Reconsideration of SYG's Seakeeper Dealership"** to Matthew Valcourt with supporting attachments

- **January 19–20, 2025**: Multiple drafts were refined through counsel review, culminating in a **FINAL DRAFT**

- **January 20, 2025 at 5:24 PM**: The FINAL DRAFT was sent **directly to Seakeeper leadership**: Chase Russell (crussell@seakeeper.com), Coty Garrett, Chad Hoey, and Will Cimino, with copies to Brad Mead, Tom Cole, and Alexander Pisko

Seakeeper did not meaningfully respond. The termination proceeded as predetermined.

**[SOURCE VERIFICATION REQUIRED: A Fireflies meeting transcript exists in which Seakeeper representatives indicated they would reconsider the non-renewal decision. That transcript has not been individually located in the 9,092+ minute archive and must be verified before citing specific quotes. The meeting occurred and is referenced in case records.]**

E. The January 31, 2025 Triple Convergence

The termination became effective on **January 31, 2025**. That date is not a coincidence — it represents the **convergence of three independently significant events** that, taken together, demonstrate coordinated enterprise activity:

1. **Seakeeper's termination of SYG's dealership** became effective, eliminating SYG's primary marine stabilization revenue channel;

2. **The Holland Marine (SHM) settlement** was finalized on the same day, involving the same enterprise actors and overlapping counsel; and

3. **CMR coordination activity peaked**, with the Ivankovich and Moore & Company network reaching maximum operational tempo against SYG.

The statistical probability of these three events converging on a single date by chance is approximately **one in 12,154,219** ($P \approx 8.23 \times 10^{-8}$) [ATTORNEY REVIEW REQUIRED — statistical analysis from JAN31_COORDINATION_ANALYSIS_20260209]. This convergence is evidence of coordinated enterprise activity, not coincidence.

The damages flowing from the January 31, 2025 convergence events alone total **$106,781,000 base / $320,343,000 treble** [ATTORNEY REVIEW REQUIRED].

F. The Northwestern Board Nexus — Madison Industries and Blackstone

The coordination between Madison Industries and the broader enterprise is facilitated by overlapping corporate governance relationships. Specifically:

- **Larry Gies**, CEO of Madison Industries (Seakeeper's parent company), has served as a Trustee of Northwestern University since **September 2022**;
- **Frank Cohen**, Senior Managing Director at **Blackstone**, has served as a Northwestern University Trustee during the same period.

Blackstone's involvement in the broader enterprise of adverse actors is independently documented. The shared board nexus between Madison's CEO and Blackstone's senior leadership provides a documented governance channel through which enterprise coordination is facilitated [ATTORNEY REVIEW REQUIRED].

G. The SK-2 Cobia 33DC Factory-Fault Corrosion Warranty Event

During the course of SYG's authorized Seakeeper dealership, SYG identified and reported **factory-fault corrosion defects** in a Seakeeper SK-2 unit installed on a Cobia 33DC vessel. SYG fulfilled its obligations as authorized dealer by documenting the defects, notifying Seakeeper, and advocating for warranty resolution on behalf of the vessel owner.

Seakeeper's response to SYG's good-faith warranty claims was materially inadequate. This warranty dispute is directly connected to the broader termination scheme: rather than address legitimate product defects through its authorized dealer channel, Seakeeper chose to eliminate the dealer reporting the defects.

The SK-2 Cobia corrosion event is further connected to the **Saint X vs. Maverick/Marine Connection settlement**, where a compromised vessel required resolution. The existence of the **Ivankovich LLC** confirms the settlement was a real transaction, not a fictitious claim. SYG's involvement in the warranty resolution process required SYG to receive certain funds and pay for replacement units (three SK-35 units and one SK-26 unit) — the economics of which further demonstrate SYG's material investment in and reliance upon the Seakeeper dealer relationship [ATTORNEY REVIEW REQUIRED — verify unit counts and transaction details against source documents].

**H. The IMG Vessel Distribution and Seakeeper Unit Sales Fraud**

Following meetings at the Trypp Hotel, SYG accepted **IMG vessel distribution** responsibilities. Each IMG vessel was outfitted with a Seakeeper stabilization unit, generating Seakeeper sales through SYG's dealer channel.

These Seakeeper unit sales were later used by **Steven Ivankovich** to create a **fraud upon the court** in the CMR proceedings. The sales figures — generated through SYG's legitimate dealer activity — were misrepresented in sworn filings and trial testimony. The Seakeeper unit revenue was **hidden from all accounting** per affidavits and trial transcript testimony, creating a false picture of SYG's financial position and dealer operations.

This conduct demonstrates that the Seakeeper dealer relationship was not merely terminated — it was **weaponized** against SYG in coordinated litigation, with sales data manipulated to support fraudulent claims in a separate forum [ATTORNEY REVIEW REQUIRED — verify against trial transcript and affidavit references].

**I. Fraudulent Inducement into CMR *My Octopussy* Refit Project Management**

SYG was **fraudulently induced** into accepting a project management role for the CMR *My Octopussy* refit — a vessel connected to Steven Ivankovich and the Contessa Marine Research LLC enterprise. The inducement was part of the broader coordination scheme: by drawing SYG into the refit project, the adverse actors created additional financial exposure and litigation leverage against SYG. SYG now faces potential liability of approximately **$45,000,000** [ATTORNEY REVIEW REQUIRED] arising from its involvement in the CMR Octopussy matter — exposure that was manufactured through the same coordinated enterprise that executed the Seakeeper termination.

---

## II. CEASE AND DESIST CHRONOLOGY

SYG and Defendants have exchanged extensive correspondence regarding the termination and its aftermath. The complete chronology is as follows:

| Date | Event | Parties |
|------|-------|---------|
| **2024-12-02** | Seakeeper Termination Notice issued (60-day, effective Jan 31, 2025) | Seakeeper → SYG |
| **2024-12-04** | Corporate termination meeting — predetermined outcome | Chad Hoey (VP), Tom Cole, Brad Mead |
| **2025-01-20** | SYG's formal Request for Support & Reconsideration — FINAL DRAFT sent to all Seakeeper executives | SYG → Seakeeper leadership |
| **2025-01-31** | Termination effective | — |
| **2025-07-08** | Seakeeper issues **Cease and Desist** to SYG (5.66–5.89 MB, two documents) | Seakeeper's counsel → SYG |
| **2025-07-08** | SYG drafts detailed GOST EMAIL response to C&D — FINAL DRAFT | SYG (through counsel Matthew Valcourt, Phillip Hutchinson) |
| **2025-07-09** | SYG GOST response v1.1 submitted to SYG legal department | SYG → legal@starboardyacht.com |

| **2025-07-23 01:14** | SYG GOST response sent directly to **all Seakeeper executives** (Cimino, Hoey, Cole, Mead, Pisko) and **Larry Gies, CEO of Madison Industries**, plus Madison IR (ir@madison.net) | SYG → Seakeeper + Madison |

| **2025-07-23 01:15** | **Madison Industries IR address bounced** — ir@madison.net returned UNDELIVERABLE | Microsoft Exchange notification |

| **2025-07-23 01:18** | Final submission to counsel Phillip Hutchinson (CC: Valcourt, Legal, Cedric Burl, Joe Seinitz) | SYG → Hutchinson |

| **2025-08-11** | Matthew Valcourt responds to GOST C&D email | Valcourt → SYG |

| **2025-10-30** | Seakeeper issues **FINAL Cease & Desist Letter** (2.83 MB) with Enclosures (870 KB) — second C&D round | Defendants' counsel → SYG |

| **2025-11-05** | SYG submits funding pitch packet — *SYG v. Seakeeper* damages summary ($30.05M) | SYG → potential counsel |

| **2025-11-21** | SYG sends Seakeeper termination materials to Kelley Uustal for representation evaluation | SYG → KU Law |

| **2025-11-23** | Enterprise liability overview ($117M) sent to Mark Tanenbaum / Cristina Pierson at KU Law | SYG → KU Law |

| **2026-03-10/11** | SYG's formal response to C&D: *"Re: Cease & Desist — Starboard Yacht Group Response (March 11, 2026)"* | SYG → **Traci T. McKee, Esq., Faegre Drinker** |

This chronology demonstrates that SYG has consistently engaged in good faith, responding to each C&D communication substantively and through counsel, while Defendants have escalated their interference without addressing the underlying coordination evidence.

Claimant notes that the **July 23, 2025 email to Madison Industries' IR address (ir@madison.net) bounced with an UNDELIVERABLE notification**. Madison Industries was therefore put on notice of SYG's claims and responses — its email infrastructure blocked receipt, but the attempt is documented. Larry Gies was separately copied at his direct Madison email address (larrygies@madison.net), confirming Madison corporate-level notice.

---

## III. LEGAL CLAIMS

### Count I — Tortious Interference with Business Relationship and Expectancy

Claimant maintained identifiable, established business relationships and advantageous business expectancies connected to the Seakeeper dealership and related marine operations. Defendants knew of these relationships and expectancies. Defendants intentionally and unjustifiably interfered with those relationships and expectancies through the coordinated termination scheme described above. Defendants' interference was not justified by legitimate competition or business purpose — it was driven by coordination with adverse litigation actors (Ivankovich, Moore & Company, Leatherwood) and executed through predetermined corporate processes that denied SYG any meaningful opportunity to cure or be heard. Claimant suffered damages as a direct and proximate result.

### Count II — Civil Conspiracy

Defendants agreed and acted in concert — with each other and with identified third parties including Steven Ivankovich, Aaron Leatherwood, Michael T. Moore, and others — to commit wrongful acts and/or lawful acts by wrongful means against Claimant's business interests. Overt acts were committed in furtherance of the conspiracy, including the July 6, 2023 coordination email, the predetermined December 4, 2024 termination meeting, the January 31, 2025 triple-convergence execution, and the subsequent C&D campaign. Claimant was damaged as a proximate result.

### Count III — Declaratory and Injunctive Relief

An actual controversy exists regarding Defendants' ongoing interference and evidence-preservation obligations. Claimant lacks an adequate remedy at law for the imminent spoliation and interference risks tied to Defendants' ongoing commercial and litigation activities. Claimant seeks declaratory relief establishing the wrongful nature of the termination and Defendants' ongoing preservation obligations, and narrowly tailored injunctive relief preserving relevant records, communications, and dealership-termination evidence.

---

## IV. DAMAGES

Claimant has suffered and continues to suffer damages in the following categories [ATTORNEY REVIEW REQUIRED — ALL FIGURES]:

| Category | Base Amount |
|----------|------------|
| Seakeeper Dealer Value (lost dealership, pipeline, goodwill) | $72,500,000 |
| Seakeeper Warranty / Cobia SK-2 Corrosion Defect Chain | $33,500,000 |
| SYG TANK IP (DARPA-related) | $12,100,000 |
| Salty Marine Battery IP | $9,800,000 |
| DARPA/Navy Pipeline Loss | $6,000,000 |
| SKR Lost Pipeline Profit | $1,700,000 |
| Lost Speed Fins Contract | $1,500,000 |
| Lost Humphree Contract | $1,000,000 |
| Lost Direct Seakeeper Profit | $979,999 |
| Seakeeper Inventory (stranded) | $974,624 |
| Excess Supplier Costs | $448,000 |
| SHM Billing Fraud (related enterprise) | $443,000 |
| Legal & Distraction Costs | $375,000 |
| Coerced SHM Settlements | $475,250 |
| Stock Seakeeper 26 Unit | $150,000 |
| SHM Wire Transfer (under duress) | $100,000 |
| Reputational Damage | $75,000 |
| **SUBTOTAL — Direct and Consequential** | **$142,120,873** |
| CMR Octopussy Liability Exposure | $12,147,750 |
| **TOTAL BASE DAMAGES** | **$154,268,623** |

| **TREBLE DAMAGES (RICO / 18 U.S.C. § 1964(c))** | **$462,805,869** |

[ATTORNEY REVIEW REQUIRED: Treble damages under RICO require establishment of a pattern of racketeering activity. The treble figure is presented as potential exposure; actual recovery will depend on the claims ultimately pled and proven. Confirm all individual line items against source documents before transmittal.]

For avoidance of doubt, this is not a speculative or frivolous dispute that can be dismissed as ordinary dealer friction. The injury profile is already realized and evidence-backed: substantial economic harm was inflicted during the Ivankovich coordination period and then compounded when Madison/Seakeeper shifted product-risk and warranty burdens to SYG, avoided fair-dealer loyalty and contractual obligations, and retained the economic benefit of SYG-developed market work. That retained value included SYG's good-faith investment in demo vessels, integration engineering, customer development, and combined interceptor-plus-gyro stabilization deployment know-how. Defendants' alleged conduct is therefore not merely a contract non-renewal issue; it is a liability-transfer and unjust-enrichment pattern that magnified damages while depriving SYG of the return on its own R&D and commercialization investment.

The product-development record includes two vessel integrations that were unique and first-of-model implementations at the time: (1) the SK-2 installation on SYG's 287 Pursuit demo platform, and (2) the highly customized SK-5 installation on SYG's second demo vessel, the 350 Everglades LX [ATTORNEY REVIEW REQUIRED — confirm exact model nomenclature and first-of-model proof exhibits]. These installations were not routine dealer transactions; they were CJS-led engineering and commercialization workstreams combining interceptor systems with gyro stabilization through hands-on full-trade execution and enterprise-level onboarding investment in full-time naval architects, marine engineers, product engineers, and technical trades aligned to SYG brand partners, core values, and mission to optimize owner-vessel performance and experience.

---

## V. DEMAND

Based on the foregoing, Claimant hereby demands that Defendants:

1. **Immediately cease and desist** from all tortious interference with Claimant's business relationships, prospective business advantages, and dealer-related operations;

2. **Restore Claimant's Seakeeper dealer rights** and all associated commercial privileges, pricing, inventory access, and support services, effective immediately;

3. **Pay compensatory damages** in the amount of **$154,268,623.00** [ATTORNEY REVIEW REQUIRED], or such greater amount as may be established at trial, including treble damages of **$462,805,869.00** where applicable;

4. **Implement an immediate litigation hold** across all Madison Industries and Seakeeper custodians, systems, and repositories, as detailed in Section VI below;

5. **Preserve all evidence** relating to the Seakeeper-SYG dealer relationship, the termination decision, and all communications with Steven Ivankovich, Aaron Leatherwood, Michael T. Moore, and any other enterprise actors identified in the related CMR, SHM, and SKR proceedings;

6. **Produce a written response** to this demand within **thirty (30) calendar days** of receipt (response deadline: **April 24, 2026**), confirming Defendants' position on each element of this demand and the status of litigation hold implementation.

Failure to respond within the specified period will be construed as a refusal to resolve this matter informally, and Claimant will proceed with all available judicial remedies without further notice.

---

## VI. LITIGATION HOLD AND PRESERVATION DEMAND

A. Formal Notice of Preservation Obligation

This letter constitutes formal notice that Madison Industries, Inc. and Seakeeper, Inc. are under a legal duty to preserve all documents, electronically stored information ("ESI"), and tangible evidence that is potentially relevant to the above-referenced claims and any related proceedings.

Under Florida law, the duty to preserve evidence arises when a party knows or should know that litigation is pending or reasonably anticipated. *Martino v. Wal-Mart Stores, Inc.*, 908 So. 2d 342 (Fla. 2005). Under federal law, the duty to preserve is governed by Federal Rule of Civil Procedure 37(e) and the court's inherent authority. Because litigation is now imminent and a Complaint is being filed concurrently with this demand, Defendants' preservation obligations are **immediate, absolute, and ongoing**.

B. Scope of Preservation — Categories of Documents

Defendants must immediately preserve ALL records, documents, communications, ESI, and tangible items in the following categories:

#### 1. Dealer Agreement Records

All dealer agreements, amendments, addenda, pricing schedules (including the June 6, 2024 Second Amendment), termination notices, renewal/non-renewal correspondence, and all prior drafts, redlined versions, and internal approval documents relating to SYG's authorized Seakeeper dealership.

#### 2. Termination Decision Documents

All internal memoranda, emails, meeting notes, presentation materials, board minutes, and decision documents relating to the decision to terminate SYG's dealership, including all documents from the **December 4, 2024 corporate termination meeting** and any prior planning discussions.

#### 3. Communications with Enterprise Actors

All communications — including emails, text messages, instant messages, phone logs, voicemails, letters, and memoranda — between any Madison Industries or Seakeeper officer, employee, agent, or representative and **Steven Ivankovich**, **Aaron Leatherwood**, **Michael T. Moore**, **Moore & Company**, **Caycie Flitman**, **Olafur Hand**, or any party, attorney, or representative involved in the *Contessa Marine Research LLC v. Starboard Yacht Group* litigation (Case No. CACE-22-017015) or the *Holland Marine* (SHM) matter.

#### 4. Madison Industries Executive Communications

All communications between Larry Gies (CEO), Tom Cole, and any Seakeeper officer or employee regarding SYG, the Seakeeper-SYG dealership, or any Seakeeper dealer termination decisions. This includes all communications through corporate email, personal email, messaging platforms, and any other medium.

#### 5. Warranty and Product Defect Records

All records relating to the SK-2 Cobia 33DC corrosion defect, including warranty claims submitted by SYG, internal quality assessments, factory inspection reports, remediation records, and any communications with vessel owners, dealers, or third parties regarding Seakeeper product defects reported by SYG.

#### 6. Financial Records

All records of Seakeeper unit sales through SYG's dealer channel, including invoices, payment records, commission statements, inventory records, pricing data, and any financial analyses of SYG's dealer performance. This includes all records relating to IMG vessel Seakeeper installations and the SK-26 stock unit purchase.

#### 7. Board and Governance Records

All Madison Industries board meeting minutes, executive committee minutes, and governance documents reflecting any discussion of Seakeeper dealer relationships, the SYG termination, or any interaction with Blackstone representatives regarding Seakeeper or SYG matters.

#### 8. Legal Correspondence

All correspondence with outside counsel (including Faegre Drinker Biddle & Reath LLP) regarding SYG, the Seakeeper-SYG dealer relationship, the termination decision, and all cease-and-desist communications — to the extent such correspondence is not protected by attorney-client privilege. Where privilege is asserted, Defendants must provide a privilege log identifying each withheld document.

#### 9. Electronic Data

All data maintained in or generated by Seakeeper's CRM, ERP, dealer management, email servers, cloud storage, backup systems, and any other electronic systems containing information about SYG's dealer account, sales performance, warranty claims, or communications. This includes all metadata associated with electronic files.

C. Time Period

The preservation obligation covers all documents and data from **January 1, 2019** through the present date and continuing through the final resolution of all related proceedings, including any appeals.

D. Preservation Instructions

Defendants must take the following steps immediately:

1. **Implement a formal litigation hold** across all relevant custodians, including but not limited to: Larry Gies (Madison CEO), Will Cimino (Seakeeper CFO), Chad Hoey (Seakeeper VP), Tom Cole, Brad Mead, Alexander Pisko, Chase Russell, Coty Garrett, Tony Galligan, Shane Reid, and all legal, sales, warranty, and executive personnel with knowledge of or involvement in SYG-related matters.

2. **Suspend all routine document destruction** as to any records within the categories described above, including automatic email deletion policies, server purge schedules, and any retention/destruction schedules.

3. **Preserve all electronic data** in native format, including emails, databases, backup tapes, cloud storage, and metadata. Do not migrate, convert, or alter the format of any ESI without first creating a forensically sound copy.

4. **Do NOT delete, alter, modify, overwrite, or destroy** any responsive documents or data — whether in hard copy or electronic form.

5. **Notify all employees, agents, and third-party service providers** who may possess or have access to relevant records of this litigation hold.

E. Spoliation Warning

**The destruction, alteration, concealment, or failure to preserve relevant evidence — whether intentional or negligent — constitutes spoliation and may result in:**

- **Adverse inference instructions** to the jury or trier of fact, directing that destroyed or altered evidence be presumed unfavorable to Defendants. *See Martino v. Wal-Mart Stores, Inc.*, 908 So. 2d 342 (Fla. 2005); *Golden Yachts, Inc. v. Hall*, 920 So. 2d 777 (Fla. 4th DCA 2006); Fed. R. Civ. P. 37(e)(2).

- **Sanctions** under the Court's inherent authority and Fed. R. Civ. P. 37(e), including striking of pleadings, default judgment, monetary sanctions, and attorneys' fees.

- **Independent tort claims for spoliation** of evidence under Florida law.

- **Criminal liability for obstruction of justice** under Florida Statutes § 918.13 and 18 U.S.C. § 1519 (destruction of records in federal investigations or proceedings).

Defendants are on notice that any failure to comply with this preservation demand will be brought to the attention of the Court and, where appropriate, to law enforcement authorities.

F. Confirmation Required

Defendants must provide **written confirmation** to the undersigned within **ten (10) business days** of receipt of this demand, confirming:

1. That a formal litigation hold has been implemented across all relevant custodians;

2. That all custodians identified above have been notified of their preservation obligations;

3. That no responsive documents or ESI have been destroyed, deleted, or altered since receiving this notice; and

4. That all electronic systems containing SYG-related data have been preserved and backed up.

Failure to provide timely written confirmation will be deemed evidence of non-compliance.

---

VII. NOTICE OF FINAL DEMAND SERVICE AND IMMINENT FILING

Claimant hereby provides formal notice of the following immediate enforcement schedule:

1. **Hand Delivery on Friday, March 27, 2026** [ATTORNEY REVIEW REQUIRED]

This demand package will be physically hand-delivered to identified Madison Industries and Seakeeper recipients and/or their authorized representatives, with contemporaneous delivery log, witness verification, and proof packet retention.

2. **Federal Filing on Monday, March 30, 2026** [ATTORNEY REVIEW REQUIRED]

Absent full, verifiable written compliance with the preservation and interference-cessation demands set forth herein, Claimant will file the corresponding federal complaint

and seek all available relief, including emergency preservation-related remedies where warranted.

3. **No Waiver of Existing Deadlines**

The April 24, 2026 written response deadline remains in effect for substantive settlement and cure communications, but this notice confirms that litigation activity will proceed in parallel unless immediate corrective action is taken.

4. **Counsel Email Service at 3:00 PM Friday, March 27, 2026** [ATTORNEY REVIEW REQUIRED]

Immediately after completion of physical hand delivery at the Seakeeper Palm Beach Boat Show booth (with multiple hard-copy sets delivered), Claimant will transmit a same-day formal notice email to defense counsel and copied executive recipients at **3:00 PM ET** attaching (a) the demand package, (b) proof-of-delivery log, and (c) contemporaneous delivery documentation. This transmission is intended to remove any dispute regarding notice, timing, and service sequence.

To eliminate any ambiguity as to the seriousness of this matter, Defendants are on notice that Claimant's filing package is supported by date-specific coordination evidence already identified in this demand, including:

- **July 6, 2023 coordination email** ("involve Seakeeper directly" / expected dealer switch support), establishing pre-termination planning;
- **December 2, 2024 termination notice** followed by **December 4, 2024 corporate termination meeting**, evidencing predetermined execution;
- **January 6, January 15, and January 20, 2025 good-faith reconsideration sequence**, with final executive-level distribution and no meaningful remediation;
- **January 31, 2025 effective termination convergence event**, aligned with related enterprise-pressure events already documented in connected case tracks;
- **July 23, 2025 executive notice chain** to Seakeeper and Madison leadership, including documented Madison IR bounce and direct CEO notice.

Defendants should treat this section as a final litigation-operations notice and immediate preservation trigger.

---

## VIII. RESPONSE AND CONTACT INFORMATION

All responses to this demand must be directed to:

**Charles Jacob Stratmann**

Starboard Yacht Group LLC

545 NE 17th Avenue

Fort Lauderdale, FL 33301

Telephone: (954) 873-8546

Email: legal@starboardyacht.com

**Response deadline: April 24, 2026** (30 calendar days from date of this letter).

This demand does not constitute a waiver of any rights, claims, or defenses available to Claimant under applicable law. Claimant expressly reserves the right to amend claims, seek additional damages, and pursue all available remedies, including treble damages under RICO (18 U.S.C. § 1964(c)), punitive damages, and equitable relief.

---

Respectfully submitted,

**Charles Jacob Stratmann**

CEO & Legal Operations Manager

Starboard Yacht Group LLC

545 NE 17th Avenue

Fort Lauderdale, FL 33301

(954) 873-8546

legal@starboardyacht.com

Date: March 25, 2026

---

VERIFICATION FLAGS

The following items require verification before this document is transmitted:

- [ ] **[ATTORNEY REVIEW REQUIRED]** — All dollar figures verified against source documents
- [ ] **[ATTORNEY REVIEW REQUIRED]** — All claim characterizations reviewed by counsel
- [ ] **[ATTORNEY REVIEW REQUIRED]** — RICO treble damages applicability confirmed
- [ ] **[ATTORNEY REVIEW REQUIRED]** — Statistical probability figure (1 in 12,154,219) verified
- [ ] **[FL DOS VERIFICATION REQUIRED]** — Madison Industries registered agent address confirmed via Florida SunBiz
- [ ] **[FL DOS VERIFICATION REQUIRED]** — Seakeeper, Inc. registered agent address confirmed via Florida SunBiz
- [ ] **[ATTORNEY REVIEW REQUIRED]** — Faegre Drinker firm address confirmed
- [ ] **[SOURCE VERIFICATION REQUIRED]** — Fireflies meeting transcript re: Seakeeper reconsideration located and verified
- [ ] **[ATTORNEY REVIEW REQUIRED]** — SK-2 unit counts and transaction details verified against source
- [ ] **[ATTORNEY REVIEW REQUIRED]** — CMR Octopussy $45M liability exposure figure verified
- [ ] **[ATTORNEY REVIEW REQUIRED]** — IMG vessel/Seakeeper fraud-on-court claims verified against trial transcript

- [ ] **[ATTORNEY REVIEW REQUIRED]** — Northwestern Board nexus (Gies/Cohen) independently verified
- [ ] **Human operator review complete** — Reviewed by [WHO] on 2026-03-26 against [SOURCE DOCS]
- [x] **Communication preflight passed** — `communication_preflight.py` run on 2026-03-26

---

**CONFIDENTIAL — LITIGATION HOLD**

---

*This demand letter and litigation hold notice is issued in connection with pending and anticipated federal proceedings. Nothing herein shall be construed as a waiver of any rights, claims, or defenses. This document was prepared with AI-assisted drafting and must be independently reviewed by the human operator against original source documents before transmittal per SGH Safety Rule #9.*