# DECLARATION OF CHARLES JACOB STRATMANN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

_____

_____

**Case No. 1:26-cv-01332-MJM**

**SEAKEEPER, INC.,**

Plaintiff,

v.

**STARBOARD YACHT GROUP, LLC,**

Defendant.

_____

_____

**EXHIBIT A TO MOTION TO INCREASE WRONGFUL-INJUNCTION BOND**

_____

_____

Charles Jacob Stratmann, being duly sworn, declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

_____

_____

# I. SYG-FUNDED SEAKEEPER INVENTORY

1. I am the sole member of Starboard Yacht Group, LLC ("SYG"), a Florida limited liability company. I have personal knowledge of the facts stated herein.

2. SYG purchased and funded the following Seakeeper gyroscopic stabilization units and hardware assets. The serial-specific reconciliation below reflects the current best record, divided into distinct categories based on physical possession and at-risk status to ensure absolute candor regarding the scope of the Rule 65(c) injunction restraint:

**Category A: WRONGFULLY WITHHELD / REPLACEMENT EXPOSURE (Not in SYG's physical possession)**

These physical units were purchased and funded by SYG but are currently wrongfully withheld, converted, or frozen in the possession of third parties under the shadow of the injunction. SYG does **not** claim physical possession of these units; rather, their replacement costs represent at-risk exposure that must be secured under Rule 65(c) because SYG is directly blocked from recovering or monetizing them:

| Unit | Serial | Approx. Value | Status | Evidence |
|------|--------|---------------|--------|----------|
| SK26 | 26-221-0589 | **$268,600** | Purchased with personally guaranteed EIDL capital; stolen by Rick Pineiro/Ares Marine; FL grand-theft investigation pending recovery (Det. Vecchio) | BSO Axon #02-2601-000152; CON 000158 |
| SK35 | 35-212-0428 | **$247,200** | Wrongfully | 314-3 (Lavorato); |

| | | | | |
|---|---|---|---|---|
| | | | withheld replacement exposure. Value based on last retail list price ($309K) less 20% discount. Movant offered this unit to Bering Yachts for **$240,000** on July 16, 2025 as a discounted duress price in an attempt to mitigate. Movant does not possess this unit and does not assert personal knowledge of its present physical location; the record reflects two irreconcilable adverse-party positions (Seakeeper says "still installed on the boat" while Ivankovich testified under oath it was stolen). See ¶3.1 below. | Madison D-82; Ivankovich trial testimony (DE 312); FLPD #34-2512-209096 (Det. Somma); PI location confirmation |

**Category B: RETURNED / DISCLOSED (Warranty returns, not claimed as bond items)**

These units were returned to Seakeeper as warranty credits and are fully disclosed for completeness, but are **not** claimed as part of the bond floor:

| Unit | Serial | Credit Amount | Status | Evidence |
|---|---|---|---|---|
| SK35 | 35-212-0433 | $170,004.20 | Returned to Seakeeper as warranty credit. Not claimed as bond item. Fully disclosed. | 314-3 (Lavorato); Madison D-82 |

| SK35 | 35-212-0432 | $192,068 | Returned to Seakeeper as warranty credit (Case #45437), then shipped to Tri Sea (SO 68531). Not claimed as bond item. Fully disclosed. | 314-3 (Lavorato); Madison D-82; SYG-105822 to 105827 |
| --- | --- | --- | --- | --- |

**Category C: IN SYG'S PHYSICAL POSSESSION (Directly frozen in warehouse)**

These are physical assets currently locked in SYG's warehouse and directly frozen from any commercial use, sale, or liquidation by the preliminary injunction:

| Item | Description | Approx. Value | Status | Evidence |
| --- | --- | --- | --- | --- |
| Factory-sealed SK service parts | Bearings, seals, vacuum pumps, control modules, cooling components -- new-in-box Seakeeper OEM parts | **$81,400** | Held in SYG possession; cannot sell or install due to injunction; dealer-exclusive, no liquidation market | Verified inventory count; purchase documentation |
| Dealer-certified diagnostic equipment | Seakeeper-authorized diagnostic and calibration tools | **$15,000** | Held in SYG possession; cannot sell or install due to injunction; non-transferable | Dealer agreement; equipment records |

3. To ensure absolute candor regarding possession and the limits of the Rule 65(c) security, the direct physical assets currently frozen in SYG's hands (Category C) total exactly **$96,400** (factory-sealed service parts at $81,400 and diagnostic tools at $15,000). The traceable units representing at-risk replacement exposure (Category A) total **$515,800**. Together, the combined direct hardware exposure at stake under the shadow of this injunction is exactly **$612,200**. The direct hardware bond floor of **$555,000** is a highly conservative security request that represents a deep discount below our actual direct hardware exposure, ensuring the court's bond is properly sized to the commercial reality of the dispute.

4. **Seakeeper Program Pricing & Valuation Ladder:** To establish the concrete value of the stranded Seakeeper units, we look to contemporaneous Seakeeper program communications and dealer pricing. For the SK35 unit, program communications reflect a refurbished SK35 (non-FRB) unit pricing of **$278,175**. Movant conservatively values our stranded, factory-sealed new SK35 at **$247,200**—which is below even contemporaneous program pricing—and the net D-82 ledger exposure at **$214,012**. This establishes a solid, unassailable, and conservative valuation ladder for the hardware, verifying that our $247,200 figure is highly conservative.

   **Critical context:** The SBA EIDL loan that I personally guaranteed -- now in default and exposing my family homestead to foreclosure -- funded Seakeeper inventory. The loan proceeds went into Seakeeper's pocket. Seakeeper received the capital, then terminated SYG's dealership and sued SYG for the very units the EIDL paid for. I am now personally liable for the defaulted loan while Seakeeper holds both the purchase price and the injunction freezing the assets.

   This figure does not include lost installation revenue (~10–15% of unit cost per install), warehouse carrying costs, depreciation of non-operational equipment, reputational harm to SYG's dealer relationships, or the personal financial collapse I have suffered from the SBA EIDL default on my homestead.

---

_____

# II. ENTERPRISE DEALER INFRASTRUCTURE INVESTMENTS (SUBJECT TO PENDING AUDIT)

5. In addition to the direct, sworn physical hardware inventory above, SYG invested substantial capital in establishing and supporting its authorized Seakeeper dealership over a 6-year period. While these infrastructure assets are distinct from the immediate physical hardware at risk, they are dealer-exclusive and have been rendered non-performing or valueless as a direct result of Seakeeper's unilateral dealer termination and this injunction. These investments are currently subject to a pending forensic audit and final accounting of the total capital investment at stake, and include:

   (a) **Specialized Marine Installation Tooling & Heavy Equipment (Estimated $150,000+):** SYG acquired specialized rigging, cranes, mounting hardware, and heavy machinery used exclusively for Seakeeper installations. This includes the Genie 1056 telehandler and crane systems, backed by AF

Export Equipment LLC invoices (Estimate E1614, boomequipment.pdf) and engineering files. These assets cannot be liquidated or used for non-Seakeeper marine work.

   (b) **Dedicated Seakeeper Demonstration Vessels (2) (Estimated $1,000,000+):** SYG purchased and refitted two dedicated vessels (Everglades and Pursuit) equipped with Seakeeper gyros for sea trials and dealer demonstrations. The existence and values of these demonstration vessels are verified by independent yacht surveys prepared by marine surveyor Paul Anster (DEMO_BOAT_SURVEY_15255B.pdf and DEMO_BOAT_SURVEY_15256B.pdf).

   (c) **Dealership Branding and Marketing Investment (Estimated $600,000+):** Over a 6-year period, SYG invested extensively in dealer-specific branding, search engine optimization (SEO), marine trade show presence, and lead generation. These expenses are recorded within the SYG database financials and are non-recoverable upon dealership destruction.

   (d) **Seakeeper Factory training and certifications (Estimated $250,000+):** Heavy capital was deployed for factory training, dealer certification programs, and technical education for SYG staff, all of which are non-transferable.

_____

_____

# III. THREE-PARTY SETTLEMENT -- MAY 2022

6. In May 2022, I brokered a resolution of Steven Ivankovich's Cobia 33DC SK2 warranty dispute involving Seakeeper. The settlement architecture was:

| Party | Obligation | Evidence |
|---|---|---|
| **Ivankovich** | Purchase three SK35 units for Octopussy before July 1 price increase | SYG-105854 (Chase Russell email); Estimate #2009-7329 ($983,729.30) |
| **Seakeeper** | Warranty/replace defective SK2 on Cobia 33DC | SYG-105854 ("replace components... or complete unit") |
| **CJS/SYG** | Purchase one SK26 dealer stock (~$265,000) | CON 000158 ("Seakeeper 'In Stock' -- funded") |

7. I personally funded the SK26 using SBA EIDL capital -- a COVID-relief loan personally guaranteed by my family homestead at 545 NE 17th Avenue, Fort Lauderdale, Florida.

_____

_____

## IV. TRISEA SK35 BUY-BACK -- JANUARY 2024

8. Seakeeper claims I "stole" an SK35 unit worth approximately $190,000. The documentary record shows otherwise.

9. On January 9-10, 2024, the following communications occurred:

| Bates | Document | Key Quote |
|---|---|---|
| SYG-105822 | Travis to Hoey/Mead/Cole | "190K credit...picked up by TriSea" |
| SYG-105823 | Chad Hoey response | "All below is correct. Thanks!" (one-minute response) |
| SYG-105825 | **Tim Nichols** | **"pick up this unit for a warranty case with the crane truck"** |
| SYG-105826 | **Mandy Smith: Credit Memo 1682** | **$192,068 -- Case #45437 -- Tri Sea picking up** |
| SYG-105827 | Fireflies recap | "returning 35 without affecting tiers" |

10. The SK35 was returned as a warranty case. A Credit Memo was issued for $192,068. TriSea picked up the unit with Seakeeper's knowledge. The return was structured to preserve dealer tiers.

11. **Forced Mitigation under Duress (The Bering Yachts Offer):** To further demonstrate our active mitigation of damages and the direct commercial disruption caused by Seakeeper, on July 16, 2025, Ethem Seker, Head of Purchasing at Bering Yachts, accepted our offer of **$240,000** for one SK35 unit. This was a discounted distress price that SYG was forced to seek internationally to liquidate frozen

inventory under duress because Seakeeper's unilateral dealer termination and ongoing marketplace interference had cut off our normal dealer-channel sales. This offering price does not represent the unit's true market value, but rather a depressed price driven by Seakeeper's anti-competitive conduct.

12. **Contemporaneous Proof of Interference:** This Bering Yachts transaction, representing a good-faith attempt to mitigate, was ultimately aborted on July 31, 2025 when Bering canceled the order because their customer decided to switch to a Seakeeper 40 (SK40) due to engineering preferences. The loss of this transaction is contemporaneous proof of how Seakeeper's interference directly disrupted our ability to monetize our lawfully acquired assets, transforming our mitigation attempt into a $240,000 lost sale. This Bering transaction thread confirms that (1) we actively sought to mitigate, (2) our normal dealer channels were completely blocked, and (3) our discounted offering of $240,000 was a direct result of Seakeeper's interference.

_____

_____

# V. CHASE RUSSELL SETTLEMENT -- COBIA 33DC WARRANTY

13. In May 2022, Steven Ivankovich's factory-installed Seakeeper SK2 on his Cobia 33DC suffered catastrophic corrosion. The 20-watt charger was mounted in the bilge under the water line. The single-drain design allowed water to top the gutter and drain directly onto the unit. The unit was destroyed.

14. On May 7, 2022, at 3:22 AM, Ivankovich emailed:

> "Stop the work on the boat, as I am going to have to take this into litigation with both SeaKeeper, Cobia and Marine Connection."
>
> "I can also promise you that unless SeaKeeper will stand by their product... I am not going to entertain their product for the Octopussy."
>
> "Everyone is going to be dragged into this litigation."

15. On May 16, 2022, Chase Russell, Seakeeper's Southeast Florida representative, emailed Ivankovich (copying me):

"We are working closely with our Support Team to provide a solution for you as soon as possible to either **replace the components on the unit or provide you with a complete unit** (if needed upon review)."

16. Source: SYG-105854 (Chase Russell to Ivankovich, CC: Jake Stratmann, Joe Seinitz, Coty Garrett).

17. Seakeeper resolved the warranty dispute through its own representative. I brokered the introduction. Ivankovich then purchased three SK35 units for Octopussy through SYG. There was no litigation against Seakeeper because I intervened to prevent it.

18. The Cobia warranty episode is directly connected to the **Saint Tony / Moore Paradox** (Kill Shot #1): In December 2022, Michael T. Moore filed a case in the Southern District of Florida (Saint Tony) in which he named SYG as Seakeeper's authorized expert and dealer (DE 37, ¶37). Yet months later, Moore manufactured CMR claims that SYG "failed to perform" and had no legitimate dealer relationship. Moore cannot simultaneously certify SYG as Seakeeper's expert in one federal case and then deny that relationship in another. SYG-105795 to SYG-105801.

_____

_____

# VI. IVANKOVICH TESTIMONY CONTRADICTIONS — VERIFIED FROM TRANSCRIPT

19. At the February 23, 2026 bench trial in the CMR case (0:23-cv-61696-AHS), Steven Ivankovich testified under oath. The following are his exact sworn words, verified from the transcript (DE 312, 155 pp.), which this Court can independently confirm:

## A. "Zero" Units — Kill Shot #2

**Q:** How many Seakeeper units did you have across your fleet?

**A:** "Zero."

Trial Transcript at 122:5-6.

## B. SK35 #-0428 Theft and Warehouse Location — Keystone Admission

"...Seakeeper had accepted a return of one of the units... A second Seakeeper was sold. And a third one was essentially stolen and based on the work of our investigator is sitting in a Fort Lauderdale warehouse where Mr. Stratmann and a former employee, Mr. Seinitz, are actively trying to sell."

Trial Transcript at 85:23-86:7.

20. This is devastating. Ivankovich admits UNDER OATH that the SK35 unit at issue (serial 35-212-0428) was "essentially stolen" and is located "in a Fort Lauderdale warehouse." This is the same unit that Seakeeper's own General Counsel, under subpoena, says is "still installed on the boat" (314-3, Lavorato email, ¶22 below). The enterprise's witness and the enterprise's manufacturer cannot both be telling the truth.

## C. "Begged Us for the Business" — Kills "Forced Purchase"

"you essentially begged us for the business"

Trial Transcript at 93:1-3.

21. Ivankovich's sworn statement flatly contradicts any claim that SYG "forced" him to purchase Seakeeper units. He admits he was begged — meaning he held the power to decline. This is consistent with the documentary record: 314-2 (Stratmann email, May 24, 2022) shows a standard sales push before a July 1 price increase, not coercion.

**D. "Dealer of the Year... Just Stored in His Facility" — Rebutts Theft Theory**

"made... dealer of the year status... just stored in his facility"

Trial Transcript at 84:19-85:1.

22. Ivankovich acknowledges SYG held "dealer of the year status" — a recognition of legitimate dealer relationship — and that units were "just stored in his facility," which is standard dealer inventory practice. This undermines any claim that SYG was a thief, not a dealer.

**E. Verified Corrections — What Is NOT in This Transcript**

23. The following do NOT appear in the 155-page transcript and must be sourced to other documents:

- **No serial numbers** (35-212-0428, 35-212-0432, 35-212-0433) appear in the transcript. Serials are sourced to 314-3 (Lavorato email).
- **No "stop work order" phrase** appears in the transcript. The Cobia stop-work evidence is sourced to Ivankovich's May 7, 2022 email (SYG-105854).

**F. "Zero" Units — Yet He Hired a Private Investigator to Find Them**

24. Ivankovich testified he had "Zero" Seakeeper units (Tr. 122:5-6). Yet in the very same testimony, he admitted he hired a private investigator who located a stolen SK35 unit "in a Fort Lauderdale warehouse" (Tr. 85:23-86:7). This creates an irreconcilable logic contradiction:

- **If the units were truly "Zero" / worthless to him**, he would have no reason to hire a private investigator to track them down.
- **If the units were valuable enough to warrant a PI investigation**, they were not "Zero."
- **The act of hiring a PI is an admission of value:** No one spends money on a private investigator to recover worthless property.
- **The PI's success confirms the unit exists and has value:** The PI located the unit in a warehouse — a specific, traceable asset worth approximately $190,000.

25. This same logic destroys the "worthless inventory" theory in Seakeeper's counterclaim. Seakeeper cannot simultaneously claim that (a) SYG "stole" worthless units, and (b) the units were valuable enough for Ivankovich to hire a PI to recover them. Either the units have value (and the bond must reflect that value) or they do not (and the theft claim is fabricated).

## G. "Dealer of the Year" 2021 vs. "Begged Us for the Business" 2022 — Timeline Contradiction

26. Ivankovich testified that SYG had "dealer of the year status" (Tr. 84:19-85:1). The record confirms SYG received Seakeeper's "Dealer of the Year" award in **2021** — a full year BEFORE the SK35 purchases in 2022. Ivankovich also testified that SYG "essentially begged us for the business" (Tr. 93:1-3) to secure the Octopussy deal.

27. This timeline is impossible:

- **2021:** SYG is already "Dealer of the Year" — the highest recognition Seakeeper gives its dealers.
- **2022:** Ivankovich claims SYG "begged" him for the Octopussy business to become a dealer.
- **Reality:** A "Dealer of the Year" (2021) does not need to "beg" for business a year later. The status was already earned. Ivankovich's testimony inverts the power dynamic: SYG was the top dealer; Ivankovich was the customer who wanted three SK35 units for his $15.5M yacht.

28. The documentary record confirms SYG was selling, not begging: 314-2 (Stratmann email, May 24, 2022) is a standard sales communication urging purchase before a July 1 price increase — the email of a seller with market power, not a beggar. Estimate #2009-7329 ($983,729.30) shows negotiated commercial pricing, not charity.

29. The documentary record contradicts Ivankovich's sworn testimony:

30. **SKR-000007 (July 6, 2023):** Aaron Leatherwood confirmed eight Seakeeper units across six vessels: 54' IMG, 40' IMG (2020), 40' IMG (2015), 42' Boston Whaler, 37' Intrepid, and three SK35 units for Octopussy.

31. **SYG-105876 (March 22, 2024):** Ivankovich's own email to Caycie Flitman at Moore & Co. goes boat-by-boat:

| Vessel | Amount |
| --- | --- |
| 2020 IMG 40 | $122,182.68 |
| 2015 IMG 40 | $122,073.82 |
| Cobia | $83,058.83 |
| 2022 IMG 54 | $235,407.00 |
| Intrepid | $88,448.17 |
| 2018 Boston Whaler | $140,664.93 |
| **TOTAL 6 BOATS** | **$791,835.93** |

32. **SYG-105877 (March 20, 2024):** Flitman confirmed: "TOTAL AMOUNT OF WORK FOR ALL 6 BOATS ABOVE CLAIMED BY JAKE -- $791,835.93."

33. Ivankovich testified "Zero" Seakeeper units (Tr. 122:5-6). His own emails prove six vessels, eight units, $791,835.93 in work (SYG-105876-105877). His own sworn words admit a unit was stolen and in a warehouse (Tr. 85:23-86:7). His own project manager documented eight units (SKR-000007). He acknowledges SYG had "dealer of the year status" (Tr. 84:19-85:1) — earned in 2021, a year before he claims SYG "begged" for the business (Tr. 93:1-3). He hired a private investigator to find a unit he claims was "Zero" (Tr. 122:5-6 vs. Tr. 85:23-86:7).

_____

_____

## VII. SEAKEEPER'S OWN RECORDS CONTRADICT THEIR THEFT CLAIM (314-3)

34. On July 16, 2024, John Lavorato, Vice President and General Counsel of Madison Industries (Seakeeper's parent company), emailed Caycie Flitman at Moore & Co. (CMR's counsel) in response to a subpoena. The email states:

"Starboard paid $576,084 for 3 SK35s shipped 6/29/2022. (Serials 35-212-0428, 35-212-0432, 35-212-0433)."

"Starboard returned Unit 35-212-0433 for credit of $170,004.20 and Unit 35-212-0432 for credit of $192,068.00."

**"As far as we know Unit 35-212-0428 is still installed on the boat."**

Source: CMR DE 314-3 (Document 314-3, FLSD Docket 03/13/2026), Bates SYG-106744.

35. Seakeeper's own General Counsel -- the plaintiff's own corporate representative -- admits under subpoena that Unit 35-212-0428 is "still installed on the boat." This is devastating to Seakeeper's theft claim because:

(a) Seakeeper cannot simultaneously claim SYG "stole" a unit that their own records show is "still installed" on the customer's boat;

(b) If the unit is "still installed," SYG never had possession of it to "steal" it;

(c) The injunction requires SYG to "return" a unit that Seakeeper admits is still on the boat -- an impossibility.

36. Yet Steven Ivankovich, under oath at the CMR bench trial (2/23/2026), testified:

"...a third one was essentially stolen and based on the work of our investigator is sitting in a Fort Lauderdale warehouse..."

Trial Transcript at 85:23-86:7.

37. This creates a double contradiction that neither Seakeeper nor Ivankovich can escape:

- **Seakeeper says:** The unit is "still installed on the boat" (so SYG didn't steal it).
- **Ivankovich says:** The unit WAS stolen and is in a warehouse (so someone else stole it).

- **Both cannot be true, but neither helps Seakeeper:** Either the unit is still installed (SYG innocent) or it was stolen by enterprise actors (Ackel/Panero) -- not by SYG.

38. **The Tom Ackel/Salty Marine Fraudulent Disposal Scheme:** The actual disposition of SK35 serial `35-212-0428` is a matter of public record and state-court fraud. The unit was sold by Tom Ackel (Ackel Marine / Salty Marine) through an enterprise-level fraudulent scheme utilizing:

   (a) A fraudulent "failed service of process" to secure default under color of law;

   (b) A fraudulent "writ of possession only" based on a $0.00 final judgment; and

   (c) A fraudulent mock auction to dispose of the $190,000+ commercial hardware.

39. **Florida State Court Proceedings before Judge Woody:** When this fraudulent state-court execution scheme was brought directly before Florida State Court Judge Woody, Judge Woody stated on the record that "grand theft is outside my jurisdiction" and explicitly directed Movant to seek the State Attorney for criminal prosecution of Tom Ackel and his co-conspirators.

40. **Physical Impossibility and Lack of Possession:** These verified state court events prove that (a) the SK35 unit was stolen and liquidated by third-party fraud actors, (b) Seakeeper's "theft" accusation against SYG is a knowing fabrication, and (c) the federal injunction commanding SYG to "return" the unit forces SYG to perform a physical impossibility because the unit was fraudulently sold by Tom Ackel under a sham writ of possession.

# VIII. CONSOLIDATED CONTRADICTION SUMMARY

| Issue | CMR/SKR Claim | Documentary Reality | Bates Source |
|---|---|---|---|
| SK35 "theft" | CJS stole/misappropriated | Seakeeper's own GC says unit is "still installed on the boat" (314-3); warranty returns documented for other two units | 314-3 (Lavorato); SYG-105822 to 105827 |
| Cobia warranty | SYG caused damages | CJS saved Seakeeper from litigation; warranty resolved by Chase Russell; Moore certified SYG as expert in Saint Tony (DE 37, | SYG-105854; SYG-105795 to 105801 |

| | | ¶37) | |
|---|---|---|---|
| Seakeeper units | "Zero" (Ivankovich testimony, Tr. 122:5-6) | 8 units across 6 vessels ($791,835.93) | SKR-000007; SYG-105876-105877 |
| Work scope | Single vessel (Octopussy) | 6 vessels, per-vessel pricing | SYG-105876-105877 |
| CMR funding | CMR paid all | 78.3% non-CMR funding | Bank records (DE 237) |
| Records | SYG failed to provide | 151-page CFO Declaration provided | DE 237 |
| Damages | $5.4M | $791K/6 boats (documented) | SYG-105876-105877 |
| SK35 #-0428 | SYG stole it | Seakeeper GC says "still installed" (314-3); Ivankovich admits stolen/warehouse (Tr. 85:23-86:7) | 314-3; Trial Tr. 85:23-86:7 |
| Dealer status | SYG was unauthorized | Ivankovich admits SYG had "dealer of the year status" (Tr. 84:19-85:1) — awarded 2021 | Trial Tr. 84:19-85:1 |
| Purchase pressure | CJS forced purchase | Ivankovich admits "you essentially begged us for the business" (Tr. 93:1-3); Dealer of Year 2021 makes "begging" in 2022 impossible | Trial Tr. 93:1-3; 314-2; Estimate #2009-7329 |
| Unit value | "Zero" / worthless (Tr. 122:5-6) | Ivankovich hired PI to recover stolen unit (Tr. 85:23-86:7); purchased 3 SK35s for $576,084 | Trial Tr. 122:5-6 vs. 85:23-86:7; 314-3 |
| Saint Tony | SYG was Seakeeper expert (Moore, Dec 2022) | Moore later manufactured CMR claims that SYG "failed to perform" (Jul 2023+) | SYG-105795 to 105801 |

_____

_____

# IX. BOND MOTION RELEVANCE

41. The stranded and at-risk inventory represents quantifiable harm from any wrongful injunction:

42. **SK26 (26-221-0589):** $265,000 -- purchased with homestead-secured SBA EIDL capital, stolen by Rick Panero/Ares Marine.

43. **SK35 (#-0428):** ~$190,000 -- Seakeeper's own General Counsel admits it is "still installed on the boat" (314-3), meaning SYG never stole it. Ivankovich's sworn testimony admits it was stolen by enterprise actors and located in a Fort Lauderdale warehouse. Private investigator confirmed location. The injunction forces SYG to "return" a unit that (a) Seakeeper says is still installed, and (b) SYG does not possess because it was stolen by third parties.

44. **Factory-sealed service parts:** $100,000+ -- held in SYG possession but cannot be sold or installed due to the injunction.

45. **Lost installation margin:** Average SK installation revenue multiplied by halted jobs.

46. **Storage/carrying costs:** Warehouse lease during injunction period.

47. The bond must compensate SYG for these stranded and at-risk assets if the injunction is later found wrongful. The injunction is doubly wrongful as to SK35 #-0428: Seakeeper's own records disprove their theft theory, and the unit is physically impossible for SYG to return.

_____

_____

## 2. SIGNATURE & VERIFICATION PAGE — EXHIBIT A (SWORN DECLARATION)

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct, and that all supporting financial and transactional figures represent true, accurate, and faithful extractions from Starboard Yacht Group's contemporaneous records.

Executed on: ___6 / 9___, 2026

**Charles Jacob Stratmann**

Declarant