IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| Seakeeper, Inc., | * | Civil No. 1:26-cv-01332-MJM |
| Plaintiff, | * | Judge Matthew J. Maddox |
| v. | * | |
| Starboard Yacht Group, LLC, | * | |

## SUPPLEMENTAL DECLARATION OF CHARLES JACOB STRATMANN REGARDING IMPOSSIBILITY OF PERFORMANCE, PRIOR BRANDING AUTHORIZATION, AND MANUFACTURED DEFAULT

I, Charles Jacob Stratmann, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am the Sole Member and Manager of Defendant Starboard Yacht Group, LLC ("SYG"). I make this Supplemental Declaration in support of SYG's Motion to Vacate Entry of Default and to provide critical documentary evidence regarding impossibility of performance, historical trademark authorization, and the criminal and fraudulent actions of third parties that manufactured the default in this action.

## I. IMPOSSIBILITY OF PERFORMANCE — THE "SLOW YOUR ROLL" AUCTION EVIDENCE

1. On July 7, 2026, I received direct photo and text communications from the third-party auction buyer who recently purchased SYG's former Everglades 350LX demonstration vessel, "Slow Your Roll II" (the "Vessel").

2. These communications included a photograph taken today, July 7, 2026, showing the Vessel on a National Liquidators auction trailer (displaying the National Liquidators contact number (800) 633-7172 and website `www.yachtauctions.com`).

3. The photograph documents that the Vessel's hull still prominently displays the "SEAKEEPER" and "HUMPHREE" wordmarks and the tagline "LEADERS IN MARINE STABILIZATION / Stability Matters" alongside the "STARBOARD YACHT GROUP" branding.

4. This Vessel was forcefully seized and dispossessed from SYG through a separate, contested maritime foreclosure action (*Seacoast National Bank v. Starboard Yacht Group, LLC*, Case No. 0:26-cv-60289, S.D. Fla.) and is currently held in the physical custody and control of the foreclosing party's court-appointed substitute custodian, National Liquidators.

5. Consequently, SYG has no physical access, title, or legal authority to board the Vessel or modify its hull. To the extent Seakeeper argues that the continuing display of these marks on the Vessel constitutes "continuing trademark infringement" or a violation of this Court's Preliminary Injunction (ECF No. 26), compliance is a physical and legal impossibility for SYG. The responsibility for the Vessel's current physical state and any branding displayed thereon rests entirely with the foreclosing party, Seacoast National Bank, and its substitute custodian, National Liquidators.

## II. HISTORICAL AUTHORIZATION OF FLEET AND DEMO VESSEL BRANDING

1. During the multi-year period in which SYG served as Seakeeper's top-performing Southeast Florida dealer, Seakeeper actively encouraged, authorized, and profited from the display of its trademark on SYG's commercial fleet of service vehicles and dual-branded demonstration vessels.

2. This co-branding was a core element of Seakeeper's regional marketing strategy. Seakeeper was fully aware of, and expressly approved, the application of "SEAKEEPER" decals to

SYG's entire fleet of service vans, trailers, and demo boats. This branding was designed to signal to the yachting public that SYG was Seakeeper's premier authorized service and installation hub.

3. Seakeeper's current attempt to characterize this historical, authorized, and expensive co-branding as "willful infringement" represents a selective and bad-faith rewriting of the parties' course of dealing. SYG invested tens of thousands of dollars in this branding in direct reliance on its authorized status. Seakeeper cannot now use the existence of the very branding it demanded as a weapon to establish "willful misconduct" or "culpability" on the part of SYG.

## III. MANUFACTURED DEFAULT, ASSET STRIPPING, AND ACTIVE CRIMINAL INVESTIGATIONS

1. The default in this action was directly manufactured by a coordinated multi-front litigation and asset-stripping campaign designed to strip SYG of all operating capital and legal representation, timed to coincide with a critical federal court hearing.

2. On June 4, 2026—the exact day the Clerk entered default in this action—I was scheduled to attend a critical hearing in a parallel proceeding. The overlapping timing of these hearings and filing deadlines was engineered by opposing counsel networks to overwhelm a pro se defendant.

3. This litigation was accompanied by the unlawful ex parte seizure and stripping of SYG's active business assets, operating bank accounts, and customer deposits. This asset stripping was executed to ensure that SYG could not retain Maryland-licensed counsel to file a timely responsive pleading in this Court, creating an artificial structural barrier to representation.

4. This financial devastation and business disruption is not the result of ordinary commercial failure; it is the subject of active, ongoing state and federal law enforcement investigations.

5. To date, SYG has filed four (4) active complaints with the FBI's **Internet Crime Complaint Center (IC3)** and five (5) active criminal police reports with the **Broward Sheriff's Office (BSO)** and **Fort Lauderdale Police Department (FLPD)**.

6. These police reports and investigations include:

* **BSO Report No. 12-2602-001401** (concerning identity fraud and unauthorized corporate access);

* **FLPD Report No. 34-2603-011854** (concerning theft of proprietary data and customer lists);

* **BSO Report No. 12-2604-002235** (concerning corporate bank account exfiltration);

* **FLPD Report No. 34-2604-015891** (concerning physical asset diversion); and

* **BSO Report No. 12-2605-004412** (concerning coordinated corporate extortion and unauthorized SharePoint breaches).

7. Each of these reports is currently under active, ongoing investigation by detective and investigative units. These criminal disruptions, combined with the complete freezing of SYG's operating accounts, made it a physical and financial impossibility for SYG to maintain active legal representation during the critical response window.

8. SYG's default in this action was not the result of culpable neglect, callous disregard, or willful omission. It was the direct consequence of a devastating, extrajudicial asset-stripping campaign and documented criminal conduct that is currently being prosecuted by law enforcement. The moment SYG secured a temporary buffer, it acted with maximum diligence to seek pro bono counsel and file this Motion.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

**Charles Jacob Stratmann**


Respectfully submitted,

**/s/ Charles Jacob Stratmann**    7/7/2026

Charles Jacob Stratmann
Sole Member and Manager, Starboard Yacht Group, LLC
Defendant Pro Se
545 NE 17th Avenue
Fort Lauderdale, Florida 33301
Telephone: (954) 873-8546
Email: jake@starboardyacht.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of July, 2026, I caused a true and correct copy of the

foregoing Supplemental Declaration to be filed via the Court's CM/ECF system, which will

provide electronic notice to counsel for Plaintiff:

Anthony F. Jankoski

Traci T. McKee (pro hac vice)

Elizabeth A. Wurm (pro hac vice)

Faegre Drinker Biddle & Reath LLP

Counsel for Plaintiff Seakeeper, Inc.

/s/ Charles Jacob Stratmann

**Charles Jacob Stratmann**