**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SEAKEEPER, INC.,**<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>**STARBOARD YACHT GROUP**, LLC,<br><br>　　　　　　　Defendant. | Case No.: 1:26-cv-01332-MJM |

**MEMORANDUM OF LAW IN SUPPORT OF SEAKEEPER, INC.'S**
**MOTION FOR DEFAULT JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

LEGAL STANDARD .....................................................................................................................5

ARGUMENT ..................................................................................................................................6

      I.       Jurisdiction and Service Are Proper. ...............................................................6

             A.      The Court Has Subject-Matter Jurisdiction. ......................................6

             B.      Defendant Is Subject to the Court's Jurisdiction. ..............................7

             C.      Service Was Proper. ...........................................................................7

      II.     SYG Is Liable for Trademark Infringement, False Designation of Origin, Maryland Unfair Competition, and Breach of Contract. ...............................8

      III.    Seakeeper Is Entitled to Permanent Injunctive Relief. ...................................10

             A.      Seakeeper Has Suffered Irreparable Injury. .....................................11

      IV.    Traditional Remedies at Law Are Inadequate to Compensate Seakeeper. ............12

             A.      The Balance of Equities Favors Seakeeper. .....................................13

             B.      The Public Interest Favors Granting a Permanent Injunction. ...................14

             C.      The Permanent Injunction Should Bind Online Service Providers That, After Actual Notice, Continue to Facilitate Access to Defendant-Controlled Websites Containing Enjoined Infringing Content. ...............................................................................................14

      V.     Seakeeper Is Entitled to A Return of Its Injunction Bond. .................................18

      VI.    Seakeeper Is Entitled to Nominal Damages Without the Need for Hearing. .........18

      VII.   The Court Should Award Seakeeper Its Costs and Attorney's Fees. ....................19

CONCLUSION................................................................................................................................20

**INTRODUCTION**

Plaintiff, Seakeeper, Inc. ("Seakeeper"), filed this action alleging trademark infringement, false designation of origin, unfair competition, and breach of contract against Defendant, Starboard Yacht Group, LLC ("Defendant" or "SYG"). Defendant was properly served with process on April 10, 2026. Defendant failed to file a response to Seakeeper's Complaint or otherwise properly appear in this action, constituting default under Fed. R. Civ. P. 55(a), and the Clerk entered Defendant's default on June 4, 2026. As a result of Defendant's default, Defendant has admitted all well-pleaded facts and allegations asserted in Seakeeper's Complaint and is liable for the claims asserted. Therefore, Seakeeper respectfully requests that this Court enter default judgment against Defendant; convert the prior preliminary injunction into a permanent injunction prohibiting Defendant from further unfair competition and infringement activity and directing internet service providers in concert with Defendant to remove infringing content from Defendant's websites; award nominal damages, costs, and attorney's fees to Seakeeper; and return Seakeeper's $12,001.00 preliminary injunction bonds to Seakeeper.

**BACKGROUND[1]**

Seakeeper has manufactured marine gyro stabilizers since 2008 and is the world leader in marine motion control technology. (Compl., ECF 1, ¶ 7.) Through continuous and extensive use in commerce for the past 18 years, Seakeeper has developed substantial goodwill and valuable common law trademark rights in the Seakeeper name and associated marks. (*Id.* ¶¶ 7-11.) Defendant SYG was previously an authorized dealer and licensee of Seakeeper's trademarks pursuant to two contractual agreements: a Certified Dealer Non-Exclusive Agreement dated April

---

[1] Though not necessary to the determination of this Motion, a more complete statement of the factual background of this case is found in Seakeeper's Memorandum of Law in Support of Preliminary Injunction dated April 24, 2026 (ECF 11-1) and the Court's factual findings made on the record at the preliminary injunction hearing (ECF 26).

12th, 2019 (the "Agreement"), and a Seakeeper Ride Certified Dealer Agreement dated February 2, 2024 (the "Ride Agreement") (collectively, the "Agreements"). (*Id.* ¶¶ 13-26.) The Agreements impose various post-termination obligations on Defendant, including the duty to cease and refrain from selling, promoting, or offering Seakeeper products; to "[c]ease and refrain from the sale, promotion and offering of [Seakeeper] Products"; to remove and cease using any and all of Seakeeper's protected marks from Defendant's physical signs, advertising, letterhead, websites, and other materials; and to "discontinue all representations from which it might be inferred that any relationship exists between [Defendant and Seakeeper]." (Compl., ECF 1, ¶¶ 17, 26; Agreement, ECF 3, ¶ 17; Ride Agreement, ECF 4, ¶ 55.)

After Seakeeper lawfully terminated the Agreements with Defendant, and despite Seakeeper's repeated written demands to cease, Defendant has continued to unlawfully display Seakeeper's marks on its websites and social media, continued to falsely represent an affiliation with Seakeeper, and continued to offer Seakeeper products for sale and servicing in violation of its contractual obligations and the Lanham Act. (Compl., ECF 1, ¶¶ 27-49; *see also* Hand Decl., ECF 11-2, ¶¶ 14-26.) As a result, Seakeeper filed this lawsuit for trademark infringement, false designation of origin, unfair competition, and breach of contract. (*See* Compl., ECF 1.)

SYG was served with Seakeeper's Complaint on April 10, 2026. (ECF 9.) On April 24, 2026, Seakeeper moved for a temporary restraining order and preliminary injunction against Defendant. (ECF 11.) On May 11, 2026, after notice to SYG, the Court heard arguments, witness testimony, and evidence on Seakeeper's motion. (ECF 26 at 1.) SYG did not appear, but SYG's sole member-manager, Charles Jacob Stratmann, attended telephonically and was permitted to observe and answer questions from the Court. After a lengthy hearing, the Court found that Seakeeper "made a clear showing that it is likely to succeed on the merits of its Lanham Act claims,

Maryland unfair competition claim, and breach of contract claims; that it is likely to suffer irreparable harm in the absence of the preliminary injunctive relief sought in its Motion for Preliminary Injunction; and that the balance of the equities and public interest favor preliminary injunctive relief." (*Id.*) The Court entered an order that:

> Defendant Starboard Yacht Group, LLC ("SYG"), and any of its agents, servants, employees, and attorneys, and any other party acting in concert or privity with SYG, is PRELIMINARILY ENJOINED from using or displaying the SEAKEEPER Marks, or any marks confusingly similar to it, in any manner, specifically including without limitation on SYG's websites, social media, other websites used in SYG's business, or physical signage; (b) holding itself out as "Seakeeper-certified" or a "Seakeeper Dealer" and making any similar statement that suggests a present affiliation with Seakeeper, specifically including without limitation on SYG's websites, social media, or other websites used in SYG's business; (c) promoting, selling, or servicing Seakeeper products; and (d) failing to comply with any other post-termination obligation contained in the Agreements[.]

(*Id.* ¶ 2.)

The Court also directed Seakeeper to post a nominal injunction bond of $1.00, which Seakeeper deposited with the Clerk on May 13, 2026. (*Id.* ¶ 3; ECF 27.) After supplemental briefing, the Court subsequently ordered Seakeeper to post an additional $12,000.00 bond, which Seakeeper deposited with the Clerk on June 9, 2026. (ECF 49, ¶ 2; ECF 55.)

Following the entry of the Order of Preliminary Injunction, Defendant continued to infringe on Seakeeper's marks and violate its post-termination contract obligations, willfully ignoring the Court's directive to remove all infringing content from SYG's websites, social media accounts, and physical signage. (*See* ECF 38; ECF 39-1.) In light of Defendant's continued noncompliance, the Court ordered SYG, through Mr. Stratmann, to appear on June 3, 2026 and show cause why SYG and Mr. Stratmann should not be held in civil contempt for SYG's failure to comply with the Court's Order of Preliminary Injunction. (ECF 40.) At the June 3, 2026 hearing, the Court found that SYG and Mr. Stratmann had failed to comply with the Order of Preliminary Injunction and

3

entered an order on June 4, 2026, again compelling Defendant to abide by the terms of the preliminary injunction and directing Seakeeper to report on SYG's and Mr. Stratmann's compliance. (ECF 49.)

On June 12, 2026, Seakeeper reported on SYG's continued non-compliance with the Court's Preliminary Injunction and the Court's June 4, 2026 Order, including SYG's creation of entirely new websites referencing Seakeeper, in plain defiance of the Court's orders. (ECF 58.) Seakeeper renewed its prior requests to (i) hold Mr. Stratmann in civil contempt and (ii) order SYG's and Mr. Stratmann's internet service providers to shut down their websites and social media pages. (ECF 58.)

Following a status teleconference on June 30, 2026 on SYG's continued non-compliance, the Court entered yet another order directing SYG to remove "all references to Plaintiff's SEAKEEPER Marks, or any marks confusingly similar to it, including any uses of the word 'Seakeeper,' from SYG's websites, social media, other websites used in SYG's business, or physical signage, including, but is not limited to, removing the uses of Plaintiff's SEAKEEPER Marks from SYG's Facebook, Instagram, LinkedIn, and Yelp accounts, as described in Plaintiff's recent Status Report (ECF No. 58) and by Plaintiff's counsel on the record during status teleconference." (ECF 65, ¶ 1.). As of July 7, 2026, SYG has continued to violate the Court's Order of Preliminary Injunction and the subsequent June 4, 2026 and July 2, 2026 Orders directing SYG to remove infringing content from its websites and social media accounts. (ECF 66.)

Since being served with the Complaint three months ago, SYG has failed to file an answer or otherwise properly appear through counsel.[2] As a result, on June 4, 2026, the clerk entered an

---

[2] Mr. Stratmann, a non-attorney, has improperly submitted numerous filings purportedly on behalf of SYG. (*See, e.g.*, ECF 18, 30, 43, 45, 52, 54, 56, 57.) Mr. Stratmann has also moved to intervene, which Seakeeper has opposed and which remains pending and undetermined. (ECF 16, 36.)

order of default on Defendant. (ECF 50.) A Notice of Default was issued to Defendant on June 4, 2026; the Court gave SYG thirty days (until July 6, 2026) to file a motion to vacate the order of default through counsel, after which time the Court indicated it would rule on any pending motions for entry of default judgment. (ECF 51.) Defendant failed to file an appearance through counsel or move to vacate the default within the Court's prescribed period.[3]

## LEGAL STANDARD

Entry of default judgment under Fed. R. Civ. P. 55(b)(2) is proper where "a defendant does not respond or defend its case." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (collecting cases). When a defendant fails to answer or otherwise respond, the defendant admits the plaintiff's well pleaded allegations of fact. *Id.*; *Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). In determining whether to award a default judgment, the Court must: (1) determine "whether the unchallenged facts in plaintiffs' complaint constitute a legitimate cause of action" that establishes defendant's liability; and (2) "make an independent determination regarding the appropriate amount of damages." *O.C. Seacrets, Inc. v. Caribbean Secrets LLC*, No. 12-1395, 2012 WL 4076166, *3 (D. Md. Sept. 10, 2012). "The court may but need not conduct a hearing to determine the amount of damages; it may instead 'rely on detailed affidavits or documentary evidence to determine the appropriate sum.'" *King's Castle (HK) Imp. & Exp. Co. v. Classic Brands, LLC*, No. CV JRR-22-2043, 2023 WL 5741718, at *2 (D. Md. Sept.

---

[3] Mr. Stratmann purported to file a Motion to Set Aside Clerk's Entry of Default. (ECF 52.) Mr. Stratmann lacked standing to do so, as the default was entered solely against SYG. On July 8, 2026, Mr. Stratmann also purported to file, on behalf of SYG, a "Motion to Vacate Entry of Default, or in the Alternative to Set Aside Default Judgment." (ECF 67.) As the Court has repeatedly advised Mr. Stratmann, Mr. Stratmann, a non-attorney, cannot represent SYG, and SYG, as a corporation, cannot appear *pro se*. As a result, Mr. Stratmann's untimely and improper motion, purportedly filed on behalf of SYG, must be denied. (*See* Seakeeper's Opp., ECF 68.)

6, 2023) (quoting citation omitted), *report and recommendation adopted*, No. 1:22-CV-2043-JRR, 2023 WL 7548054 (D. Md. Oct. 4, 2023).

This Court has already found that Seakeeper was likely to succeed on its claims for trademark infringement, Maryland unfair competition, and breach of contract when it granted Seakeeper's Motion for Preliminary Injunction. (*See* ECF 26.) For those reasons and the reasons set forth below, Seakeeper is entitled to default judgment in its favor on all of its claims.

## ARGUMENT

### I.      Jurisdiction and Service Are Proper.

#### A.      The Court Has Subject-Matter Jurisdiction.

This Court has subject-matter jurisdiction in the matter pursuant to 28 U.S.C. § 1331, because Seakeeper alleges both federal trademark infringement and false designation of origin in violation of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a)). Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental subject-matter jurisdiction over the additional state law claims of unfair competition and breach of contract under Maryland law, because these claims arise out of a common nucleus of operative fact as Seakeeper's federal Lanham Act claims. Specifically, the Agreements between Seakeeper and Defendant which regulated the use of Seakeeper's marks, and Defendant's subsequent breach of its contractual obligations to refrain from the use of Seakeeper's marks, forms the basis for both Seakeeper's federal Lanham Act claims and state law unfair competition and breach of contract claims.

Seakeeper further asserts that (1) the state law claims are standard contract claims and present no novel or complex issues of state law; (2) the state law claims do not predominate over the federal Lanham Act claims; (3) the federal Lanham Act claims have not been dismissed, nor is there basis for a decision that those claims could or would be dismissed; and (4) there are no other compelling reasons for declining jurisdiction. *See* 28 U.S.C. § 1367(c).

6

**B.      Defendant Is Subject to the Court's Jurisdiction.**

Defendant "agree[d] and covenant[ed] that the exclusive jurisdiction and venue for any matter concerning this agreement shall be the state or federal courts in Maryland, USA" and "expressly consent[ed] to such jurisdiction and venue." *See* Agreement, ECF 3, ¶ 85.[4] Courts have consistently held that by assenting to a forum-selection clause in a contract, the party consents to personal jurisdiction. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982); *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 282 n.11 (4th Cir. 2009); *Aerovation, Inc. v. Airtec, Inc.*, No. TDC-18-2959, 2019 WL 3883617, at *5 (D. Md. Aug. 16, 2019).

This Court also has personal jurisdiction over SYG pursuant to Maryland Code Section 6-103(b)(4), which confers jurisdiction over a defendant that "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State[.]" Md. Code Ann. Cts. & Jud. Proc. § 6-103(b)(4). Defendant regularly conducted business activities directed toward Maryland through its Certified Dealer relationship with Seakeeper, whose principal offices are in Maryland. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617 (D. Md. 1998).

Therefore, this Court has personal jurisdiction over Defendant.

**C.      Service Was Proper.**

On April 10, 2026, Defendant's registered agent was served in accordance with Fed. R. Civ. P. 4. (*See* ECF 9.)

---

[4] The Agreement also included a Maryland choice-of-law provision. (*See* Agreement, ECF 3, ¶ 83 ("This Agreement shall be governed by and construed solely in accordance with the procedural and substantive laws of the State of Maryland, USA . . .").)

**II.**    **SYG Is Liable for Trademark Infringement, False Designation of Origin, Maryland Unfair Competition, and Breach of Contract.**

Defendant's default constitutes an admission as to each factual allegation in Seakeeper's Complaint. *See ICENY USA, LLC v. M&M'S, LLC*, No. CV TDC-19-2418, 2020 WL 1890511, at *2 (D. Md. Apr. 16, 2020). Moreover, this Court has previously considered Seakeeper's factual allegations when considering Seakeeper's Motion for Preliminary Injunction and determined, after a lengthy hearing and with detailed findings read into the record, that Seakeeper "has made a clear showing that it is likely to succeed on the merits of its Lanham Act claims, Maryland unfair competition claim, and breach of contract claims." (*See* Order of Preliminary Injunction, ECF 26.) The Court further found that Seakeeper was "likely to suffer irreparable harm" in the absence of injunctive relief and that the balance of the equities and public interest favored Seakeeper. (*Id.*)

The Court's same factual findings from the Preliminary Injunction apply here to mandate default judgment on each of Seakeeper's claims. *See ICENY USA, LLC*, 2020 WL 1890511, at *2 (incorporating prior findings from preliminary injunction order to grant default judgment and issue permanent injunction against defendants on claims for federal trademark, unfair competition, and breach of contract).

Indeed, the admitted allegations and unrefuted evidence establish:

1.  Seakeeper owns valid and protectable marks to the Seakeeper and Seakeeper Ride names and stylized logos. (Compl., ECF 1, ¶¶ 9-11.)

2.  On April 19, 2019 and February 2, 2024, Defendant and Seakeeper entered into valid and enforceable Agreements allowing Defendant to sell, install, and service Seakeeper and Seakeeper Ride products as an authorized dealer. (*Id.* ¶¶ 13-26; Agreement, ECF 3; Ride Agreement, ECF 4; *see also* Hand Decl., ECF 11-2, ¶¶ 6-7.)

3.  Among other terms, the Agreements granted Defendant a "limited, non-exclusive, non-transferable and non-sublicensable license to use Seakeeper's trademarks" during the term of the Agreements, with the licenses to expire automatically upon termination of the Agreements. (Compl., ECF 1, ¶¶ 14, 23; Agreement, ECF 3, ¶¶ 52, 75; Ride Agreement, ECF 4, ¶¶ 30, 55.)

8

4. The Agreements allowed Seakeeper to terminate (i) at any time for any reason, effective January 1 of the next calendar year following sixty days after termination, or (ii) for cause, if Defendant "conduct[ed] itself or its business so as to adversely affect the good name, reputation or goodwill" of Seakeeper, effective immediately. (Compl., ECF 1, ¶¶ 24-25, Agreement, ECF 3, ¶ 72.4; Ride Agreement, ECF 4, ¶ 52.2.)

5. Beginning in approximately June 2024, Seakeeper began receiving complaints from more than ten customers regarding Defendant, including complaints that Defendant had collected deposits for the purchase of Seakeeper products but had never placed those orders with Seakeeper and that Defendant had left Seakeeper products incompletely or incorrectly installed on customers' vessels and had failed to complete necessary warranty repairs. (*See* Hand Decl., ECF 11-2, ¶¶ 8-9.)

6. After attempting to work with Defendant for nearly six months to remedy these customer complaints, Seakeeper ultimately terminated the Agreement and Ride Agreement for cause on December 2, 2024 and February 11, 2026, respectively. (Compl., ECF 1, ¶¶ 27-28; *see also* Hand Decl., ECF 11-2, ¶¶ 10-13.)

7. Under the Agreements, Defendant's post-termination obligations include, among others: to cease and refrain from selling, promoting, or offering Seakeeper products; to "[c]ease and refrain from the sale, promotion and offering of [Seakeeper] Products"; to remove and cease using any and all of Seakeeper's protected marks from Defendant's physical signs, advertising, letterhead, websites, and other materials; and to "discontinue all representations from which it might be inferred that any relationship exists between [Defendant and Seakeeper]." (Compl., ECF 1; ¶¶ 17, 26; Agreement, ECF 3, ¶ 17; Ride Agreement, ECF 4, ¶ 55.)

8. Following Seakeeper's termination of the Agreements and termination of Defendant's authorized dealer status, Defendant improperly collected money on an extended warranty relating to a Seakeeper product, and, despite multiple cease and desist letters, continued to unlawfully display Seakeeper's marks on its physical signage, websites, and social media, continued to falsely represent an affiliation with Seakeeper, and continued to offer Seakeeper products for sale and servicing in violation of its post-termination obligations. (Compl., ECF 1, ¶¶ 27-49; *see also* Hand Decl., ECF 11-2, ¶¶ 14-26.)

9. Defendant's continued violations of its post-termination contract obligations and the continued unauthorized use of Seakeeper marks and misrepresentations as an authorized dealer has caused consumer confusion and damaged Seakeeper's substantial customer goodwill, name, and brand loyalty. (Compl., ECF 1, ¶¶ 30-49; *see also* Hand Decl., ECF 11-2, ¶¶ 27-28.)

These facts, deemed admitted by SYG's default, establish SYG's liability for Seakeeper's claims for trademark infringement and false designation of origin under the Lanham Act, unfair competition, and breach of contract. *See JFJ Toys, Inc. v. Sears Holding Corp.*, 237 F. Supp. 3d

311, 327 (D. Md. 2017) (trademark infringement under the Lanham Act requires proof that plaintiff owns a valid and protectable mark and that the defendant's unauthorized use of that mark creates a likelihood of confusion); *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 466 (D. Md. 2002) ("[T]he test for . . . unfair competition under Maryland law is the same as that under the Lanham Act . . ."); *Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 750 (D. Md. 2023) ("'To prevail in an action for breach of contract' in Maryland, 'a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" (quoting *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)).

### III.    <u>Seakeeper Is Entitled to Permanent Injunctive Relief.</u>

As set forth in the requested relief in its Complaint, Seakeeper seeks injunctive relief for Defendant's admitted trademark infringement, false designation of origin, unfair competition, and breach of contract. (Compl., ECF 1, at 15.) Specifically, Seakeeper requests the Court convert the terms of the Preliminary Injunction entered May 11, 2026 into a permanent injunction. (*See* ECF 26, ¶ 2.) Additionally, in light of Defendant's continued willful non-compliance with the Preliminary Injunction and the Court's subsequent June 4, 2026 and July 2, 2026 Orders (*see generally* ECF 38-40, 49, 58, 65), Seakeeper further requests targeted relief under Rule 65(d)(2)(C) directed to online service providers that receive actual notice of the permanent injunction and thereafter continue to provide services enabling access to Defendant-controlled websites, domains, pages, accounts, or online content that violates the injunction. This targeted relief is necessary because Defendant has continued to use online content as an instrumentality of its continued contractual breaches and trademark violations, including by maintaining websites referencing Seakeeper, and creating new websites referencing Seakeeper, after entry of the Preliminary Injunction. (*See* ECF 58; ECF 66; *see also* Mem. of Law in Supp. of Mot. for Preliminary Injunction, ECF 11-1, at 19-20.)

"A party seeking a permanent injunction must demonstrate 'actual success' on the merits." *Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020). "This requirement is satisfied by default judgment, and courts regularly issue permanent injunctions following default judgment in trademark infringement cases." *Serv. Coordination, Inc. v. Boardley*, No. 25-CV-103-ABA, 2026 WL 110381, at *3-4 (D. Md. Jan. 15, 2026) (collecting cases).

To issue a permanent injunction, Seakeeper must demonstrate that (i) it has suffered an irreparable injury; (ii) monetary damages are inadequate to compensate for the injury; (iii) the balance of hardships to each party favors Seakeeper; and (iv) a permanent injunction is in the public interest. *Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011). These requirements are substantially similar to the requirements for a preliminary injunction, which this Court has already issued. *Compare Real Truth About Obama v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (preliminary injunctive relief requires plaintiff to establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that the injunction is in the public interest.") (*citing Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)).

## A.    Seakeeper Has Suffered Irreparable Injury.

The Lanham Act provides that a plaintiff seeking a permanent injunction "shall be entitled to a rebuttable presumption of irreparable harm" upon a finding of a Lanham Act violation. 15 U.S.C. § 1116(a). Because Defendant's default establishes liability for trademark infringement and false designation of origin, Seakeeper is entitled to that statutory presumption, and Defendant has offered no evidence to rebut it. The statutory presumption applies to Seakeeper's Lanham Act claims; the same facts independently support injunctive relief on Seakeeper's related Maryland unfair competition and breach-of-contract claims.

11

The record independently confirms irreparable harm. The Court already found, after notice, argument, witness testimony, and evidence, that Seakeeper was likely to suffer irreparable harm absent preliminary injunctive relief. (ECF 26 at 1.) Since then, Defendant has continued to use Seakeeper's marks and falsely suggest an affiliation with Seakeeper on its websites, social media, and other materials, despite termination of the parties' Agreements, repeated cease-and-desist demands, the preliminary injunction, subsequent hearings at which Defendant's sole member-manager was present, and the Court's June 4, 2026 and July 2, 2026 Orders compelling compliance. (Compl., ECF 1, ¶¶ 27-49; Hand Decl., ECF 11-2, ¶¶ 14-28; ECF 38-40, 49, 65.) Defendant's continued noncompliance confirms that monetary relief is inadequate and that Seakeeper will continue to suffer loss of control over its marks, consumer confusion, and harm to its reputation and goodwill absent permanent injunctive relief. (ECF 58, 66.) *See Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 596 (D. Md. 2013); *Serv. Coordination, Inc. v. Boardley*, No. 25-CV-103-ABA, 2026 WL 110381, at *4 (D. Md. Jan. 15, 2026).

**IV.    <u>Traditional Remedies at Law Are Inadequate to Compensate Seakeeper.</u>**

SYG's continued violations of its post-termination contract obligations, the continued unauthorized use of Seakeeper marks, and its continued misrepresentations of an affiliation with Seakeeper has caused substantial consumer confusion and has immeasurably damaged Seakeeper. (Compl., ECF 1, ¶¶ 30-49; *see also* Hand Decl., ECF 11-2, ¶¶ 27-28.) Defendant's willful misconduct, even after multiple cease-and-desist requests, an Order of Preliminary Injunction and the Court's June 4, 2026 and July 2, 2026 Orders (all issued after SYG's sole member-manager was present in open court to hear the Court's rulings), has deprived Seakeeper of control over its brand and reputation and has created a substantial risk that consumers will attribute Defendant's services and representations to Seakeeper. (Compl., ECF 1, ¶ 48-49; *see also* Hand Decl., ECF 11-2, ¶¶ 27-28; ECF 49, 65.)

"Where, as here, a defendant continues to infringe upon a mark after a plaintiff issues a cease-and-desist letter, and the defendant does not enter its appearance or otherwise participate in the litigation, further infringement is a continuing threat, making remedies at law insufficient to compensate for [p]laintiff's injuries." *Ledo Pizza Sys., Inc. v. Singh*, No. WDQ-13-2365, 2014 WL 3810524, at *10 (D. Md. July 31, 2014) (citing *O.C. Seacrets, Inc.*, 2012 WL 4076166, at *6), *report and recommendation adopted sub nom. Ledo Pizza Sys., Inc v. Singh*, No. WDQ-13-2365, 2014 WL 11485331 (D. Md. Sept. 30, 2014).

### A.    The Balance of Equities Favors Seakeeper.

Defendant will face no unfair hardship from being permanently prohibited from using the Seakeeper marks and from violating its post-termination contractual obligations. Seakeeper has a strong interest in protecting its valid marks and maintaining its brand and reputation, and courts in this Circuit give little weight to any hardship to a defendant from requiring it to cease willfully infringing on the plaintiff's trademark. *See, e.g.*, *Ledo Pizza Sys., Inc. v. Singh*, No. WDQ-13-2365, 2014 WL 3810524, at *11 (D. Md. July 31, 2014) (reasoning any hardship to defendant "is self-inflicted"), *report and recommendation adopted sub nom. Ledo Pizza Sys., Inc v. Singh*, No. WDQ-13-2365, 2014 WL 11485331 (D. Md. Sept. 30, 2014); *Bros. of Wheel M.C. Exec. Council, Inc. v. Mollohan*, 909 F. Supp. 2d 506, 524-25 (S.D.W. Va. 2012) (finding balance of hardships favored plaintiff, reasoning plaintiff "spent decades building up its name and reputation" and "any losses suffered by the defendant are his own fault"); *Choice Hotels Int'l, Inc. v. Pfalzgraf Inv. Props. 02, LLC*, 708 F. Supp. 3d 757, 766 (D.S.C. 2023) (entering permanent injunction, reasoning plaintiff had an interest in maintaining integrity of its marks which it had used for decades and which defendants did not have a right to use). As such, the balance of equities weighs in favor of protecting Seakeeper's trademark and contract rights and preventing further irreparable harm to its goodwill and reputation.

13

### B.    The Public Interest Favors Granting a Permanent Injunction.

Public interest weighs in favor of a permanent injunction. The public has a strong interest in protecting trademarks, avoiding consumer confusion, and enforcing valid contracts. *See Innovative Value Corp. v. Bluestone Fin., LLC*, 2009 WL 3348231, at *3 (finding "the public interest would not be disserved by a permanent injunction, as there is greater public benefit in securing the integrity of Plaintiffs' mark than in allowing Defendant to continue to use the mark in violation of Plaintiffs' rights"); *Ledo Pizza Sys., Inc.*, 2014 WL 3810524, at *11 ("[T]here is a strong public interest in avoiding consumer confusion and protection of trademarks"); *JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 826 (E.D. Va. 2007) (entering permanent injunction and finding the public interest favored upholding valid contract).

### C.    The Permanent Injunction Should Bind Online Service Providers That, After Actual Notice, Continue to Facilitate Access to Defendant-Controlled Websites Containing Enjoined Infringing Content.

Federal Rule of Civil Procedure 65(d)(2) provides that an injunction binds not only the parties, their officers, agents, servants, employees, and attorneys, but also "other persons who are in active concert or participation" with them who receive actual notice of the injunction. Fed. R. Civ. P. 65(d)(2)(C). This provision prevents an enjoined party from evading an injunction by acting through nonparties or by using nonparty services as the instrumentality of continued violations. The requested relief is limited accordingly: Seakeeper seeks relief only as to online service providers that receive actual notice of the permanent injunction and continue to provide services enabling access to websites, domains, pages, accounts, or online content owned, operated, controlled, or used by Defendant to violate the injunction.

Defendant's failure to appear or otherwise defend in this action supports an inference of a lack of good faith. *Collins v. Sangster*, No. 11-cv-01773-AW, 2012 WL 458905, at *1 n.1 (D. Md. Feb. 10, 2012) ("Defendant's failure to appear and defend this action creates an inference of

14

willfulness."). Moreover, despite Defendant, through its sole member-manager Mr. Stratmann, having full notice of both the Order of Preliminary Injunction, the Court's rulings stated in open court, and the June 4, 2026 and July 2, 2026 Orders and their terms, Defendant and Mr. Stratmann have repeatedly failed to comply with the Court's orders, specifically with respect to referencing Seakeeper and Seakeeper's protected marks on Defendant's websites and social media. (*See, e.g.*, ECF 38-40, 49, 58, 66.)

This is not a case in which Seakeeper seeks to impose liability on neutral service providers for ordinary hosting activity or for content unrelated to Defendant. Rather, Defendant has used online service providers as the mechanism for continuing the very conduct this Court has already enjoined. Those websites are the instrumentalities of Defendant's ongoing violation, and the providers that host, resolve, route, optimize, maintain, or otherwise enable public access to those Defendant-controlled websites are providing services that facilitate the violation once they have actual notice of the injunction.

In *DISH Network, LLC v. Dima Furniture, Inc.*, No. TDC-17-2817, 2019 WL 2498224, at *8 (D. Md. June 17, 2019), this District applied Rule 65(d)(2)(C) to an internet service provider whose services enabled the defendant's infringing online activity. The court found that the provider was acting in "active concert or participation" with the infringing defendant because the defendant depended on the provider's services and, without access to the provider's servers, the defendant's infringing activities would be hindered. The same reasoning applies here. Defendant's continued infringement depends on online service providers to host, resolve, route, display, or otherwise make accessible Defendant-controlled websites containing enjoined Seakeeper references. Once those providers receive actual notice of the Court's permanent injunction,

continued provision of services that enable access to the enjoined content constitutes active concert or participation within the meaning of Rule 65(d)(2)(C).

Courts addressing analogous internet services have likewise held that a provider may fall within Rule 65(d)(2)(C) when, after notice of an injunction, its services are used to facilitate access to websites that violate the injunction. In *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 36–38 (S.D.N.Y. 2015), the court held that CloudFlare was bound by an injunction where, after receiving notice, it provided DNS and website performance services that connected users to new infringing websites. The court rejected the argument that CloudFlare's services were too passive or automated to constitute active concert or participation, explaining that the inquiry turns on whether the provider's services actually assist the enjoined party's violation, not on the provider's subjective motive. The court also rejected the argument that compliance would be futile because defendants could use another provider, holding that Rule 65 does not require a plaintiff to prove that the infringing site would be inaccessible but for the nonparty's services.

This requested relief is distinguishable from cases declining to bind nonparties where the plaintiff showed only passive hosting or mere notice of allegedly unlawful content. For example, in *Blockowicz v. Williams*, 630 F.3d 563 (7th Cir. 2010), the court declined to enforce a defamation injunction against a website operator where the operator's relationship with the defendants predated the injunction and the record did not show that the operator was aiding the defendants' post-injunction violation. Here, by contrast, Defendant has continued and expanded its infringing online conduct after entry of the preliminary injunction, including by creating new websites referencing Seakeeper, and Seakeeper seeks relief only as to providers that receive actual notice and thereafter continue to facilitate access to Defendant-controlled online content that violates the Court's orders.

Nor is Seakeeper asking the Court to impose a generalized obligation on all registrars, hosts, or platforms to police Defendant's future conduct. The proposed order is targeted to identified Defendant-controlled websites, domains, pages, accounts, and online content that violate the injunction, and it gives any served provider an opportunity to seek clarification or modification if it contends that it does not provide services for the identified content, lacks technical ability to comply, or is not acting in active concert or participation with Defendant.

The proposed order also addresses due process concerns by requiring actual notice before any obligation attaches to a nonparty provider. Seakeeper will serve the permanent injunction on any provider from whom compliance is requested, together with identification of the specific Defendant-controlled website, domain, page, account, or online content at issue. The proposed order further permits any served provider to seek clarification or modification from the Court if it contends that it does not provide services for the identified content, that compliance is technically infeasible, or that it is not acting in active concert or participation with Defendant. These safeguards ensure that the order is targeted, enforceable, and consistent with Rule 65(d)(2).

Therefore, in addition to converting the prior preliminary injunction to a permanent injunction, Seakeeper renews its request that the Court direct any web hosting company, domain name registry, domain name registrar, DNS provider, content delivery network, e-commerce service provider, social media platform, video platform, or other online service provider that receives actual notice of the permanent injunction and provides services enabling access to any website, domain, page, account, or online content owned, operated, controlled, or used by Defendant to display the SEAKEEPER Marks or to represent a current affiliation with Seakeeper, to remove or disable access to the enjoined content within five (5) business days of service of the Order. If removal of specific infringing content is not technically feasible, the provider shall

17

disable access to the Defendant-controlled website, domain, page, account, or other online location through which Defendant is violating the Order. Any served provider may seek clarification or modification from the Court within five (5) business days of service if it contends that it does not provide services for the identified content, lacks the technical ability to comply, or is not acting in active concert or participation with Defendant within the meaning of Rule 65(d)(2)(C).

**V.      Seakeeper Is Entitled to A Return of Its Injunction Bond.**

When a temporary restraining order or preliminary injunction is converted to a permanent injunction, any injunction bond deposited with the court should be released to the plaintiff. *See Ledo Pizza Sys., Inc.*, 2014 WL 3810524, at *12; *Allianz Life Ins. Co. of N. Am. v. Cain*, No. 3:12-cv-264, 2013 WL 3880217, at *1-2 (W.D.N.C. July 26, 2013). Therefore, Seakeeper respectfully requests the return of the preliminary injunction bonds totaling $12,001.00. (*See* ECF 27, 55.)

**VI.     Seakeeper Is Entitled to Nominal Damages Without the Need for Hearing.**

Courts in the Fourth Circuit regularly exercise their authority under Rule 55 to award damages without additional evidentiary hearings where "the record supports the damages requested." *Trs. of the Nat. Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, No. CIV. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (collecting cases); *Entrepreneur Media Inc.*, 958 F. Supp. 2d at 597 ("As long as the defendant receives notice that damages may be awarded, allegations and supporting affidavits regarding damages are sufficient evidence to support a default judgment for money damages.") (citing *Monge*, 751 F. Supp. 2d at 794-95); *SL Fin. Servs. Corp. v. Woodberry Graphics, LLC*, No. CIV. WDQ-13-1661, 2013 WL 5530642, at *2 (D. Md. Oct. 3, 2013) ("The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award.").

Here, due to Defendant's default, Seakeeper lacks the benefit of discovery as to Defendant's profits to permit a reasonable calculation of Seakeeper's damages under the Lanham

Act and Maryland law. As a result, rather than requesting an accounting or further evidentiary hearings, Seakeeper seeks only nominal monetary damages in the amount of $1.00 for each of the five causes of action asserted in its Complaint for trademark infringement, false designation of origin, Maryland unfair competition, and breach of contract. *See ICENY USA, LLC*, 2020 WL 1890511, at *4 (granting plaintiff's request for nominal damages after default judgment); *7-Eleven, Inc. v.McEvoy*, 300 F. Supp. 2d 352, 356 (D. Md. 2004) (finding defendant's continued unauthorized use of trademark "entitle[d] [plaintiff] to at least nominal damages").

## VII.    The Court Should Award Seakeeper Its Costs and Attorney's Fees.

Seakeeper is also entitled to its costs and attorney's fees under both the Lanham Act and the Agreements. *See* 15 U.S.C. § 1117(a); Agreement, ECF 3, ¶ 76 (providing that Defendant shall be solely responsible to Seakeeper for any liabilities "including attorney fees and expenses, of any nature against [Seakeeper] arising . . . from any breach of [Defendant's] obligations or warranties under this Agreement"); Ride Agreement, ECF 4, ¶ 56 (similar).

The Court may find a case "exceptional" for purposes of awarding attorney's fees under the Lanham Act when it determines, in light of the totality of the circumstances, that "(1) there is an unusual discrepancy in the merits of the positions taken by the parties . . . (2) the non-prevailing party has litigated the case in an 'unreasonable manner,' . . . or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." *Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015), *as amended* (Apr. 15, 2015) (internal quotation marks and quoting citations omitted).

SYG's failure to properly appear and defend this action justifies the imposition of attorney's fees under the Lanham Act. *See, e.g.*, *Med. Moreland v. Pal of Mine Corp.*, No. 2:23-CV-211, 2024 WL 3937267, at *8 (E.D. Va. Aug. 26, 2024) ("[Defendant] did not litigate this case in a reasonable manner considering that it has not responded at all.") (internal quotation marks

19

and citation omitted); *Soc'y of Virginia v. Safe Haven Behav. Health & Wellness, LLC*, No. 3:24CV311, 2026 WL 309528, at *5 (E.D. Va. Feb. 5, 2026) (same). Moreover, "[a] trademark case is exceptional for purposes of an award of attorneys' fees where the infringement is malicious, fraudulent, deliberate or wilful." *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1093 (D. Md. 1995). Defendant's failure to appear or otherwise defend this action creates a presumption of Defendant's willfulness. *Collins*, 2012 WL 458905 at *1 n.1; *Agri-Supply Co., Inc.*, 457 F. Supp. at 667 ("Willful defiance of the judicial process lends sufficient grounds for finding that an exceptional case under § 1117(a) exists."). Further, SYG's continued willful noncompliance with this Court's Preliminary Injunction and the Court's June 4, 2026 and July 2, 2026 Orders to cease infringing conduct further justifies an award of attorney's fees under the Lanham Act and the parties' Agreements. *See, e.g.*, *ICENY USA, LLC*, 2020 WL 1890511, at *5 (awarding costs and attorney's fees following default judgment in trademark infringement and breach of contract case); *Ledo Pizza Sys., Inc.*, 2014 WL 3810524, at *8-9 (same).

If the Court determines that an award of reasonable attorney's fees is justified in this case, Seakeeper reserves the right to submit, along with its bills of costs under Local Rule 109.1, a motion and memorandum in compliance with Local Rule 109.2(b) calculating its requested attorney's fees.

## CONCLUSION

For the foregoing reasons, Seakeeper requests the Court enter an order:

A.  Awarding default judgment in Seakeeper's favor against Defendant on Seakeeper's claims for trademark infringement, false designation of origin, Maryland unfair competition, and breach of contract;

B.  Converting Seakeeper's May 11, 2026, preliminary injunction against Defendant into a permanent injunction against Defendant and all other persons and entities related to

20

or in privity with Defendant or acting in active concert or participation with Defendant after receiving actual notice of the permanent injunction;

C. Directing online service providers that receive actual notice of the permanent injunction and thereafter act in active concert or participation with Defendant within the meaning of Rule 65(d)(2)(C) by providing services enabling access to Defendant-controlled websites, domains, pages, accounts, or online content containing enjoined Seakeeper references, to remove or disable access to that content, or, if content-specific removal is not technically feasible, to disable access to the Defendant-controlled online location through which Defendant is violating the injunction;

D. Returning the $12,001.00 injunction bonds deposited with the Court to Seakeeper;

E. Awarding Seakeeper $5.00 in nominal damages for its trademark infringement, false designation of origin, Maryland unfair competition, and two breach of contract claims;

F. Awarding Seakeeper its costs and reasonable attorney's fees; and

G. For any other such relief.

Dated: July 8, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Elizabeth A. Wurm*
Anthony F. Jankoski (No. 30570)
1500 K Street N.W., Suite 1100
Washington, D.C. 20005
Tel: (202) 230-5000
Fax: (202) 842-8465
anthony.jankoski@faegredrinker.com

Traci T. McKee (FL #53088) (*pro hac vice*)
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Tel: (239) 286-6900
Fax: (239) 244-9053
traci.mckee@faegredrinker.com

Elizabeth A. Wurm (MN #0507053) (*pro hac vice*)
2200 Wells Fargo Center 90 S. 7th Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000
Fax: (612) 766-1600
elizabeth.wurm@faegredrinker.com

*Attorneys for Plaintiff Seakeeper, Inc.*

22