**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **SEAKEEPER, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **STARBOARD YACHT GROUP, LLC**, <br><br> Defendant. | Case No.: 1:26-cv-01332-MJM |

<u>**MEMORANDUM OF LAW IN SUPPORT OF
SEAKEEPER, INC.'S MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    The Court Should Dismiss Stratmann's Counterclaim For Lack of Standing. ............. 2

II.    The Court Should Dismiss the Counterclaims For Failure to Adequately Plead. ...................................................................................................................... 8

III.    Additionally and Alternatively, the Court Should Dismiss the Counterclaim Because Stratmann's Claims Fail on Count-Specific Grounds. ...................................... 9

    A.    Counts I and II (Civil Theft and Conversion) ......................................... 9

        1.    Stratmann fails to allege an immediate right of possession. ............... 10

        2.    Stratmann fails to allege specific and identifiable money. .................... 11

        3.    The underlying dispute is governed by contract, not the law of conversion or civil theft. .................................................................... 12

        4.    Stratmann failed to serve a pre-suit demand under Florida Statute § 772.11. .................................................................................. 12

        5.    Stratmann fails to allege felonious intent necessary for civil theft. ...................................................................................................... 13

    B.    Counts III & IV (Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing) ............................................................... 13

    C.    Count V (Tortious Interference with Prospective Business Advantage) ............................................................................................... 15

        1.    Stratmann fails to allege the existence of a business relationship. ...................................................................................... 15

        2.    As alleged, Seakeeper is not a stranger to SYG's customer contracts. ....................................................................................... 16

        3.    As alleged, Seakeeper's purported interference was justified. ............ 16

    D.    Count VI (FDUTPA) ............................................................................. 17

        1.    Stratmann fails to allege an unfair or deceptive act. ............................ 17

        2.    Stratmann improperly seeks consequential, not actual, damages. ................................................................................................ 18

i

E.      Counts VII & VIII (RICO and RICO Conspiracy)................................................ 19

      1.      Stratmann fails to plead predicate acts. .................................................... 19

      2.      Stratmann fails to plead related racketeering activity. .......................... 22

      3.      Stratmann fails to plead continuity............................................................ 23

      4.      Stratmann fails to plead an association-in-fact enterprise. ................... 24

      5.      Stratmann fails to plead an agreement for the alleged RICO
            conspiracy........................................................................................................ 26

      6.      Stratmann's RICO conspiracy claim fails with the substantive
            RICO claim. ..................................................................................................... 27

F.      Count IX (Constructive Trust / Unjust Enrichment) ......................................... 28

      1.      Stratmann fails to allege that he directly conferred a benefit on
            Seakeeper........................................................................................................ 28

      2.      Stratmann fails to allege entitlement to a constructive trust. ............... 29

CONCLUSION ......................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Adams v. NVR Homes, Inc.*,
   193 F.R.D. 243 (D. Md. 2000)................................................................................................8

*Ahearn v. Mayo Clinic*,
   180 So. 3d 165 (Fla. 1st DCA 2015) ................................................................................ 19

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
   217 F.3d 225 (4th Cir. 2000) ...............................................................................19, 20, 23

*Amaya v. DGS Constr., LLC*,
   2019 WL 3945933 (D. Md. Aug. 21, 2019) ............................................................... 13, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................................9

*Avondale Decor, LLC v. Capital Solutions Bancorp, LLC*,
   2025 WL 2390711 (M.D. Fla. Aug. 18, 2025)......................................................................7

*Bailey v. Atl. Auto. Corp.*,
   992 F. Supp. 2d 560 (D. Md. 2014) ................................................................................ 25

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
   237 F.3d 394 (4th Cir. 2001) ............................................................................................ 21

*Bankers Tr. Co. v. Basciano*,
   960 So. 2d 773 (Fla. 5th DCA 2007)............................................................................... 18

*Baron Fin. Corp. v. Natanzon*,
   471 F. Supp. 2d 535 (D. Md. 2006) ...................................................................................7

*Beaudett v. City of Hampton*,
   775 F.2d 1274 (4th Cir. 1985)..............................................................................................9

*Beck v. Prupis*,
   529 U.S. 494 (2000) ......................................................................................................... 27

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................9

*Bender v. CenTrust Mortg. Corp.*,
   51 F.3d 1027 (11th Cir. 1995)......................................................................................... 30

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*,
   140 F.3d 898 (11th Cir. 1998)..............................................................................................7

*Blackwell v. Blackwell*,
2026 WL 1512857 (S.D. Fla. Mar. 9, 2026) ...........................................................................6

*Bluefeld v. Cohen*,
2017 WL 1546406 (D. Md. Apr. 27, 2017), *aff'd*, 697 F. App'x 788 (4th Cir.
2017) ......................................................................................................................3, 4, 7

*Boyle v. United States*,
556 U.S. 938 (2009) ....................................................................................24, 25, 26

*Broad. Music, Inc. v. Leigh Ann Pippin, LLC*,
2017 WL 1552045 (M.D. Fla. May 1, 2017) ..........................................................2

*Callender v. Callender*,
2016 WL 3647613 (D. Md. June 30, 2016) .............................................................3

*Cap. Source Fin., LLC v. Delco Oil, Inc.*,
625 F. Supp. 2d 304 (D. Md. 2007) ...................................................................... 10

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) ............................................................................................ 25

*Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*,
770 F. Supp. 2d 1261 (S.D. Fla. 2011) ................................................................. 28

*Chambers v. King Buick GMC, LLC*,
43 F. Supp. 3d 575 (D. Md. 2014) ..........................................................................8

*Charters v. Sandy Spring Bank*,
2026 WL 1878499 (D. Md. June 30, 2026) .............................................................4

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) ........................................................................... 25

*City First Mortg. Corp. v. Barton*,
988 So. 2d 82 (Fla. 4th DCA 2008) ..................................................................... 18

*Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*,
752 F. Supp. 2d 1271 (S.D. Fla. 2010) ................................................................. 15

*Colombian Air Force Purchasing Agency (ACOFA) v. Union Temporal OVL CVRA
Helicopteros 2018 LLC*,
2023 WL 3568115 (S.D. Fla. May 18, 2023) ........................................................ 23

*CR-RSC Tower I, LLC v. RSC Tower I, LLC*,
56 A.3d 170 (Md. 2012) ...................................................................................... 14

iv

*Daedalus Cap. LLC v. Vinecombe*,
    625 F. App'x 973 (11th Cir. 2015)......................................................................................23

*Daesang Corp. v. Rhee Bros.*,
    2005 WL 1163142 (D. Md. May 13, 2005).........................................................................17

*Dixon v. Bank of Am., N.A.*,
    2020 WL 13612721 (S.D. Fla. Mar. 6, 2020), *aff'd sub nom. Dixon v. Green Tree
    Servicing, LLC*, 859 F. App'x 373 (11th Cir. 2021)...........................................................13

*Dunn v. Air Line Pilots Ass'n*,
    193 F.3d 1185 (11th Cir. 1999)...........................................................................................15

*Duty Free Americas, Inc., v. Estee Lauder Companies, Inc.*,
    797 F.3d 1248 (11th Cir. 2015)...........................................................................................15

*Dwyer v. Zuccari*,
    2020 WL 1308282 (D. Md. Mar. 19, 2020)........................................................................3, 8

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,
    S.A.S.*,
    269 F.3d 187 (3d Cir. 2001) ................................................................................................14

*Edmonson v. Eagle Nat'l Bank*,
    922 F.3d 535 (4th Cir. 2019) ................................................................................................8

*Epoch Int'l Partners, LLP v. Bigfoot Inc.*,
    587 F. Supp. 3d 1214 (S.D. Fla. 2022)...............................................................................11

*Feingold v. Cardinale*,
    2026 WL 1615317 (S.D. Fla. June 5, 2026) .........................................................................6

*Flip Mortg. Corp. v. McElhone*,
    841 F.2d 531 (4th Cir. 1988)...............................................................................................21

*Fraga v. Guardian Life Ins. Co. of Am.*,
    2026 WL 2162144 (S.D. Fla. May 21, 2026), *report and recommendation
    adopted sub nom.*, 2026 WL 2150963 (July 27, 2026).......................................................12

*GE Inv. Priv. Placement Partners II v. Parker*,
    247 F.3d 543 (4th Cir. 2001) .........................................................................................24, 27

*Gen. Tech. Applications, Inc. v. Exro Ltda*,
    388 F.3d 114 (4th Cir. 2004) ................................................................................................3

*Genet Co. v. Anheuser-Busch, Inc.*,
    498 So. 2d 683 (Fla. 3d DCA 1986) ...................................................................................16

*Ginsberg v. Lennar Fla. Holdings, Inc.*,
  645 So. 2d 490 (Fla. 3d DCA 1994) ...............................................................................11

*Gurbani v. Johns Hopkins Health Systems Corp.*,
  237 Md. App. 261 (2018)................................................................................................13

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ................................................................................................ 22, 23

*Hamilton v. Suntrust Mortg. Inc.*,
  6 F. Supp. 3d 1312 (S.D. Fla. 2014) ..............................................................................16

*Harris v. Orange S.A.*,
  636 F. App'x 476 (11th Cir. 2015)...................................................................................7

*Harris v. Wells Fargo Corp. Off. Headquarters, HQ*,
  2023 WL 155244 (D. Md. Jan. 11, 2023)........................................................................3

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ...........................................................................................8

*Hoang v. Prince George's Cnty.*,
  2024 WL 4108531 (D. Md. Sept. 5, 2024)......................................................................7

*Insituform of N. Am., Inc. v. Chandler*,
  534 A.2d 257 (Del. Ch. 1987)........................................................................................13

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004)......................................................................................21

*Jackson v. Pasadena Receivables, Inc.*,
  921 A.2d 799 (Md. 2007)..................................................................................................9

*Jolly Roger Fund LP v. Sizeler Prop. Invs., Inc.*,
  2005 WL 2989343 (D. Md. Nov. 3, 2005)........................................................................4

*Kelly v. Palmer, Reifler & Assocs., P.A.*,
  681 F. Supp. 2d 1356 (S.D. Fla. 2010)..........................................................................21

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ..........................................................................................................9

*KMS Restaurant Corp. v. Wendy's Int'l, Inc.*,
  361 F.3d 1321 (11th Cir. 2004)........................................................................................6

*Lab'y Corp. of Am. v. Hood*,
  911 A.2d 841 (Md. 2006)..................................................................................................9

*Lawrence v. DAP Prods., Inc.*,
2022 WL 2275595 (D. Md. June 23, 2022) ...................................................................6

*Lifestyle Vacation Incentives, LLC v. Sternfeld*,
2012 WL 4854766 (S.D. Fla. Oct. 12, 2012)................................................................ 16

*LNV Corp. v. Harrison Fam. Bus., LLC*,
2016 WL 11740000 (D. Md. Mar. 16, 2016) ..................................................................2

*Lubin v. Skow*,
382 F. App'x 866 (11th Cir. 2010)..................................................................................4

*M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*,
982 F.3d 1333 (11th Cir. 2020)..................................................................................... 16

*Maryland Cmty. Health Sys., LLP v. Glendening*,
115 F. Supp. 2d 599 (D. Md. 2000) ...............................................................................3

*Menasco, Inc. v. Wasserman*,
886 F.2d 681 (4th Cir. 1989) .............................................................................9, 22, 23

*Midway Labs USA, LLC v. S. Serv. Trading, S.A.*,
2020 WL 2494608 (S.D. Fla. May 14, 2020) ......................................................... 18, 19

*Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*,
761 So. 2d 1256 (Fla. 3d DCA 2000)........................................................................... 17

*Miracle 7, Inc. v. Halo Couture, LLC*,
2014 WL 11696708 (S.D. Fla. Jan. 17, 2014) ......................................................... 15, 17

*Morley v. Cohen*,
888 F.2d 1006 (4th Cir. 1989)....................................................................................... 19

*N. Carolina State Conf. of NAACP v. Cooper*,
332 F.R.D. 161 (M.D.N.C. 2019)...................................................................................2

*Norris v. PNC Bank, N.A.*,
2022 WL 2193303 (D. Md. June 16, 2022) .................................................................. 14

*Omnia Med., LLC v. PainTEQ, LLC*,
2022 WL 3139241 (M.D. Fla. Aug. 5, 2022) ............................................................... 30

*Painter's Mill Grille, LLC v. Brown*,
716 F.3d 342 (4th Cir. 2013)..........................................................................................5

*Peng v. Mastroinni*,
2021 WL 4522303 (S.D. Fla. May 5, 2021) ........................................................... 10, 12

*Pietz v. Apple, Inc.*,
   2025 WL 1885675 (S.D. Fla. May 16, 2025), *report and recommendation adopted*, 2025 WL 1572443 (June 4, 2025)....................................................................................7

*Plain Bay Sales, LLC v. Gallaher*,
   2019 WL 6206836 (S.D. Fla. Nov. 21, 2019) ...............................................................6

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
   842 So. 2d 773 (Fla. 2003)................................................................................ 17, 18

*Raney v. Allstate Ins. Co.*,
   370 F.3d 1086 (11th Cir. 2004)...............................................................................21

*Ray v. Spirit Airlines, Inc.*,
   836 F.3d 1340 (11th Cir. 2016)......................................................................... 25, 26

*ReneG Corp v. JPMorgan Chase Bank, N.A.*,
   No. 25-CV-20595, 2025 WL 2239263 (S.D. Fla. Aug. 6, 2025) .........................................13

*Rife v. Newell Brands, Inc.*,
   632 F. Supp. 3d 1276 (S.D. Fla. 2022)......................................................................19

*Rodriguez v. Recovery Performance & Marine, LLC*,
   38 So. 3d 178 (Fla. 3d DCA 2010) ..........................................................................19

*Rogers v. Nacchio*,
   241 F. App'x 602 (11th Cir. 2007)..........................................................................27

*Rollins & Orkin Exterminating Co. v. Butland*,
   951 So. 2d 860 (Fla. 2d DCA 2006) ........................................................................19

*Rollins, Inc. v. Heller*,
   454 So. 2d 580 (Fla. 3d DCA 1984) ........................................................................18

*Romika-USA, Inc. v. HSBC Bank USA, N.A.*,
   514 F. Supp. 2d 1334 (S.D. Fla. 2007)......................................................................16

*Rowland v. California Men's Colony, Unit II Men's Advisory Council*,
   506 U.S. 194 (1993) .............................................................................................2

*RRC Aruba, Ltd. v. Lionstone Grp., Inc.*,
   2006 WL 8433543 (S.D. Fla. June 12, 2006) ..............................................................29

*Salinas v. United States*,
   522 U.S. 52 (1997)..............................................................................................27

viii

*Seacoast Nat'l Bank v. M/V Slow UR Roll II and Starboard Yacht Group LLC*,
   Case No. 26-cv-60289, Order Denying Motion to Intervene, ECF 30 (S.D. Fla.
   Mar. 2, 2026)............................................................................................................................2

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ............................................................................................................ 19

*Simmons v. Poe*,
   47 F.3d 1370 (4th Cir. 1995) ............................................................................................. 27

*Smith Setzer & Sons, Inc. v. S.C. Procurement Rev. Panel*,
   20 F.3d 1311 (4th Cir. 1994) ................................................................................................3

*Solomon v. Blue Cross & Blue Shield Ass'n*,
   574 F. Supp. 2d 1288 (S.D. Fla. 2008).............................................................................. 27

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ............................................................................................. 21

*Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*,
   479 F. Supp. 3d 1247 (N.D. Fla. 2020)......................................................................... 10, 28

*Sterling v. Ourisman Chevrolet of Bowie Inc.*,
   943 F. Supp. 2d 577 (D. Md. 2013) ..................................................................................9, 24

*Stewart Title Guaranty Co. v. Title Dynamics, Inc.*,
   2005 WL 8159429 (M.D. Fla. Feb. 18, 2005)...................................................................6, 7

*Sweeteners Plus, Inc. v. Glob. Supply Source, Inc.*,
   2013 WL 4495002 (M.D. Fla. Aug. 19, 2013).................................................................... 30

*Tenet Solutions v. Amberstone Enter.*,
   2021 WL 4991299 (S.D. Fla. July 16, 2021)..................................................................... 17

*ThermoLife Int'l LLC v. Vital Pharms. Inc.*,
   2020 WL 409594 (S.D. Fla. Jan. 24, 2020)....................................................................... 15

*Toms v. State Farm Life Ins. Co.*,
   2022 WL 2758212 (M.D. Fla. July 14, 2022) ............................................................... 11, 12

*Toucheque v. Price Bros. Co.*,
   5 F. Supp. 2d 341 (D. Md. 1998).......................................................................................... 25

*United States v. Bailey*,
   419 F.3d 1208 (11th Cir. 2005)...................................................................................... 10, 26

*United States v. Crysopt Corp.*,
   781 F. Supp. 375 (D. Md. 1991)..................................................................................... 25, 26

*United States v. Diaz*,
    2023 WL 7036721 (S.D. Fla. Oct. 26, 2023)......................................................29

*United States v. Kernan Hosp.*,
    880 F. Supp. 2d 676 (D. Md. 2012) ...................................................................8

*United States v. Pendergraft*,
    297 F.3d 1198 (11th Cir. 2002)........................................................................21

*United States v. Tillett*,
    763 F.2d 628 (4th Cir. 1985) ............................................................................27

*US Airline Pilots Ass'n v. AWAPPA, LLC*,
    615 F.3d 312 (4th Cir. 2010) ............................................................................24

*Viridis Corp. v. TCA Glob. Credit Master Fund, LP*,
    155 F. Supp. 3d 1344 (S.D. Fla. 2015)...............................................................27

*Ward v. Nierlich*,
    617 F. Supp. 2d 1226 (S.D. Fla. 2008)..............................................................23

*Waugh Chapel S., LLC v. UFCW Local 27*,
    728 F.3d 354 (4th Cir. 2013) ............................................................................21

*Westlake Flooring Co., LLC v. Miami Motorsports, LLC*,
    423 So. 3d 894 (Fla. 4th DCA 2025)..................................................................11

*Williams v. Dee Miracle Auto Grp., LLC*,
    2016 WL 363829 (D. Md. Jan. 29, 2016).............................................................3

**Statutes, Rules & Regulations**

18 U.S.C. § 1341 .................................................................................................20

18 U.S.C. § 1343 .................................................................................................20

18 U.S.C. § 1961(1)..............................................................................................20

18 U.S.C. § 1961(4)..........................................................................................24, 25

18 U.S.C. § 1961 *et seq.* .......................................................................................9

18 U.S.C. § 1962(c) ......................................................................................19, 25, 27

18 U.S.C. § 1964(c) ..............................................................................................19

18 U.S.C. § 3575(e) ..............................................................................................22

Fed. R. Civ. P. 8....................................................................................................9

Fed. R. Civ. P. 9(b) ................................................................................................................ 8, 9, 20, 22

Fed. R. Civ. P. 12(b)(6)............................................................................................................3, 8

Fla. Stat. § 501.201 *et seq.*......................................................................................................9

Fla. Stat. § 501.202(2) ............................................................................................................ 18

Fla. Stat. § 772.11....................................................................................................................6, 12

L.R. 101.1 ................................................................................................................................2

The Counterclaims alleged by Charles Jacob Stratmann belong to Starboard Yacht Group, LLC ("SYG")—not Stratmann individually. Every injury Stratmann claims to have suffered flows from SYG's dealer relationship with Seakeeper, yet he sues in his own name to sidestep the fundamental rule that a company must appear through counsel. Because the claims he asserts belong to SYG, Stratmann lacks standing to bring them, and the Court must dismiss the claims with prejudice on that basis alone. Even setting standing aside, Stratmann's claims cannot survive because he fails to adequately plead his claims, and each count independently fails on the merits.

## BACKGROUND

Every allegation in Stratmann's counterclaim traces back to SYG, not to him. Stratmann pleads, and incorporates into each of his nine counts, that in 2018 "SYG and Seakeeper entered into a written Dealer Agreement under which SYG became an authorized Seakeeper dealer for the State of Florida," and that from 2018 through 2024 "SYG performed in good faith as an authorized Seakeeper dealer, including by purchasing and warehousing Seakeeper inventory in Florida and providing installation and warranty services to Florida customers." (ECF 76 at 2.) Stratmann alleges that SYG—not Stratmann—held "approximately $2,000,000 of SYG inventory," and that SYG helped resolve a customer's warranty claim by supplying SYG-stocked units through "the SYG dealer channel." (*Id.* at 3, 6-7.) He alleges that intellectual property and market research developed "during the course of the dealer relationship" were diverted from "SYG and its dealer position." (*Id.* at 8.) And he alleges that Seakeeper terminated "the dealer relationship" with SYG without honoring the cure period to which "SYG was contractually entitled," then refused to repurchase or release "SYG's existing inventory," locking "approximately $2,000,000 of SYG inventory" in Florida warehouses. (*Id.* at 2-3.)

Further to the point, the only injuries Stratmann claims as his own are derivative of SYG by his own description: (1) the loss of $793,002 that he "personally paid," from his "individual accounts

1

and personal credit lines," for SYG's inventory program, and (2) the threatened loss of his home, which he pledged to secure SYG's EIDL loan—a loan he says left his "individual financial position substantially and unavoidably tied to the disposition of the Seakeeper inventory and to the dealer-relationship cash flows" that service SYG's debt. (*Id.* at 2-3.)

Yet Stratmann attempts to bring all nine of these SYG-focused counts in his own name, insisting he appears "in his individual capacity as a directly injured party" rather than as SYG's managing member. (*Id.* at 1.) Despite the self-serving label, his allegations confirm that each and every claim flows from SYG's dealer relationship with Seakeeper; in fact, the counterclaim fails to allege any relationship between Seakeeper and Stratmann individually—because no such relationship exists. (*See generally* ECF 76.) Seakeeper therefore moves to dismiss the counterclaims in their entirety for lack of standing. Even if Stratmann had standing (which he does not), the claims also fail on the merits.

## ARGUMENT

### I.   The Court Should Dismiss Stratmann's Counterclaim For Lack of Standing.

Stratmann lacks standing because his alleged claims and damages flow entirely from the dealer relationship between Seakeeper and SYG. Indeed, Stratmann does not allege, nor could he allege, any relationship between Seakeeper and Stratmann. Stratmann sues in his own name only to circumvent the well-established rule that a corporation must be represented by an attorney. *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993); D. Md. L.R. 101.1.[1] Courts across the country, including several which denied similar attempts by Mr. Stratmann,[2] have

---

[1] The reason for an LLC's unrepresented status, including any alleged financial inability to afford counsel, is **immaterial** to this well-established rule. *See, e.g., LNV Corp. v. Harrison Fam. Bus., LLC*, 2016 WL 11740000, at *2 (D. Md. Mar. 16, 2016) (collecting cases); *see also Broad. Music, Inc. v. Leigh Ann Pippin, LLC*, 2017 WL 1552045, at *1 (M.D. Fla. May 1, 2017) (recognizing the court "cannot re-write the law to allow an LLC to defend an action unrepresented by counsel" merely because of LLC's inability to afford counsel).

[2] *See, e.g.*, ECF 36-2, *Seacoast Nat'l Bank v. M/V Slow UR Roll II and Starboard Yacht Group LLC*, Case No. 26-cv-60289, Order Denying Motion to Intervene, ECF 30, at 3 (S.D. Fla. Mar. 2, 2026). Courts in the Fourth Circuit have declined to require proof of standing on a motion to intervene, instead addressing standing requirements on motions to dismiss. *See, e.g., N. Carolina State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 164–65 (M.D.N.C. 2019).

unequivocally rejected this improper tactic. *See Williams v. Dee Miracle Auto Grp., LLC*, 2016 WL 363829, at \*2 (D. Md. Jan. 29, 2016) (collecting cases).

The party asserting claims bears the burden of establishing standing. *Harris v. Wells Fargo Corp. Off. Headquarters, HQ*, 2023 WL 155244, at \*2 (D. Md. Jan. 11, 2023). Standing has two elements: Article III constitutional standing and prudential standing. *Id.*[3] "Prudential standing dictates 'that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Callender v. Callender*, 2016 WL 3647613, at \*2 (D. Md. June 30, 2016) (internal quotation omitted). Stratmann asserts legal rights which belong to SYG; therefore, Stratmann lacks prudential standing and his claims must be dismissed. *Id.*

It is a "fundamental rule" that "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Maryland Cmty. Health Sys., LLP v. Glendening*, 115 F. Supp. 2d 599, 605 (D. Md. 2000) (quoting *Smith Setzer & Sons, Inc. v. S.C. Procurement Rev. Panel*, 20 F.3d 1311, 1317–18 (4th Cir. 1994) (holding that lost income and other financial harms flowing from injuries to a corporation were not individualized injuries sufficient to confer standing on the shareholder)); *Dwyer v. Zuccari*, 2020 WL 1308282, at \*5 (D. Md. Mar. 19, 2020) ("Limited liability companies are similarly regarded as distinct from their members. . . . This separate entity status is 'jealously guarded.'" (citation omitted)); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118–19 (4th Cir. 2004) (member lacks standing to assert counterclaims on behalf of LLC); *Bluefeld v. Cohen*, 2017 WL 1546406, at \*3 (D. Md. Apr. 27, 2017) (dismissing *pro se* plaintiff's derivative shareholder action for lack of standing), *aff'd*, 697 F. App'x 788 (4th Cir. 2017).

Yet this is precisely what Stratmann attempts to do. In an effort to avoid the counsel requirement, Stratmann tries to recast SYG's purported claims as his own. (Doc. 76 at 1.) But the

---

[3] Article III standing is addressed through Rule 12(b)(1); prudential standing is addressed through Rule 12(b)(6). *Id.*

injuries he alleges—loss of income dependent on SYG's revenue, loss of "$2,000,000 of SYG inventory," a portion of which Stratmann allegedly paid for with individual funds on SYG's behalf, and personal exposure based on SYG's default on an EIDL loan secured by Stratmann's home—are classic derivative injuries suffered because of alleged wrongs to SYG, not to Stratmann individually.

"Importantly, regardless of the 'label the plaintiff gives' the suit, a court must look to the nature of the action as set forth in the complaint to determine whether it is derivative or direct." *Bluefeld*, 2017 WL 1546406, at \*3 (quoting *Jolly Roger Fund LP v. Sizeler Prop. Invs., Inc.*, 2005 WL 2989343, at \*4 (D. Md. Nov. 3, 2005)); *see also Lubin v. Skow*, 382 F. App'x 866, 871–72 (11th Cir. 2010) (affirming dismissal of "derivative claim disguised as a direct claim"). Here, Stratmann's own allegations establish that Seakeeper's allegedly tortious and fraudulent conduct was *directed at (and allegedly suffered by) SYG*. Stratmann's purported injuries flow from Seakeeper and SYG's dealer relationship, not a relationship between Seakeeper and Stratmann. Thus, regardless of the "individual" label Stratmann gives his claims, his own allegations reflect the derivative nature of his claims:

- "**SYG** and Seakeeper entered into a written Dealer Agreement under which **SYG** became an authorized Seakeeper dealer for the State of Florida." (ECF 76 at 2 (emphasis added).)[4]

- "From 2018 through 2024, **SYG** performed in good faith as an authorized Seakeeper dealer, including by purchasing and warehousing Seakeeper inventory in Florida and providing installation and warranty services to Florida customers." (*Id.* (emphasis added).)

- **SYG** obtained an EIDL loan as part of its "expanded inventory commitments and Florida-warehouse operations during the COVID-19 disruption." (*Id.*)

- "During 2024-2026, Seakeeper materially altered the operative terms of the dealer relationship without observing the cure period to which **SYG was contractually entitled**, and without offering **SYG** a meaningful opportunity to cure any alleged non-performance." (*Id.* at 3 (emphasis added).)

- "Seakeeper refused to repurchase **SYG's** existing inventory of Seakeeper units, refused to

---

[4] The 2019 Certified Dealer Non-Exclusive Agreement and the Seakeeper Ride Certified Dealer Agreement are filed under seal at ECF 3 and 4. The Court may consider the dealer agreements on a motion to dismiss, because they are central to and referenced throughout Stratmann's claims and their authenticity is not and cannot be challenged. *See Charters v. Sandy Spring Bank*, 2026 WL 1878499, at \*1 (D. Md. June 30, 2026) ("Courts are permitted, however, to consider documents attached to a motion to dismiss 'when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity.'").

4

permit **SYG** to sell that inventory to retail customers, and through a series of demand letters and communications, asserted that any sale or transfer of the inventory would constitute a violation of Seakeeper's intellectual-property rights," which resulted in the "locking [of] approximately $2,000,000 of **SYG** inventory." (*Id.* (emphasis added).)

- Seakeeper created "[i]nternal-conflict" through a "coordinated replacement of **SYG's** existing assigned representative." (*Id.* at 5 (emphasis added).)

- Seakeeper obtained a benefit from a warranty resolution brokered by Seakeeper and **SYG**, wherein "three Seakeeper Model SK35 units, together with one **SYG**-stocked Seakeeper Model SK26 unit . . . were placed or moved through the **SYG dealer channel** in furtherance of, and at the direction of, the resolved warranty/distribution arrangement." (*Id.* at 6-7 (emphasis added).)

- Seakeeper allegedly used market research and intellectual property jointly developed "[d]uring the course of the **dealer relationship**" in a manner which "diverted to Seakeeper, Inc. and its affiliates the commercial value of that research that would otherwise have inured to **SYG and its dealer position**." (*Id.* at 8 (emphasis added).)

These allegations relate to SYG, not Stratmann. Stratmann's alleged "individual" injuries are wholly derivative of the alleged harm to SYG. Stratmann asserts that his "personal financial exposure" is "substantially and unavoidably tied to" (1) the disposition of Seakeeper inventory owned and allegedly possessed by SYG that SYG cannot lawfully sell, and (2) SYG's "dealer-relationship cash flows that service the EIDL." (*Id.* at 2.) But each of these sources of exposure and potential financial injury flows through SYG and is contingent on SYG allegedly being harmed by Seakeeper's conduct.

Courts regularly dismiss claims for these types of derivative injuries for lack of standing. For example, in *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 348–49 (4th Cir. 2013), the Fourth Circuit affirmed the dismissal of LLC principals as plaintiffs, reasoning they lacked standing to bring individual claims for injuries suffered by their business. In doing so, the court specifically rejected the same argument Stratmann asserts here: that the principals had individual standing because they personally guaranteed the company's lease obligations and they lost profits due to the harm to company. *Id.* The court reasoned:

> In advancing their arguments, however, the [principals] have failed to account for the fact that they elected to conduct their business through a limited liability company ("LLC") and that, just as they received protection of their personal assets from liability

5

in doing so, they also assumed a role as agents for the company. At bottom, they gave up standing to claim damages to the LLC, even if they also suffered personal damages as a consequence.

*Id.* at 347–48. The same analysis compels the same result here. Stratmann's alleged financial injury is "derived entirely from the injury [his] company allegedly sustained" from Seakeeper's purported misconduct. *Id.* at 349. The case law is replete with dismissals, for lack of standing, of the same causes of action Stratmann brings here. (*See, e.g.*, breach of contract/implied covenant (*id.*; *Lawrence v. DAP Prods., Inc.*, 2022 WL 2275595, at *3 (D. Md. June 23, 2022) (granting motion to dismiss sole owner and sole shareholder's claim for breach of contract between his company and defendant company, reasoning "Mr. Lawrence, even as a sole shareholder, does not have standing individually to bring a claim for damages to [his company], even if he personally suffered injury as a consequence.") (internal quotation marks and quoting citation omitted); for civil theft under Fla. Stat. § 772.11, *see, e.g.*, *Blackwell v. Blackwell*, 2026 WL 1512857, at *2 (S.D. Fla. Mar. 9, 2026) (plaintiff lacked standing to assert cause of action for civil theft where assets belonged to deceased father and plaintiff sued individually, not as representative of estate))[5]; conversion (*see, e.g.*, *Feingold v. Cardinale*, 2026 WL 1615317, at *6 (S.D. Fla. June 5, 2026) (holding shareholder lacked standing to bring conversion claim with respect to corporate assets); *Stewart Title Guaranty Co. v. Title Dynamics, Inc.*, 2005 WL 8159429, at *4 (M.D. Fla. Feb. 18, 2005) (holding that because plaintiff lacked an immediate right to possess the at-issue property it lacked standing to assert claim for conversion)); tortious interference (*see, e.g.*, *KMS Restaurant Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1324–25 (11th Cir. 2004) (holding that a company, not its chairman personally, had standing to assert a claim for tortious interference where the company was a party to the operative contract); *Plain Bay Sales,*

---

[5] Because Stratmann's state law claims for civil theft, conversion, tortious interference with prospective business advantage are governed by Florida law (*see infra* note 8), cases from the Eleventh Circuit discussing the lack of standing to assert these claims are instructive for the Court. Similarly, other federal courts' consideration of standing to bring federal RICO claims are also persuasive authority.

*LLC v. Gallaher*, 2019 WL 6206836, at *2 (S.D. Fla. Nov. 21, 2019) (holding that the sole owner of a company lacked standing to bring tortious interference claims where the company was the party to the operative contract); *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 540 (D. Md. 2006) (holding a shareholder lacks standing to "recover for tortious interference of the business or contract of the corporation or LLC")); unjust enrichment/constructive trust (*see, e.g.*, *Stewart Title Guaranty Co.*, 2005 WL 8159429, at *4 (dismissing plaintiff's claims for unjust enrichment and constructive trust for lack of standing); *Pietz v. Apple, Inc.*, 2025 WL 1885675, at *5 (S.D. Fla. May 16, 2025), *report and recommendation adopted*, 2025 WL 1572443 (June 4, 2025) (dismissing unjust enrichment claims because the plaintiff as an individual lacked standing to assert his company's claims, even though he alleged that he held an interest in the company's copyrights)); FDUTPA claims (*see, e.g.*, *Avondale Decor, LLC v. Capital Solutions Bancorp, LLC*, 2025 WL 2390711, at *4-5 (M.D. Fla. Aug. 18, 2025) (dismissing FDUTPA and other claims asserted by corporate officer where "the injury asserted in all counts was directed at [the company]," and the officer alleged no direct personal injury)); and RICO claims (*see, e.g.*, *Harris v. Orange S.A.*, 636 F. App'x 476, 481 (11th Cir. 2015) ("[L]osses suffered by a company's stakeholders as a result of racketeering activity against the company do not give them standing under RICO[.]"); *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 906 (11th Cir. 1998) ("RICO standing will not arise solely because one is a shareholder or a limited partner in a company that was the target of the alleged RICO violation."); *Bluefeld*, 2017 WL 1546406, at *3 (holding individual shareholder lacked standing to bring RICO claims for injury to the corporation)).

Accordingly, the Court should dismiss Stratmann's counterclaims with prejudice.[6]

---

[6] The Court may properly dismiss with prejudice for lack of prudential standing where, as here, any amendment would be futile because the claims and injuries asserted belong to the corporation, not the individual shareholder. *See, e.g.*, *Hoang v. Prince George's Cnty.*, 2024 WL 4108531, at *6 (D. Md. Sept. 5, 2024) (dismissing cause of action for fraudulent inducement brought by individual plaintiff with prejudice for lack of prudential standing after court found

## II.    The Court Should Dismiss the Counterclaims For Failure to Adequately Plead.

Even if Stratmann has standing on one or more claims (which he does not), the claims should nevertheless be dismissed for failure to adequately plead. Stratmann's claims are subject to Rule 9(b)'s heightened pleading requirements, which require, at a minimum, Stratmann to describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation omitted); *see also Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (reaffirming *Harrison* standard for fraud-based claims).

Rule 9(b) applies to all nine counts because each re-alleges and incorporates a unified theory of fraudulent misrepresentations—that Seakeeper allegedly misled SYG regarding SYG's contractual cure rights under the dealer agreement, the lawful-transaction status of the locked inventory, and the settlement of a customer's warranty claim, thereby allegedly inducing Stratmann to make personal payments of at least $793,002 for SYG's business expenses and to pledge his personal residence as EIDL collateral on behalf of SYG. (ECF 76 at 9–13.) *See Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 593-94 (D. Md. 2014) ("when mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with particularity required by Rule 9(b)"); *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (applying Rule 9(b) where "the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud"); *United States v. Kernan Hosp.*, 880 F. Supp. 2d 676, 683–84 (D. Md. 2012) (applying Rule 9(b) to all counts where every cause of action was directly predicated on the same alleged false-claim fraud theory).

Stratmann's fraud-based allegations fail to meet this heightened burden. Stratmann identifies

---

claim was owned by her company); *Dwyer*, 2020 WL 1308282, at *11 (dismissing causes of action with prejudice under Rule 12(b)(6) for lack of prudential standing after finding individual plaintiff "lack[ed] prudential standing to sue on behalf of a loss which is attributable to his company").

8

the "persons" part of the RICO enterprise only as "Seakeeper, Inc., together with one or more of its

executive officers . . . (identities to be confirmed in discovery)," (ECF 76 at 11), and describes predicate

acts in conclusory terms without "stat[ing] with particularity" the who, what, when, where, and how

as required under Rule 9(b) and RICO. *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684-85 (4th Cir.

1989).[7] Stratmann's conclusory pleading warrants dismissal. While courts give some leeway to pro se

pleadings, it is not limitless; courts will not "conjure up questions never squarely presented to them"

or act as "an advocate" on plaintiff's behalf. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th

Cir. 1985). Stratmann's allegations, even when viewed with all reasonable inferences in his favor, fail

to plausibly state claims for relief under either Rule 8 or 9(b) and therefore should be dismissed.

### III. Additionally and Alternatively, the Court Should Dismiss the Counterclaim Because Stratmann's Claims Fail on Count-Specific Grounds.[8]

#### A. Counts I and II (Civil Theft and Conversion)

In Counts I and II for civil theft and conversion, Stratmann alleges that "Seakeeper exercised

dominion and control over funds and inventory belonging to or pledged for the benefit of Mr.

Stratmann" and that Seakeeper "with felonious intent, knowingly obtained and retained funds

---

[7] Even if the Court construed some of Stratmann's claims to not sound in fraud, his claims still fail under Rule 8. To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—not merely "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stratmann's Counterclaim lacks allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Each count merely recites the elements with few specific facts providing the basis for Stratmann's claims. (*See, e.g.*, ECF 76 at 10 ("Seakeeper exercised its discretionary contractual rights - specifically, the right to terminate, the right to send demand letters, and the right to control inventory disposition - in a manner that denied Mr. Stratmann the benefit of the bargain.") And his indiscriminate incorporation of all factual allegations into every count fails to present his claims "discretely and succinctly," leaving Seakeeper and the Court to guess which facts support which claims. *See Sterling v. Ourisman Chevrolet of Bowie Inc.,* 943 F. Supp. 2d 577, 598 (D. Md. 2013) (finding that a count predicated on the complaint's entire factual section failed to provide sufficient clarity regarding the factual basis of the claim).

[8] The Court applies Maryland choice-of-law rules for each state law claim brought under this Court's diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97(1941). For Stratmann's tort-based claims (Counts I, II, V, and IX), Maryland follows *lex loci delicti*, applying "the law of the place where the tort or wrong was committed." *See Lab'y Corp. of Am. v. Hood*, 911 A.2d 841, 844-45 (Md. 2006). For Stratmann's contract-based claims (Counts III and IV), Maryland honors choice of law provisions in contracts. *Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803-04 (Md. 2007). Stratmann's statutory claim under FDUTPA is governed by Florida law. *See* Fla. Stat. § 501.201 *et seq.* Stratmann's RICO claims are governed by federal law. *See* 18 U.S.C. § 1961 *et seq.*

personally paid by Mr. Stratmann valued at not less than $793,002[.]'" (ECF 76 at 9.) A claim for conversion requires a plaintiff to allege an "act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Peng v. Mastroinni*, 2021 WL 4522303, at *5 (S.D. Fla. May 5, 2021) (cleaned up); *Cap. Source Fin., LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d 304, 310-11 (D. Md. 2007) (recognizing Maryland and Florida law have substantially similar elements for conversion claims). Civil theft requires a plaintiff to establish the elements of conversion with an additional allegation of criminal intent. *Peng*, 2021 WL 4522303 at *5. Stratmann's Counterclaims fail to allege facts to support each and every element of these claims.

1.  <u>Stratmann fails to allege an immediate right of possession.</u>

A plaintiff must plausibly allege an immediate right of possession of the property at the time of the alleged conversion. *See United States v. Bailey*, 419 F.3d 1208, 1212 (11th Cir. 2005); *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F. Supp. 3d 1247, 1253 (N.D. Fla. 2020) (dismissing conversion claim under Florida law because the plaintiff had no legal right to the property at issue). Because the inventory and funds at issue belonged to SYG, not Stratmann (by his own allegations), Stratmann has failed to allege an immediate right of possession.

As alleged, the property forming the basis of Stratmann's conversion and civil theft claim is the "funds personally paid by Mr. Stratmann valued at no less than $793,002," which he alleges he paid from his "personal funds against the [Seakeeper] inventory program . . . (ECF 76 at 3, 9.) More specifically, Stratmann alleges that he individually paid for "inventory and inventory-related charges"—inventory which he alleges Seakeeper wrongfully and effectively "lock[ed]" when Seakeeper "refused to repurchase SYG's existing inventory of Seakeeper units, refused to permit SYG to sell that inventory to retail customers, and through a series of demand letters and communications, asserted that any sale or transfer of the inventory would constitute a violation of Seakeeper's

intellectual-property rights." (*Id.* at 3.) As alleged, the inventory belonged to SYG, not Stratmann. (*Id.* at 3 ("Seakeeper refused to repurchase SYG's existing inventory[.]").)

As Stratmann himself admits, SYG, as a party to the dealer agreements, not Stratmann, had an immediate right to possess the inventory. (*Id.* at 2; *id.* at 9 ("Counterclaimant does not, in this Count, assert civil-theft damages on the inventory itself, the inventory book-value claim being reserved to SYG.")) And even if Stratmann is considered a creditor with respect to the alleged $793,002 payment for SYG's inventory, he still lacks an immediate right of possession sufficient to state a conversion or civil theft claim; there are no allegations that Stratmann asserted, or foreclosed on, a lien against SYG. *See Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 498 (Fla. 3d DCA 1994) (plaintiff failed to state a claim for conversion where they had failed to foreclose on lien and thus did not have an immediate right of possession); *Westlake Flooring Co., LLC v. Miami Motorsports, LLC*, 423 So. 3d 894, 903 (Fla. 4th DCA 2025) ("[A] lienholder 'with no right of possession cannot maintain an action for conversion of the liened property.'") (internal citation omitted).

2. <u>Stratmann fails to allege specific and identifiable money.</u>

Where, as here, a conversion claim involves the alleged conversion of money, the plaintiff must allege funds that are "specific and identifiable." *Toms v. State Farm Life Ins. Co.*, 2022 WL 2758212, at *2 (M.D. Fla. July 14, 2022). In other words, a plaintiff must allege a conversion of money that was "delivered at one time and in one mass" or money that was segregated in a separate account, such as money in a trust account or a specific fund. *Id.* at *3; *see also Epoch Int'l Partners, LLP v. Bigfoot Inc.*, 587 F. Supp. 3d 1214, 1221 (S.D. Fla. 2022) (dismissing conversion claim where plaintiff failed to allege funds were to be held in a trust account of another segregated and identifiable account).

Stratmann alleges that Seakeeper is liable for conversion and civil theft for obtaining and retaining $793,002 he paid for inventory and inventory-related charges. (ECF 76 at 3, 9.) By

11

Stratmann's own allegations, the $793,002 was used to pay for Seakeeper inventory and is therefore not separate and identifiable. Stratmann fails to allege that this sum was delivered at one time and in one mass, or that it was to be held in a separate account.

3.   <u>The underlying dispute is governed by contract, not the law of conversion or civil theft.</u>

Conversion and civil theft claims are "not . . . appropriate means of vindicating a claim which essentially alleges a breach of contract." *Toms*, 2022 WL 2758212, at *3. Here, the dispute concerning SYG's inventory is plainly a contractual dispute under SYG's dealer agreements with Seakeeper and thus cannot form the basis of Stratmann's conversion and civil theft claims. *See Peng*, 2021 WL 4522303, at *5 ("Counts VII and VIII do not go beyond Defendants' failure to comply with the terms of a contract and therefore do not state a claim for conversion or civil theft under Florida law.").

Indeed, Stratmann's allegations establish that the conversion and theft claims are contract claims in disguise. Stratmann alleges that SYG performed pursuant to its dealer agreements with Seakeeper by "purchasing and warehousing Seakeeper inventory[.]" (*Id*. at 2.) And Stratmann asserts that Seakeeper "denied Mr. Stratmann the benefit of the bargain" by excising its contractual right to "control inventory disposition," and contends that a cure period in the dealer agreement was material to his decision "to advance personal funds against the inventory program[.]" (*Id*. at 3, 10.) Stratmann's allegations establish that this dispute is contractual, not a conversion or civil theft. The Court should therefore dismiss these claims. *See Toms*, 2022 WL 2758212, at *3; *Peng*, 2021 WL 4522303, at *5.

4.   <u>Stratmann failed to serve a pre-suit demand under Florida Statute § 772.11.</u>

Florida Statute § 772.11 requires that, before filing a civil theft action, a plaintiff "must make a written demand for $200 or the treble damage amount of the person liable for damages under this section." Fla. Stat. § 772.11(1). Stratmann does not allege, nor can he allege, that he satisfied this pre-suit requirement. *See Fraga v. Guardian Life Ins. Co. of Am.*, 2026 WL 2162144, at *6 (S.D. Fla. May

21, 2026), *report and recommendation adopted sub nom.*, 2026 WL 2150963 (July 27, 2026) (dismissing conversion/civil theft claim for failure to make statutory written presuit demand).

5.  <u>Stratmann fails to allege felonious intent necessary for civil theft.</u>

Stratmann includes no facts supporting the additional element of felonious intent, as required to state a claim for civil theft. *See ReneG Corp v. JPMorgan Chase Bank, N.A.*, No. 25-CV-20595, 2025 WL 2239263, at \*8 (S.D. Fla. Aug. 6, 2025). He alleges only that "Seakeeper, with felonious intent, knowingly obtained a retained fund personally paid by Mr. Stratmann." (ECF 76 at 9.) "[M]erely citing the civil theft statute and using word like 'stolen, misappropriated, and criminal' are not sufficient to satisfy the pleading requirements as they amount to conclusory allegations and deductions." *ReneG*, 2025 WL 2239263, at \*8; *see also Dixon v. Bank of Am., N.A.*, 2020 WL 13612721, at \*8 (S.D. Fla. Mar. 6, 2020) (dismissing civil theft claim where plaintiff pled only conclusory allegations of felonious intent), *aff'd sub nom. Dixon v. Green Tree Servicing, LLC*, 859 F. App'x 373 (11th Cir. 2021).

## B.  Counts III & IV (Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing)

Stratmann's contract-based claims fail for the simple reason that he was not a party to the contracts. (*See* ECF 3; ECF 4.)[9] Stratmann admits that the operative dealer agreement was "executed by SYG's authorized representative." (ECF 76 at 2.) Nor can Stratmann be considered an intended third-party beneficiary. "Maryland law is quite restrictive on the issue of whether one may be considered a third-party beneficiary." *Amaya v. DGS Constr., LLC*, 2019 WL 3945933, at \*4–5 (D. Md. Aug. 21, 2019) (internal citation omitted); *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257,

---

[9] Maryland does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing. *See Gurbani v. Johns Hopkins Health Systems Corp.*, 237 Md. App. 261 (2018)). Instead, it is "better viewed as an element of another cause of action at law, *e.g.*, breach of contract, than as a stand-alone cause of action for money damages." *Id.* at 306 n.20. As a result, Stratmann's claim for breach of the implied covenant of good faith and fair dealing is subject to dismissal for the same reason as its breach of contract claim.

268–70 (Del. Ch. 1987) (distinguishing between intended beneficiaries who may enforce a contract and incidental beneficiaries who may not).[10] To qualify as an intended third-party beneficiary, the third-party must be the "primary party in interest." *Amaya*, 2019 WL 3945933, at \*4–5; *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 212 (Md. 2012) ("It is not enough that the contract merely operates to an individual's benefit."); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001) (under Delaware law, contracting parties must have intended that the third party beneficiary benefit from the contract, the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation, and the intent to benefit the third party must be a material part of the parties' purpose in entering the contract).

Here, Stratmann fails to show that Seakeeper and SYG "clearly intended" him to be the "primary party in interest" in their commercial agreement between two businesses. *See Norris v. PNC Bank, N.A.*, 2022 WL 2193303, at \*26 (D. Md. June 16, 2022); *DuPont,* 269 F.3d at 196-97; *Insituform,* 534 A.2d at 269–70. At most, Stratmann was an incidental beneficiary who received indirect benefits as SYG's member-manager. Indeed, Stratmann's only appearance in the contracts is in his capacity as SYG's member-manager.

Additionally, Stratmann has not plausibly alleged Seakeeper breached a contractual cure provision. While Stratmann claims that Seakeeper did not permit SYG time to cure its performance under the contract, this fails to state a claim for breach of contract because, under the contract, there are several grounds for termination which do not provide a cure period, and Stratmann fails to plausibly allege the grounds for SYG's dealer termination or that such grounds had a cure provision. (*See, e.g.*, ECF 3, 2019 Dealer Agreement, ¶¶ 72.2-72.6 (setting forth various bases for termination for cause); *id.* ¶ 72.1 (requiring 15-day cure period for defaulting on payment/breaching payment provisions).)

---

[10] The 2019 dealer agreement contains a Maryland choice-of-law provision; the 2024 agreement contains a Delaware choice-of-law provision. (*See* ECF 3 at 18; ECF 4 at 14.)

14

### C. Count V (Tortious Interference with Prospective Business Advantage)

"Under Florida law, the elements of tortious interference with a business relationship are (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Duty Free Americas, Inc., v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (cleaned up). Stratmann's allegations fail to state such a claim.

    1. <u>Stratmann fails to allege the existence of a business relationship.</u>

To state a tortious interference claim, a plaintiff must plead a "business relationship with identifiable customers," *ThermoLife Int'l LLC v. Vital Pharms. Inc.*, 2020 WL 409594 at *3 (S.D. Fla. Jan. 24, 2020), or "a relationship with a particular party," rather than allegations of interference "with the general business community." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999).

Stratmann's allegations fail to adequately allege a business relationship with identifiable customers. He alleges only conclusory and vague relationships with unspecified "retail yacht-broker customers and refit-yard purchasers in the South Florida marine market." (ECF 76 at 10.) These allegations fall well short of alleging a relationship with a particular party. *See Miracle 7, Inc. v. Halo Couture, LLC*, 2014 WL 11696708, at *3 (S.D. Fla. Jan. 17, 2014) (finding insufficient an allegation of interference with "existing customers and potential customers"); *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (finding insufficient an allegation of interference with "various customers").

Additionally, Stratmann alleges that Seakeeper interfered by "communicating to the marketplace" that certain inventory could not be sold. (ECF 76 at 10.) Allegations of interference directed to "the marketplace" is insufficient to state a claim for tortious interference. *See Dunn*, 193 F.3d at 1191 (holding an allegation of interference "with the general business community" is

15

insufficient to state a tortious interference claim). This is plainly insufficient.

2. As alleged, Seakeeper is not a stranger to SYG's customer contracts.

"Under Florida law, a person with 'any beneficial or economic interest in, or control over,' a contractual relationship is not considered a 'stranger' to the contract and therefore has a 'privilege to interfere' in that relationship." *M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1339 (11th Cir. 2020) (quoting *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014)). Here, Seakeeper is not a stranger to the alleged business relationships. Stratmann's tortious interference claim is premised on his allegations that Seakeeper prohibited SYG from selling "SYG's existing inventory of Seakeeper units[.]" (ECF 76 at 3, 10.) As alleged, Seakeeper plainly had a beneficial or economic interest, or control over, that inventory and thus had a privilege to interfere. The dealer agreements between Seakeeper and SYG provide that upon their termination, SYG shall "[c]ease and refrain from the sale, promotion, and offering" of Seakeeper products. (ECF 3 ¶ 75.1; ECF 4 ¶ 55.1.) Seakeeper thus had the contractual right to interfere with the relationship between SYG and its customers. *See Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (finding that the defendant "had the contractual right to 'interfere'" because defendant was the "'source' of the relationship it [wa]s accused of interfering with"); *Genet Co. v. Anheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986) (similar); *Lifestyle Vacation Incentives, LLC v. Sternfeld*, 2012 WL 4854766, at *4 (S.D. Fla. Oct. 12, 2012) (dismissing tortious interference claim because the defendant was the "ultimate source of funds" for any prospective business between the plaintiff and third parties and that business could only be consummated "when approved by" defendant). Under these circumstances, Seakeeper is not a stranger that may be liable for tortious interference.

3. As alleged, Seakeeper's purported interference was justified.

"Courts routinely reject tortious-interference claims based on good-faith efforts to enforce

16

intellectual property rights." *Tenet Solutions v. Amberstone Enter.*, 2021 WL 4991299, at *7 (S.D. Fla. July 16, 2021) (internal quotation omitted). Stratmann's tortious interference claim is based on "Seakeeper's demand-letter channel." (ECF 76 at 10.) The "demand-letter channel," according to Stratmann, refers to Seakeeper's demand letters which "asserted that any sale or transfer of the inventory would constitute a violation of Seakeeper's intellectual property rights." (*Id*. at 3.) Because Stratmann's claim is based on these intellectual property demand letters, he fails to state a claim for tortious interference as a matter of law. *See Tenet Solutions*, 2021 WL 4991299, at *7; *Miracle 7*, 2014 WL 11696708, at *4; *see also Daesang Corp. v. Rhee Bros.*, 2005 WL 1163142, at *13 (D. Md. May 13, 2005) ("As a result, numerous courts have routinely rejected tortious interference and unfair competition claims based on good faith efforts to enforce intellectual property rights.").

### D.  Count VI (FDUTPA)

The Court should dismiss Count VI because Stratmann fails to allege an unfair or deceptive act and improperly seeks consequential, not actual, damages.

1.  <u>Stratmann fails to allege an unfair or deceptive act.</u>

Stratmann's FDUTPA claim fails because the conduct he alleges—termination of a dealer agreement, sending demand letters, and restraining inventory disposition—does not constitute an "unfair or deceptive" act. An "unfair" practice is one that "offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). A "deceptive" practice is one that "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000). A plaintiff may not recast a failed breach-of-contract theory as a FDUTPA claim where the alleged unfair or deceptive conduct is derivative of an unenforceable contractual promise. "To hold

17

otherwise would allow every failed breach of contract claim to morph into a negligent misrepresentation or FDUTPA claim." *Bankers Tr. Co. v. Basciano,* 960 So. 2d 773, 778 (Fla. 5th DCA 2007).

Stratmann's own allegations confirm this is a commercial contract dispute, not consumer fraud. He alleges that Seakeeper sent demand letters to SYG asserting intellectual-property rights, terminated "or purported to terminate" the dealer relationship, and "refused to repurchase" SYG's inventory or "permit SYG to sell that inventory." (ECF 76 at 3-4.) These are contract-enforcement actions—exactly the kind of conduct *Basciano* recognized cannot be transmuted into a FDUTPA claim. They do not "offend[] established public policy" or constitute conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR*, 842 So. 2d at 777 (internal quotations omitted). Indeed, Stratmann himself is not a "consumer"—he is a sophisticated businessman who operated a commercial dealership. The FDUTPA was enacted "to protect the consuming public and legitimate business enterprises" from unfair trade practices, Fla. Stat. § 501.202(2), not to provide a vehicle for dealers to transform commercial contract disputes with suppliers into fraud claims.

2. <u>Stratmann improperly seeks consequential, not actual, damages.</u>

FDUTPA permits recovery of only "actual damages"—not consequential or speculative losses. *See Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, 2020 WL 2494608, at *5 (S.D. Fla. May 14, 2020). Actual damages are measured by the difference between the market value of what was received and what was promised. *Rollins, Inc. v. Heller,* 454 So. 2d 580 (Fla. 3d DCA 1984); *City First Mortg. Corp. v. Barton,* 988 So. 2d 82, 86 (Fla. 4th DCA 2008). FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Rollins & Orkin Exterminating Co. v. Butland,* 951 So. 2d 860, 873 (Fla. 2d DCA 2006); *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 176 (Fla. 1st DCA 2015).

18

Count VI identifies no FDUTPA-cognizable damages. The only damages Stratmann pleads—$793,002 in personal payments, EIDL collateral impairment, and lost yacht-broker income—appear under his RICO and civil-theft counts, not Count VI. (*Compare* ECF 76 at 10 with *id.* at 11–12.) These damages bear no relation to FDUTPA's proper measure: "(1) the value between what was promised and what was delivered; or (2) the total price paid for a valueless good or service." *Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1315 (S.D. Fla. 2022). Courts consistently hold that similar types—lost profits and loan-related payments—are consequential damages not recoverable under FDUTPA. *See Midway Labs*, 2020 WL 2494608, at *7; *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 181 (Fla. 3d DCA 2010). The Court should dismiss Stratmann's FDUTPA claim.

### E.  Counts VII & VIII (RICO and RICO Conspiracy)

RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The plaintiff must also prove injury to business or property caused by reason of the RICO violation. *See* 18 U.S.C. § 1964(c); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000).

Stratmann's RICO claim fails because he fails to plead (1) predicate acts, (2) related racketeering activity, (3) continuity, (4) a distinct enterprise, (5) an agreement to conspire, and (6) an independently actionable conspiracy claim. Each deficiency is independently fatal.

1.  Stratmann fails to plead predicate acts.

A RICO plaintiff must allege "at least two predicate acts of racketeering" to state a claim. *Id.*

19

To qualify as a predicate act, the conduct must constitute a violation of one of the state or federal laws enumerated in 18 U.S.C. § 1961(1). Stratmann claims that Seakeeper and its unidentified officers (which Stratmann defines as the RICO "persons"), through the demand-letter channel, the dealer-termination conduct, and coordinated interstate communications with Seakeeper's "[corporate] parent and counsel participants," conducted the enterprise's affairs through a pattern of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) by "communicat[ing] material misrepresentations and omissions concerning [his] contractual cure rights, the inventory's lawful-transaction status, and the parties' settlement posture. . ." (ECF 76 at 11.)

Where, as here, the predicate acts are premised entirely on mail or wire fraud, courts must scrutinize the claims with particular care, because "it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." *Al-Abood*, 217 F.3d at 238 (quotations and citations omitted). This caution preserves the distinction between "ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." *Id.* Stratmann's allegations do not withstand scrutiny.

First, Stratmann's allegations describe no specific predicate act. Section F asserts only that Seakeeper's "demand-letter channel, the inventory lock, and the dealer-termination decision were each originated, coordinated, and ratified through executive personnel acting in concert with Madison Industries" and that this coordination "is documented in interstate wire communications constituting predicate acts." (ECF 76 at 4.) That is exactly the vague, conclusory pleading Rule 9(b) forbids: Stratmann never identifies a single wire communication, what it said, when it was sent, who sent or received it, or how it was fraudulent. Indeed, his own pleading describes the "demand-letter channel" as Seakeeper's assertion of its intellectual-property rights, the "inventory lock" as Seakeeper's refusal to repurchase or permit resale of inventory, and the "dealer-termination decision" as Seakeeper's

20

termination of the dealer relationship. (*Id*. at 3-4.) These are ordinary commercial and contractual decisions, not fraudulent communications. Courts routinely dismiss RICO claims that repackage contract disputes as racketeering, particularly where, as here, Stratmann asserts six separate state-law claims arising from the same conduct. *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988); *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1264 (11th Cir. 2004); (ECF 76 at 9-11.)

Second, the "demand-letter channel" independently cannot supply a mail- or wire-fraud predicate because non-sham litigation activity, including pre-suit demands to resolve legal claims, generally cannot be recast as racketeering activity. The Fourth Circuit has recognized that the *Noerr-Pennington* doctrine protects access to the courts, including litigation funded or supported by third parties, where the challenged litigation is not objectively baseless. *See Baltimore Scrap Corp. v. David J. Joseph Co.,* 237 F.3d 394, 398-402 (4th Cir. 2001). And although the Fourth Circuit has also recognized that sham litigation falls outside *Noerr-Pennington* protection, that exception requires more than the mere use of legal proceedings or litigation threats. *See Waugh Chapel S., LLC v. UFCW Local 27,* 728 F.3d 354, 363-64 (4th Cir. 2013).[11]

Courts have likewise applied these principles to pre-suit demand letters. *See Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 936-40 (9th Cir. 2006) (holding that RICO and the asserted predicate statutes did not reach non-sham prelitigation demand letters seeking settlement of legal claims); *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1374 (S.D. Fla. 2010) (holding that pre-litigation demand letters are protected communications under the *Noerr-Pennington* doctrine). Here, Stratmann's "demand-letter channel" allegations describe pre-litigation communications threatening enforcement of Seakeeper's asserted legal rights. Absent facts showing sham petitioning, an

---

[11] Similarly, the Eleventh Circuit has held that "mailing of litigation documents, even perjurious ones, did not violate the mail-fraud statute" and that threats to litigate are not wrongful under the Hobbs Act. *United States v. Pendergraft*, 297 F.3d 1198, 1208–09 (11th Cir. 2002); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (extending this principle to actual litigation).

independent fraudulent scheme, or an intent to deceive the recipient of the communication, those allegations do not plead RICO predicate acts.[12]

2.  <u>Stratmann fails to plead related racketeering activity.</u>

Stratmann also fails to plead a pattern of racketeering activity. "The pattern requirement . . . acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions." *Menasco, Inc.*, 886 F.2d at 683. To establish a pattern, "a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). To be related, predicate acts must have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and [not be] isolated events." *Id.* at 240 (quoting 18 U.S.C. § 3575(e)).

Here, Stratmann has not sufficiently alleged relatedness, nor can he. He addresses this element only twice, and both times undercuts himself. First, he alleges a "coordinated replacement" of SYG's assigned representative with a successor, Brad Meide—a "replacement-representative pathway" he says is "further documented" in conduct involving Jonathan Kappack, Meide, and Seakeeper personnel Chris Klepping and Paul Forsythe. (ECF 76 at 5.) However, he immediately disclaims that these associations are "pleaded for the limited purpose of establishing the continuity and relationship elements of the RICO 'pattern.'" (*Id.*) Second, he uses the Cobia DC-33/SK2 Warranty Event—a dispute over an allegedly defective stabilizer unit—and the litigation posture of Steven Ivankovich, who Stratmann alleges operates roughly 175 affiliated LLCs, to assert the same limited purpose. (*Id.* at 6.) This repeated disclaimer, appearing twice in the counterclaim, confirms that Stratmann cannot plausibly allege that the predicate acts share the same purposes, results, participants, victims, or

---

[12] These deficiencies are compounded by Stratmann's failure to satisfy Rule 9(b)'s particularity requirements, discussed above.

methods of commission.

    3.   <u>Stratmann fails to plead continuity.</u>

Stratmann also fails to plausibly allege continuity. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition" *H.J. Inc.*, 492 U.S. at 241. Significantly, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242; *Colombian Air Force Purchasing Agency (ACOFA) v. Union Temporal OVL CVRA Helicopteros 2018 LLC*, 2023 WL 3568115, at *4-6 (S.D. Fla. May 18, 2023) (finding plaintiff failed to establish RICO continuity where the alleged mail and wire fraud arose from a single scheme with a discrete goal, a single victim, and no plausible threat of future criminal conduct). Stratmann fails to allege whether the predicate acts demonstrate closed or open ended continuity. In any event, he cannot establish either.

Stratmann alleges, at most, a single scheme with a single commercial objective and a single set of victims. Courts have rejected closed-ended continuity where the alleged acts were "narrowly directed towards a single fraudulent goal," involved a "limited purpose," or involved only "one set of victims." *Menasco*, 886 F.2d at 684; *Al-Abood*, 217 F.3d at 238–39; *see also Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015); *Ward v. Nierlich*, 617 F. Supp. 2d 1226, 1238 (S.D. Fla. 2008) ("one scheme, causing harm to a few victims, and causing one injury does not create close-ended continuity").

Open-ended continuity is absent because the alleged scheme has an alleged endpoint: termination of SYG's dealer relationship. The Fourth Circuit has held that a plaintiff cannot demonstrate open-ended continuity where the alleged racketeering activity has a "built-in ending

point" and does not threaten long-term criminal activity. *US Airline Pilots Ass'n v. AWAPPA, LLC,* 615 F.3d 312, 318–20 (4th Cir. 2010) (quoting *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001)). Stratmann pleads no facts showing that alleged fraud against dealers is Seakeeper's regular way of doing business. *See GE Inv.*, 247 F.3d at 549; *US Airline Pilots,* 615 F.3d at 319-20; *Sterling*, 943 F. Supp. 2d at 589–90. Rather, Stratmann's own allegations establish the termination of SYG's dealer relationship and therefore cannot demonstrate open-ended continuity. (ECF 76 at 2–3.)

Stratmann's own pleading[13] and own parallel litigation further undermines his continuity allegations.[14] Stratmann therefore cannot establish a pattern of racketeering activity, and his RICO claim fails as a matter of law.

4.  Stratmann fails to plead an association-in-fact enterprise.

To state a RICO claim, a plaintiff must plausibly allege that the defendants operated or managed an enterprise distinct from the defendant itself. 18 U.S.C. § 1961(4); *Boyle v. United States*, 556 U.S. 938, 946 (2009). RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). An association-in-fact enterprise must possess three structural features: "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity

---

[13] Similar to his "relatedness" argument, he twice imports allegations about non-parties—the "replacement-representative pathway" and conduct by Steven Ivankovich and his roughly 175 affiliated LLCs, discussed above—admitting each time that these facts serve only "the limited purpose of establishing the continuity and relationship elements of the RICO 'pattern.'" (ECF 76 at 5, 7.) That conduct has no connection to the dealer-termination dispute he alleges, and a plaintiff cannot manufacture continuity by importing tangential non-party conduct to dress up what is, at bottom, a discrete, concluded dispute.

[14] Stratmann has filed a separate civil RICO action against Steven Ivankovich in the Southern District of Florida (No. 26-61150), which his Notice of Related Cases describes as involving "predicate-act overlap" with this action. (ECF 16-4.) Stratmann cannot simultaneously maintain in that lawsuit that Ivankovich operates a distinct enterprise engaged in a pattern of misconduct against Stratmann and SYG, while asserting here that Ivankovich-adjacent conduct establishes continuity for a supposedly different enterprise involving Seakeeper and Madison Industries. This judicial-admission inconsistency is independently fatal to any claim of a cognizable RICO pattern.

sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Stratmann's counterclaim fails to adequately plead an association-in-fact enterprise for two independent reasons.

First, Stratmann's alleged enterprise fails the distinctness requirement. Section 1962(c) requires a RICO "person" and a RICO "enterprise" that is "not simply the same 'person' referred to by a different name." *Bailey v. Atl. Auto. Corp.*, 992 F. Supp. 2d 560, 581–83 (D. Md. 2014) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). Courts applying Fourth Circuit law have rejected RICO distinctness where the alleged enterprise is merely the defendant corporation and its corporate family or agents acting through normal business structures. *See United States v. Crysopt Corp.*, 781 F. Supp. 375, 380–81, 385–86 (D. Md. 1991) (under Fourth Circuit precedent, a RICO defendant must be legally distinct from the enterprise; a corporation and its wholly owned subsidiaries are not sufficiently distinct); *Toucheque v. Price Bros. Co.*, 5 F. Supp. 2d 341, 346–47 (D. Md. 1998) (corporate defendant could not also be the RICO enterprise).

Here, Stratmann's alleged "enterprise" consists of Seakeeper, its parent company Madison Industries, unidentified executive officers, and vague "vendor and counsel participants." (ECF 76 at 11.) His allegations describe ordinary Seakeeper business conducted via its corporate structure and agents, not a distinct RICO enterprise. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355–58 (11th Cir. 2016) (corporation is not distinct from an alleged enterprise consisting of the corporation and its officers, agents, and employees acting within their corporate roles); *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211-16 (11th Cir. 2020) (RICO enterprise allegations failed where they described defendants' ordinary business initiatives, even if allegedly fraudulent).

Stratmann's attempt to characterize executive officers as acting "in their individual capacities" fails because his own pleading describes no conduct outside their corporate roles—the alleged

25

misconduct is terminating a dealer agreement, sending demand letters, and consulting with the parent company. (ECF 76 at 4–5). A corporate defendant is not distinct from an alleged RICO enterprise made up of the corporation's own officers, agents, and employees acting within the scope of their corporate roles. *Ray*, 836 F.3d at 1355–58 (a corporation "cannot act except through its officers, agents, and employees," and pleading an enterprise made up of the corporation and those actors would merely refer to the corporate person by another name). Adding Madison Industries does not cure the defect. The District of Maryland has recognized that RICO distinctness may be lacking where, as here, a parent and its wholly owned subsidiaries are both the alleged RICO persons and the sole members of the association-in-fact enterprise. *Bailey*, 992 F. Supp. 2d at 581–83. And under Fourth Circuit precedent, corporations and wholly owned subsidiaries are not sufficiently distinct for RICO purposes merely because they are separately incorporated. *Crysopt*, 781 F. Supp. at 380–81, 385–86. Stratmann's allegation that "operational decision-making was being driven by the legal function of Madison Industries" (ECF 76 at 4) therefore alleges only ordinary parent-subsidiary oversight and corporate legal direction, not a distinct criminal association.

Second, Stratmann's allegations are too conclusory to establish the structural attributes required under *Boyle*. Applying *Boyle*'s three structural features confirms the deficiency: (a) *Purpose*—the counterclaim describes no common purpose separate from Seakeeper's lawful business operations; (b) *Relationships*—the counterclaim never identifies who the "vendor and counsel participants" are or what role each played; and (c) *Longevity*—the counterclaim alleges a "continuing organization" only in conclusory terms, without any factual timeline establishing an ongoing structure independent of the alleged predicate acts. Where the alleged enterprise's existence is defined entirely by the same acts alleged as predicate offenses, the enterprise allegation is circular and insufficient.

5.   Stratmann fails to plead an agreement for the alleged RICO conspiracy.

26

A RICO conspiracy claim requires proof that each defendant knowingly agreed to participate in the enterprise's affairs through a pattern of racketeering activity. *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985); *see also Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008). To state such a claim, a plaintiff must allege facts showing "that [the defendant] adopt[ed] the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997). Conclusory allegations of a conspiracy are insufficient. *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995); *accord Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1366 (S.D. Fla. 2015).

Stratmann's conspiracy count is textbook conclusory pleading. Count VIII alleges only that "Seakeeper conspired with Madison Industries personnel and other identified co-conspirators to violate 18 U.S.C. Section 1962(c)." (ECF 76 at 12). This bare recitation of statutory elements fails to allege when any agreement was formed, who specifically participated, what conduct manifested the agreement, or who these "identified co-conspirators" even are. This bare-bones allegation cannot satisfy RICO's pleading requirements. (*See also supra* Section II.)

6. Stratmann's RICO conspiracy claim fails with the substantive RICO claim.

Finally, because Stratmann fails to plead a substantive RICO claim, his conclusory RICO conspiracy claim similarly fails. *See GE Inv.*, 247 F.3d at 551 n.2 ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim fails as well."); *see also Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) ("Thus, where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails.").

Independently, Stratmann's conspiracy claim fails under *Beck v. Prupis*, 529 U.S. 494 (2000), which requires a civil RICO conspiracy plaintiff be injured by an overt act that is itself an act of

27

racketeering—not merely by an act taken in furtherance of the conspiracy. *Id.* at 505–07. Count VIII identifies no overt act distinct from the deficient predicate acts pleaded in Count VII.

### F.  Count IX (Constructive Trust / Unjust Enrichment)

In Count IX, Constructive Trust / Unjust Enrichment, Stratmann asserts that Seakeeper knowingly and without payment retained:

> (a) Mr. Stratmann's $793,002 (or its traceable equivalent), (b) the locked inventory, (c) the commercial benefit of the Cobia / SK.2 Resolution conferred without compensation as pleaded in Section H (including the Resolution Units - three SK35s and one SYG-stocked SK26 - and the preserved Marine Connection / Cobia / Maverick-Boats channel value), and (d) the value of the Gyro-Interceptor Market Research used in Seakeeper's interceptor-market crossover as pleaded in Section l, against the rights of Mr. Stratmann.

(ECF 76 at 12.) Stratmann requests this Court impose a constructive trust over these items. (*Id.*) The Court should dismiss the unjust enrichment claim because (1) Stratmann fails to allege that he directly conferred a benefit to Seakeeper and (2) Stratmann fails to allege entitlement to a constructive trust.

1.  <u>Stratmann fails to allege that he directly conferred a benefit on Seakeeper.</u>

To state a claim for unjust enrichment under Florida law, a plaintiff must allege that "(1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F. Supp. 3d 1247, 1254 (N.D. Fla. 2020). Regarding the first element, the plaintiff must *directly* confer a benefit to the defendant. *Id*; *see also Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011) ("A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment.").

Here, Plaintiff fails to plausibly allege that he directly conferred a benefit to Seakeeper. As discussed throughout this motion, Seakeeper's entire business relationship was with SYG, not Stratmann individually. Each of the items that Stratmann alleges benefited Seakeeper flowed through

28

SYG, not Stratmann, if at all. The alleged $793,002 and inventory are both related to SYG's inventory, not Stratmann personal property. (ECF 76 at 12.) The "Resolution Units" refers to "three Seakeeper Model SK35 units, together with one SYG-stocked Seakeeper Model SK26 unit[.]" (*Id*. at 7, 12.) Again, Stratmann's own allegations establish these were not Stratmann's units. Finally "the value of the Gyro-Interceptor Market Research used in Seakeeper's interceptor-market crossover," was a benefit allegedly conferred by SYG, not Stratmann. (*Id*. at 12.) Stratmann alleges that, "[d]uring the course of the *dealer relationship*," Seakeeper diverted "commercial value of that research that would otherwise have inured *to SYG and its dealer position*." (*Id*. at 8 (emphasis added).) Stratmann's allegations establish that if any benefit was conferred to Seakeeper it was conferred through its dealer relationship with SYG, not directly from Stratmann.[15]

2. <u>Stratmann fails to allege entitlement to a constructive trust.</u>

For Stratmann's unjust enrichment claim, he seeks only the "imposition of a constructive trust." (*Id*. at 12.) Under Florida law, a plaintiff seeking a constructive trust must allege "(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment." *United States v. Diaz*, 2023 WL 7036721, at *4 (S.D. Fla. Oct. 26, 2023) (dismissing a constructive trust claim). Plaintiff does not even attempt to plead a promise or a confidential relationship. Nor can he. As discussed throughout this motion, and as alleged by Stratmann, Seakeeper's business relationship was with SYG, not Stratmann individually. Seakeeper made no promises to Stratmann, of any kind. For this same reason, Seakeeper has never had a confidential relationship with Stratmann. *See RRC Aruba, Ltd. v. Lionstone Grp., Inc.*, 2006 WL

---

[15] How Seakeeper unjustly benefited from its relationship with SYG is unclear in any event. The $793,002 was purportedly for inventory and inventory related charges, and Stratmann does not allege that SYG did not receive its end of the bargain in these transactions. Stratmann only alleges that later, Seakeeper terminated its relationship with SYG and sent demand letters directing SYG to not sell the inventory. (ECF 76 at 3.) Regarding the inventory, Seakeeper could not have received any benefit as Stratmann alleges that the inventory was stolen. (*Id*. at 3–4.) And what alleged benefits Seakeeper received from the supposed "Resolution Units" and "Market Research" is entirely unclear from Stratmann's AI-drafted complaint.

8433543, at *5 (S.D. Fla. June 12, 2006) (dismissing constructive trust claim for failing to plead a confidential relationship and noting that even the existence of a contract is not sufficient to establish such a relationship).

Moreover, the Court cannot impose a constructive trust over the listed property. Stratmann asks this Court to place money in a constructive trust—the $793,002 as a well as amounts for alleged "commercial benefit" from the resolution of a warranty dispute and "value" of market research. (ECF 76 at 12.) A constructive trust is an equitable remedy and is thus not the appropriate tool to recover money damages. *See Omnia Med., LLC v. PainTEQ, LLC*, 2022 WL 3139241, at *7 (M.D. Fla. Aug. 5, 2022). The only non-money property Stratmann seeks to be placed in a constructive trust is the inventory, but Stratmann does not plausibly allege how this property could be placed in a constructive trust given he alleges the property was stolen from a warehouse. (ECF 76 at 3–4.) Nor can Stratmann allege in conclusory fashion that he seeks a constructive trust over the "traceable proceeds" of this property. (*Id*. at 12.) Stratmann must allege specific, identifiable property that can be clearly traced to the plaintiff's assets. *See Sweeteners Plus, Inc. v. Glob. Supply Source, Inc.*, 2013 WL 4495002, at *7 (M.D. Fla. Aug. 19, 2013) ("A plaintiff must allege the basic elements necessary for a constructive trust: fraud by the defendant in obtaining plaintiff's property, and specific identifiable property as the res which can be clearly traced in assets of the defendant, claimed by the plaintiff."); *see also Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995) ("A constructive trust cannot be imposed on general assets.").

## CONCLUSION

For the foregoing reasons, the Court should grant Seakeeper's Motion to Dismiss, with prejudice, and for any other such appropriate relief.

Dated: August 5, 2026          **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Elizabeth A. Wurm*

Emilee P. Schipske (No. 30697)
1500 K Street N.W., Suite 1100
Washington, D.C. 20005
Tel: (202) 230-5139
Fax: (202) 842-8465
emilee.schipske@faegredrinker.com

Traci T. McKee (FL #53088) (*pro hac vice*)
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Tel: (239) 286-6900
Fax: (239) 244-9053
traci.mckee@faegredrinker.com

Elizabeth A. Wurm (MN #0507053) (*pro hac vice*)
2200 Wells Fargo Center 90 S. 7th Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000
Fax: (612) 766-1600
elizabeth.wurm@faegredrinker.com

*Attorneys for Plaintiff Seakeeper, Inc.*

31

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 5, 2026, a true and correct copy of

Plaintiff Seakeeper, Inc.'s Motion to Dismiss, Memorandum in Support thereof, and Proposed Order

were filed using the Court's electronic filing system and served by FedEx Priority Overnight shipping

to the following:


Starboard Yacht Group, LLC
c/o Charles Jacob Stratmann, registered agent
545 NE 17th Ave
Ft. Lauderdale, FL 33301


/s/ Elizabeth A. Wurm_____
Elizabeth A. Wurm