**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SEAKEEPER, INC.**,<br><br>Plaintiff,<br><br>v.<br><br>**STARBOARD YACHT GROUP, LLC**,<br><br>Defendant. | Case No.: 1:26-cv-01332-MJM |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF SEAKEEPER, INC.'S MOTION TO DISMISS INTERVENOR CHARLES JACOB STRATMANN'S COUNTERCLAIMS**

## INTRODUCTION

Every claim that Intervenor Charles Stratmann ("Stratmann") asserts traces back to Defendant Starboard Yacht Group's ("SYG's") dealer relationship with Seakeeper—a relationship in which Stratmann's only role was as the CEO and sole member-manager of SYG. Stratmann's Opposition (incorrectly) argues that he has Article III standing but fails to address, let alone overcome, his lack of prudential standing under the shareholder standing rule. Stratmann's extensive argument that he personally paid money to fund SYG's inventory program does not answer the question Seakeeper's Motion actually presents—whether these claims belong to SYG. They do, and no amendment can change that. The same defect independently dooms Counts II and IX: the funds and benefits Stratmann identifies flowed through SYG's dealer relationship, not through any transaction of his own. Stratmann's Opposition otherwise concedes or effectively abandons his remaining claims, while asking the Court for discovery and leave to amend to find a case he does not have—relief neither Rule 12(b)(6) nor Rule 15 permits. Finally, Stratmann's Opposition was untimely. Accordingly, the Court should grant Seakeeper's Motion to Dismiss. (ECF 80.)

## ARGUMENT

### I. Stratmann's Opposition Does Not Cure His Lack of Individual Standing.

Each of Stratmann's counterclaims are claims held by SYG, not Stratmann individually. Stratmann's entire Opposition, and his counterclaims, pivot on the same alleged financial injury: that because Stratmann funded SYG's inventory and operations by paying $793,002 from his "own accounts" and by pledging his personal home as collateral for a small business loan, he suffered "direct" injuries independent of SYG sufficient to confer Article III standing. Even if this were sufficient to confer Article III standing (it is not), Stratmann fails to address the central argument in Seakeeper's Motion—that Stratmann lacks prudential standing (*i.e.*, the claim-ownership principle) under Rule 12(b)(6). Stratmann's Opposition never responds to the argument Seakeeper actually

makes. The law on prudential standing and claim-ownership squarely forecloses Stratmann's counterclaims. Stratmann does not, and cannot, plead around this fatal defect.

### *A. Stratmann Does Not, and Cannot, Establish Prudential Standing, Requiring Dismissal Under Rule 12(b)(6).*

Stratmann devotes substantial argument to contending that he has suffered an injury in fact—personal payments from personal accounts—that satisfies threshold Article III standing requirements. (Opposition, ECF 85 ("Opp."), at 12–15.) But Stratmann wholly ignores the central premise of Seakeeper's Motion, brought under Rule 12(b)(6), which rests on the shareholder standing rule—a prudential, non-jurisdictional limitation on who may assert a claim, not a challenge to whether Stratmann suffered a concrete injury for purposes of Article III standing. (*See* Seakeeper Mem. in Support of Mot. to Dismiss, ECF 80-1 ("Mem."), at 3 ("Stratmann asserts legal rights which belong to SYG; therefore, Stratmann lacks prudential standing and his claims must be dismissed.").)[1]

The shareholder-standing rule, which the Fourth Circuit most recently named the "claim-ownership principle," does not turn on whether the plaintiff suffered an injury in fact under Article III, but rather asks whether the asserted claim belongs to the shareholder or to the business entity. *See In re Total Auto Fin. LLC*, No. 25-1490, 2026 WL 2251900, at *1, 3–11 (4th Cir. Aug. 5, 2026). Under this principle (previously considered a form of prudential standing), a shareholder generally may not assert a claim belonging to the corporation, even when the shareholder suffers personal losses resulting from the same alleged wrong. *Id.*; *Franchise Tax Bd. v. Alcan Aluminum Ltd.,* 493 U.S. 331, 336 (1990); *Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 347-48 (4th Cir. 2013).[2]

---

[1] The distinction is not academic: Article III standing is addressed through Rule 12(b)(1), while prudential standing is addressed through Rule 12(b)(6). *See Harris v. Wells Fargo Corp.*, 2023 WL 155244, at *2 (D. Md. Jan. 11, 2023).

[2] Courts in the Eleventh Circuit similarly enforce the shareholder standing rule, regularly dismissing under Rule 12(b)(6) claims brought by individual shareholders that are owned by the company. *See, e.g.*, *Lubin v. Skow*, 382 F. App'x 866, 871–72 (11th Cir. 2010) (rejecting a "derivative claim disguised as a direct claim" and holding that personal financial exposure resulting from harm to the entity does not transform derivative injuries into direct claims); *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581, 2019 WL 6206836, at *2–3 (S.D. Fla. Nov. 21, 2019) (holding

The Fourth Circuit's decision last month in *In re Total Auto Financing LLC* set forth the doctrine and its application in detail. There, the Fourth Circuit unequivocally held that the claim-ownership principle "is not part of Article III's jurisdictional limit. It is a rule about the merits: who owns the claim." 2026 WL 2251900, at *1; *see also id.* at *6 ("When a plaintiff improperly seeks to bring a true derivative claim as a direct claim, it's a merits problem. That plaintiff has no claim at all. A court should therefore deal with that defect under the normal standards for dismissing meritless claims." (internal citations omitted)).

Like Stratmann here, the plaintiffs in that case were owners of an LLC who allegedly personally guaranteed the company's debts, invested their own money in the LLC, and suffered direct economic injury when the LLC defaulted on its obligations and was forced to file for bankruptcy. *Id.* at *3–5. The owners sued other parties that had prior business relationships with the LLC, asserting breach of contract, unjust enrichment, negligence, conspiracy, and tortious interference. *Id.* at *1–3. The Fourth Circuit held that the contract and tort claims belonged to the LLC rather than to the owners individually, and therefore were subject to dismissal under the claim-ownership principle. *Id.* at *8–11. The court reasoned that any harm to the owners' equity in the company was a "classic case for a derivative claim," and "[a] recovery by [the LLC] for its direct injury would remedy any harm to the [guarantor-owners] in their role as guarantors." *Id.* at *9 n.12 (internal citation omitted).

The parallel to this case is unmistakable. Stratmann is the sole member of SYG. He claims he invested personal money into SYG's dealer relationship with Seakeeper and that he personally guaranteed an SBA EIDL loan for which SYG was the borrower. (Counterclaim, ECF 76 ("Countercl.") at 2.) He claims SYG was harmed by Seakeeper's conduct during and in terminating the dealer relationship with SYG, which exposed Stratmann, as SYG's sole member-manager, to

---

sole owner lacked standing because the operative contract and business relationships belonged to the LLC and afforded him no individual rights).

financial injury. (*Id.*) But just as the *Total Auto Financing* plaintiffs' personal investments and status as loan guarantors did not transform the LLC's claims into their own personal claims, Stratmann's alleged personal funding of SYG's inventory program and EIDL loan guarantee does not transform SYG's claims against Seakeeper into his own. *In re Total Auto Fin. LLC*, 2026 WL 2251900, at *8–11.[3]

### *B. Artful Pleading Cannot Cure Stratmann's Lack of Standing.*

Stratmann attempts to avoid inevitable dismissal under the shareholder standing rule by arguing the allegations in his counterclaim distinguish SYG's injuries from his own individual injuries. But "a plaintiff cannot turn a derivative action into a direct one through artful pleading—courts look at substance, not labels." *Id.* at *5. Each of Stratmann's arguments fails based on the substance of his own allegations.

Stratmann's counterclaim pleaded two distinct financial injuries which he claims confer standing: (1) contributing $793,002 from his "own accounts" to fund SYG's Seakeeper inventory, and (2) pledging his personal home as collateral for an EIDL loan. (Opp. at 13.) In his Opposition, Stratmann effectively concedes that his status as a guarantor of SYG's EIDL loan does not confer standing under established Fourth Circuit law. (*Id.* at 14 ("Mr. Stratmann . . . acknowledges that *Painter's Mill* addressed and rejected a guaranty-based theory on the facts before it. He does not rest on it." (internal citation omitted)).) As set forth below, his other stated basis fares no better.

#### 1. <u>Stratmann's "Two Ledgers" Theory Is a Fiction.</u>

Stratmann's Opposition attempts to construct a firewall between his claims and SYG's by invoking "two ledgers"—corporate payments on one side, his personal payments on the other. But his own allegations refute this argument. The $793,002 was paid, by his own admission, "for inventory

[3] Nor can Stratmann bring a pro se shareholder derivative action under Federal Rule of Civil Procedure 23.1. Like claims brought by SYG directly, a plaintiff in a shareholder derivative action must be represented by counsel. *See* L.R. 101.1(a); *Bluefeld v. Cohen*, No. CV PX 15-2857, 2017 WL 1546406, at *3 (D. Md. Apr. 27, 2017) (collecting cases), *aff'd*, 697 F. App'x 788 (4th Cir. 2017).

and inventory-related charges"—SYG's inventory, under SYG's dealer agreements. (Countercl. at 3; Opp. at 17.) The loss of the value of Stratmann's money flows from the loss of the value of SYG's inventory and assets. These are textbook derivative injuries: financial harms suffered by a member because of alleged wrongs to the company. Stratmann's loss of funds which he voluntarily used to pay for SYG's business expenses, and his contingent liability as SYG's guarantor, does not create a direct injury sufficient to establish standing to assert claims against Seakeeper. *See Lawrence v. DAP Prods., Inc.*, 2022 WL 2275595, at *3 (D. Md. June 23, 2022) (finding sole owner and sole shareholder lacked standing for breach of contract between his company and a defendant, "even if he personally suffered injury as a consequence").

The Fourth Circuit squarely addressed this in *Painter's Mill*. There, the court rejected the identical argument—that principals had individual standing because they personally guaranteed the company's obligations and lost profits due to harm to the company. *Painter's Mill*, 716 F.3d at 347–48. The court held that by electing to do business through an LLC, the principals "gave up standing to claim damages to the LLC, even if they also suffered personal damages as a consequence." *Id.* at 347–48. Like the plaintiffs in *Painter's Mill*, Stratmann's financial injuries are "derived entirely from the injury [his] company allegedly sustained." *Id.* at 349.

Stratmann tries to distinguish *Painter's Mill* by arguing it "bars a member from suing for injury to the company" but "does not immunize a defendant who took the member's own property." (Opp. at 2.) But Stratmann does not allege that Seakeeper "took [his] own property." The "property" alleged in Stratmann's counterclaim is money he voluntarily contributed to or on behalf of *SYG*, to fund *SYG's* business operations, so that *SYG*—not Stratmann—could purchase Seakeeper inventory. Indeed, Stratmann concedes he does not hold title to the Seakeeper inventory that SYG purchased with Stratmann's money. (Opp. at 8 ("The Counterclaim does not plead that Mr. Stratmann held title to those

four [Seakeeper] units in his individual name."); *id.* at 9–10 ("Mr. Stratmann does not allege that he personally purchased, or was the payor of record for, any particular Seakeeper unit.").) A member who capitalizes his LLC and then claims injury when the company's assets lose value is asserting the quintessential derivative claim. *See, e.g.*, *Dwyer v. Zuccari*, No. CV RDB-19-1272, 2020 WL 1308282, at *7–9 (D. Md. Mar. 19, 2020) (dismissing for lack of prudential standing claims brought by businessowner who claimed he had standing because "he was the sole source of funding for [the company], which lost money as a result of [defendant's actions]," reasoning that even if plaintiff had Article III standing, "[u]nder the shareholder standing rule, only [the company] can sue for an injury it has suffered, even if the injury ultimately redounds to its sole shareholder.")

In sum, Stratmann's purported "direct injury" theory is not "direct" at all: it depends on payments he cannot identify, for inventory he does not claim to own, under contracts to which he was not a party, in a business relationship between Seakeeper and SYG. That is not a direct injury—it is a derivative injury dressed up with a "personal funds" label.

2. <u>Stratmann Has No Independent Relationship With Seakeeper Which Could Give Rise to Any Contract or Tort Claims.</u>

Stratmann's other allegations further confirm the derivative nature of his claims. He alleges that "SYG and Seakeeper entered into a written Dealer Agreement," that SYG performed as the dealer under that Agreement, that Seakeeper terminated "the dealer relationship" with SYG, and that Seakeeper locked "SYG's existing inventory." (Countercl. at 2–4.) The entire chain of alleged harm runs through SYG. The relationships Stratmann alleges as the basis for his tort and contract claims, including the dealer contracts and the customer relationships and business opportunities they generated, were never his to begin with. *See, e.g., Lawrence,* 2022 WL 2275595, at *3 (sole owner and shareholder could not pursue individual breach-of-contract claim arising from contract between his company and defendant). Stratmann does not allege any independent relationship—contractual or

otherwise—between Seakeeper and Stratmann, individually, as opposed to Seakeeper and SYG, in which Stratmann participated solely in his capacity as SYG's CEO and sole member-manager. Nor does Stratmann allege a single customer relationship held by him individually, rather than by SYG, which was harmed by Seakeeper's allegedly tortious conduct.

3. Stratmann's "Contradiction" Argument Is a Red Herring.

Stratmann's most creative, but nonetheless unavailing, argument is that Seakeeper "contradicts itself" by arguing Counts I–II are contractual disputes while arguing Counts III–IV fail because Stratmann is not a party to the contracts. (Opp. at 2.) There is no contradiction, on either standing or substantive grounds. As to standing, the injuries alleged belong to SYG regardless of whether framed in contract or tort. Analyzed as contract claims, Stratmann is not a party to the contracts. Analyzed as tort claims, SYG—not Stratmann—allegedly had its inventory converted or stolen by Seakeeper; Stratmann allegedly contributing money to SYG's business to fund the inventory purchases does not create a direct claim for theft or conversion between Seakeeper and Stratmann.

***C. Every Allegation in the Counterclaim Traces to SYG, Not Stratmann.***

Stratmann spends much of his Opposition setting forth, in hard-to-understand fashion, additional "facts" and allegations not pled in his counterclaims. (*See* Opp. at 4–12.) The Court must disregard these submissions for at least two reasons. First, Stratmann's own description of the "evidence" confirms that the "inventory lock" alleged in the counterclaim was directed at SYG as part of Seakeeper's termination of SYG as an authorized dealer, not at Stratmann individually. (*See, e.g.*, Opp. at 6–7 (describing Seakeeper termination notice to *SYG* which included an offer to repurchase SYG's remaining inventory); *id.* at 7 (describing Seakeeper communication to *SYG* stating Seakeeper would not accept any further orders from *SYG*, that Seakeeper intended to inform *SYG's* customers that *SYG* was not an authorized Seakeeper dealer, and directing *SYG* to remove all Seakeeper material from SYG's website).) Stratmann's own Opposition concedes that the "account-level restriction" that

Seakeeper allegedly wrongfully imposed was "a restriction on ***SYG's*** Seakeeper account as a whole." (Opp. at 7 (emphasis added).) Stratmann's own Opposition makes clear that Stratmann has not identified, and cannot identify, any injury independent of that allegedly suffered by SYG.

Second, the evidence is not properly before the Court. On a Rule 12(b)(6) motion to dismiss, the Court may not look beyond the pleadings and any contracts that form the central basis of the counterclaims. *See Kumar v. First Abu Dhabi Bank USA N.V.*, No. CV ELH-20-1497, 2020 WL 6703002, at *4 (D. Md. Nov. 13, 2020) (granting motion to dismiss under Rule 12(b)(6) and declining to consider plaintiff's emails and personal documents submitted in opposition).[4]

In sum, none of Stratmann's "evidence"—which is not properly before the Court in any event—supports his counterclaims, further demonstrating that any further amendment would be futile. (*See infra* at Section II.)

## II. Dismissal Should Be With Prejudice.

Stratmann's lead argument against dismissal with prejudice is that he deserves leave to amend because this is his "first pleading." But the test is whether amendment would be futile, not how many times a plaintiff has amended. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).[5]

### *A. The Standing Defect Is Structural and Cannot Be Cured.*

No amount of repleading can change the fundamental fact that Seakeeper's business relationship was with SYG, not Stratmann. Stratmann cannot amend his way into a relationship that does not exist. His "two ledgers" theory fails not for lack of factual detail, but because even if every payment came from his personal accounts, those payments funded SYG's business—making his

[4] Moreover, the "evidence" referenced in Stratmann's Opposition was not attached as exhibits to his Opposition (the exhibits were filed nearly a week later), and the exhibits eventually submitted are purported reproductions summarizing the referenced documents, not actually reflecting the documents themselves. (*See* ECF 88.)

[5] Nor does the Court's August 12, 2026 Order (ECF 82) support Stratmann's argument: it was an evidentiary ruling on a compliance motion—unrelated to Stratmann's counterclaim or any other pleading—and has no bearing on whether amendment would be futile or dismissal with prejudice is warranted. (ECF 82 at 3.)

injuries derivative as a matter of law. Courts routinely dismiss with prejudice where, as here, the standing defect is structural. *See Hoang v. Prince George's Cnty.*, No. GLS-23-1272, 2024 WL 4108531, at *6 (D. Md. Sept. 5, 2024) (dismissing sole owner's claim with prejudice for lack of prudential standing because the alleged injury belonged to the business entity, not the individual plaintiff); *Dwyer*, 2020 WL 1308282, at *9–11 (same); *In re Total Auto Fin. LLC*, 2026 WL 2251900, at *1 ("[a] stakeholder in a business—like a shareholder or member of an LLC—cannot personally bring a claim that belongs to the business"). No additional facts would change who owns the claims here.

### *B. Dismissal of Stratmann's Claims Does Not Adjudicate SYG's Rights.*

Stratmann argues that dismissal with prejudice would effectively adjudicate SYG's rights. It would not. The issue is whether Stratmann may pursue these claims individually, not whether SYG has claims of its own. Courts routinely distinguish the two. *See Bluefeld*, 2017 WL 1546406, at *3–4 (holding shareholder lacked prudential standing and could not proceed pro se on the corporation's behalf). A ruling that Stratmann cannot assert SYG's claims recognizes that those rights belong to SYG; it does not preclude SYG from asserting them. Nor does SYG's lack of counsel change that conclusion. LLCs may appear in federal court only through licensed counsel, and a member may not evade that rule by reasserting the entity's claims as his own. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993); *Cluck-U Corp. v. C.U.C. of Md., Inc.*, No. DKC-10-2105, 2010 WL 3516937, at *1 (D. Md. Sept. 7, 2010).[6]

## III. Stratmann's Opposition Concedes Or Abandons Multiple Claims.

[6] Even if the Court permits amendment, Stratmann's concessions narrow the field. Counts VII and VIII (RICO) and Count IV (implied covenant) have structural defects no amendment can cure: the RICO enterprise cannot be pleaded because Stratmann cannot identify participants outside the Seakeeper/Madison corporate family, and Maryland does not recognize an independent implied-covenant claim. The Court should dismiss those counts with prejudice and limit any leave to amend to Counts I, II, and IX, where Stratmann claims curable deficiencies. But even as to those counts, Stratmann's lack of prudential standing remains fatal: no amendment changes the fact that the claims belong to SYG, not Stratmann.

Stratmann's Opposition concedes or effectively abandons the following claims:

***A. Count IV (Implied Covenant of Good Faith and Fair Dealing)***

Stratmann concedes this count outright, acknowledging "Maryland does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing" and asking the Court to "merge" it into Count III. (Opp. at 19.) But there is no standalone claim to merge. Count IV should be dismissed with prejudice.

***B. Counts VII & VIII (RICO and RICO Conspiracy)***

Stratmann admits "the defect is real" regarding the RICO enterprise distinctness requirement. (Opp. at 21.) He acknowledges that the enterprise as pleaded—Seakeeper plus its corporate family—does not satisfy the requirement that the RICO "person" and the "enterprise" be distinct. *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001).

That concession alone warrants dismissal, and Stratmann's request for another chance to plead a different enterprise does not save the counts. Leave to amend may be denied where amendment would be futile. *Foman*, 371 U.S. at 182. Stratmann does not identify who the purported "distinct participants" are which he claims he could identify in an amended pleading, what role they allegedly played, or how they would cure the distinctness defect. Nor does he explain how amendment would remedy the other independent failures in his RICO causes of action, including the absence of any adequately pleaded predicate acts, any pattern of racketeering activity, or any continuity. (*See generally* Mem. at 19–28.) Having already conceded the enterprise is defective, Stratmann cannot avoid dismissal by asking for a chance to discover whether a different enterprise might exist—that is speculation, not amendment. The RICO counts should be dismissed with prejudice.

***C. Count VI (FDUTPA)***

Stratmann "accepts that FDUTPA limits recovery to actual damages" and that his damages allegations "exceed that measure," characterizing the remedy as amendment rather than dismissal.

(Opp. at 21.) But the damages concession is only one deficiency; Stratmann also fails to allege any unfair or deceptive act within the meaning of FDUTPA. (*See* Mem. at 17–19.) Stratmann fails to address the other grounds Seakeeper raised for dismissal, thus conceding them. *See Frye v. Webster*, No. CV GLR-24-2839, 2026 WL 294931, at *5 (D. Md. Feb. 4, 2026) ("As numerous courts in the Fourth Circuit repeatedly have held, a litigant's failure to address arguments in responding to dispositive motions amounts to a concession of such arguments."). Terminating a dealer relationship and enforcing contractual and IP rights is ordinary commercial conduct, not an unfair or deceptive practice. Combined with the standing defect, Count VI should be dismissed with prejudice.

### *D. Count I (Civil Theft—Felonious Intent)*

Stratmann does not defend his failure to plead felonious intent. That is a concession that the current pleading is deficient. *Frye*, 2026 WL 294931 at *5. And while he "requests leave to plead the factual basis for intent with particularity," he fails to identify in his opposition any factual basis that could cure this defect—because none exists. (Opp. at 19.) Moreover, Stratmann concedes he never served the statutory pre-suit demand required under Fla. Stat. § 772.11. (Opp. at 18.)

Moreover, Count I fails on a third independent ground which no amendment could cure: civil theft, like conversion, requires that the funds at issue be specific and identifiable, and Stratmann now admits he cannot identify which payments came from him versus SYG. (Opp. at 10.) *See Toms v. State Farm Life Ins. Co.*, No. 8:21-cv-736-KKM-JSS, 2022 WL 2758212, at *2 (M.D. Fla. July 14, 2022) (requiring that converted funds be specific and identifiable). As explained below with respect to his conversion claim, Stratmann cannot meet this element, requiring dismissal. *See infra* Section IV.A.

### *E. Count V (Tortious Interference)*

Stratmann admits he cannot identify any specific customer relationship with which Seakeeper

allegedly interfered. As a result, he effectively concedes that any amendment would be futile.[7] This is not a case where additional fact pleading would cure the deficiency. Tortious interference requires that the defendant be a "stranger" to the business relationship, *see M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1339 (11th Cir. 2020), and Seakeeper is no stranger to these relationships. It holds a "beneficial or economic interest in, or control over" them under the dealer agreements. (Mem. at 16.) In addition, Stratmann does not refute that Seakeeper was enforcing its IP rights and dealer-agreement terms after termination, conduct that is privileged and cannot support a tortious interference claim. *Tenet Solutions, LLC v. Amberstone Enterprises LLC,* No. 21-80649-CIV, 2021 WL 4991299 (S.D. Fla. July 16, 2021). Most fundamentally, Stratmann does not allege that he ever had a dealer relationship with Seakeeper individually. His customer relationships, to the extent they exist, derive entirely from SYG's dealer position. Each of these defects is fatal to his tortious interference claim.

### *F. Count III (Breach of Contract)*

Although Stratmann does not expressly concede Count III, his Opposition confirms the operative agreements were between Seakeeper and SYG, executed by SYG's authorized representative. (Countercl. at 2.) His "third-party intended beneficiary" theory fails because Maryland law is "quite restrictive" on that issue and there is no evidence Seakeeper and SYG intended to recognize Stratmann as the primary party in interest. *Amaya v. DGS Constr., LLC*, 2019 WL 3945933, at *4–5 (D. Md. Aug. 21, 2019). (*See generally* Mem. at 13–15.)

Taken together, Stratmann has effectively conceded or abandoned Counts I, III, IV, V, VI, VII, and VIII. He does not defend the lack of pleading of felonious intent or the absence of a statutory

---

[7] While Stratmann "requests leave to amend to name specific relationships following production," (Opp. at 20), he fails to identify any such relationships in his Opposition—because none exist. Nor would further discovery change that fact. As the allegedly aggrieved party, Stratmann has full knowledge of which, if any, of his individual relationships have allegedly been harmed by Seakeeper's tortious interference.

demand (Count I); he concedes that the operative contracts are between Seakeeper and SYG while relying on an untenable third-party-beneficiary theory (Count III); he asks to merge the implied-covenant allegations into Count III (Count IV); he seeks discovery to identify customers whose identities, if they existed, he would already know, and which are necessary to support tortious interference (Count V); he accepts that his FDUTPA damages allegations exceed the statute's limits (Count VI); and he admits the RICO enterprise-distinctness defects and fails to respond to the other defects (Counts VII and VIII). The Court should therefore dismiss all seven counts with prejudice.

## IV. Stratmann's Remaining Counts II (Conversion) and IX (Constructive Trust / Unjust Enrichment) Fail.

Stratmann's Opposition concedes all but two of the counts in his counterclaim. *(See supra* Section III.) His remaining two claims for conversion and "constructive trust/unjust enrichment" continue to be defective and also should be dismissed with prejudice.

### *A. Count II (Conversion)*

Even accepting Stratmann's narrowed theory—that Count II seeks the return of money rather than SYG's inventory—Stratmann's own allegations confirm the $793,002 pleaded was used to fund SYG's inventory and/or operational expenses as a Seakeeper dealer, personally funded by SYG's sole member. Writing a personal check to pay a corporate vendor does not create a separate tort claim. The payment discharges SYG's obligations, and any recovery therefore runs through SYG. *See Lawrence*, 2022 WL 2275595, at *3.[8]

Moreover, the funds are not "specific and identifiable," a required element of conversion under Florida law. *Toms*, 2022 WL 2758212, at *2. Stratmann admits he cannot identify which payments came from him versus SYG and requests leave to amend to "plead the transfers individually." (Opp. at

[8] If, for example, SYG had not paid Seakeeper the money owed for Seakeeper products, then Seakeeper could not have recovered the amount due from Stratmann directly, because SYG, not Stratmann, owed Seakeeper. The converse is equally true: SYG, not Stratmann, owns any claim for conversion or theft of corporate assets by Seakeeper.

10, 17.) Repleading would not cure the defect. Stratmann concedes that he "does not allege that he personally purchased, or was the payor of record for, any particular Seakeeper unit." (*Id.* at 10.) As a result, any amendment would be futile, because he concedes he lacks any evidence that the $793,002 was "delivered at one time and in one mass" or that the money remained segregated and separately identifiable in a separate account, as required to maintain a conversion claim. *Toms*, 2022 WL 2758212, at *3; *see also Epoch Int'l Partners, LLP v. Bigfoot Inc.*, 587 F. Supp. 3d 1214, 1221 (S.D. Fla. 2022) (dismissing conversion claim where plaintiff failed to allege funds were to be held in a trust account of another segregated and identifiable account).

### *B. Count IX (Constructive Trust / Unjust Enrichment)*

Stratmann's final count, for "unjust enrichment" seeking a "constructive trust," similarly fails to state a claim upon which relief can be granted as to Stratmann. Any unjust benefit allegedly conferred on Seakeeper flowed through its dealer relationship with SYG, not directly from Stratmann. Stratmann argues the benefit was conferred "directly" because his payments went to Seakeeper. (Opp. at 22.) But the payments were for SYG's inventory under SYG's dealer program—Stratmann's own pleading confirms as much. (*See, e.g.*, Countercl. at 3, 9.)

Stratmann's Opposition also asserts that he supplied individual "personal effort" as part of a warranty resolution dispute and market research, for which he claims Seakeeper received an unjust benefit. (Opp. at 7–8, 23; Countercl. at 5–7, 12.) But the gravamen of his allegations makes clear that these benefits were provided to Seakeeper by SYG, and any "personal effort" that Stratmann expended was in his capacity as CEO/an employee of SYG and done on behalf of SYG. (*See, e.g.*, Opp. at 8 (confirming the Seakeeper units used in the warranty resolution were not owned by Stratmann and "moved through the SYG dealer channel"); Countercl. at 8 (alleging "the commercial value of that [market] research [] would otherwise have inured to SYG" if not improperly diverted by Seakeeper).) Even under his own allegations, any benefits Seakeeper retained from Stratmann's "personal effort"

were due to and flowed from Seakeeper's relationship with SYG, not any independent relationship with Stratmann.

Nor does it matter that a constructive trust is a remedy rather than a standalone cause of action. (Opp. at 22.) The remedy is unavailable because the underlying claim for unjust enrichment fails. A constructive trust requires a promise, transfer, confidential relationship, and unjust enrichment, *see United States v. Diaz*, 2023 WL 7036721, at *4 (S.D. Fla. Oct. 26, 2023), and Stratmann pleads none of the first three as to Seakeeper. There was no confidential relationship between Seakeeper and Stratmann individually—only the arm's-length commercial relationship between Seakeeper and SYG.

**V. Stratmann's Opposition Is Untimely.**

Finally, Stratmann's Opposition is untimely. Seakeeper filed its Motion on August 5, 2026; Stratmann's opposition deadline was August 19, 2026. *See* L.R. 105.2(a). Stratmann filed his opposition on August 21, 2026 and served it on August 24, 2026. (ECF 85.) Stratmann's Opposition incorrectly represents that it is timely, when it is not. (Opp. at 5.)

Whether to consider an untimely opposition rests in this Court's discretion. *See Jennings v. Hous. Auth. of Balt. City,* No. 13-cv-2164, 2015 WL 1085574, at *4 (D. Md. Mar. 10, 2015). And where, as here, a party fails to timely rebut a motion to dismiss, the Court may treat those grounds as conceded and dismiss on the uncontroverted bases the motion asserts. *See Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 515 (D. Md. 2016); *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). Stratmann's tardiness is part of a broader pattern of flouting the Court's orders, ignoring the Court's rules and procedures, and mischaracterizing the record. As a result, the Court is well within its discretion to deem Seakeeper's Motion unopposed.

## **CONCLUSION**

For the foregoing reasons and those set forth in Seakeeper's opening brief, the Court should grant Seakeeper's Motion to Dismiss, with prejudice, and for any other such appropriate relief.

Dated: September 4, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Elizabeth A. Wurm*
Emilee P. Schipske (No. 30697)
1500 K Street N.W., Suite 1100
Washington, D.C. 20005
Tel: (202) 230-5139
Fax: (202) 842-8465
emilee.schipske@faegredrinker.com

Traci T. McKee (FL #53088) (*pro hac vice*)
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Tel: (239) 286-6900
Fax: (239) 244-9053
traci.mckee@faegredrinker.com

Elizabeth A. Wurm (MN #0507053) (*pro hac vice*)
2200 Wells Fargo Center 90 S. 7th Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000
Fax: (612) 766-1600
elizabeth.wurm@faegredrinker.com

*Attorneys for Plaintiff Seakeeper, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on September 4, 2026, a true and correct copy of Plaintiff Seakeeper, Inc.'s Reply in Support of Motion to Dismiss was filed using the Court's electronic filing system and served by FedEx Priority Overnight shipping to the following:

Starboard Yacht Group, LLC
c/o Charles Jacob Stratmann, registered agent
545 NE 17th Ave
Ft. Lauderdale, FL 33301

*/s/ Elizabeth A. Wurm*______
Elizabeth A. Wurm