Charles Jacob Stratmann
Charles Jacob Stratmann, Pro Se (Individually)
545 NE 17th Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 873-8546
Email: jake@starboardyacht.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

Case No.: 1:26-cv-01332-MJM

SEAKEEPER, INC.,

Plaintiff,

v.

STARBOARD YACHT GROUP, LLC, et al.,

Defendants.

# RESPONSE TO ORDER TO SHOW CAUSE (ECF NO. 92) AND VERIFIED DECLARATION OF CHARLES JACOB STRATMANN (INDIVIDUAL CAPACITY ONLY)

Charles Jacob Stratmann ("Mr. Stratmann"), proceeding pro se solely in his individual capacity (and not on behalf of corporate Defendant Starboard Yacht Group, LLC), respectfully responds to the Court's Order to Show Cause entered October 8, 2026 (ECF No. 92) and shows cause why he should not be held in contempt.

## I. THE OCTOBER 6, 2026 STATUS-REPORT DEADLINE WAS MISSED DUE TO DOCUMENTED RESOURCE AND TECHNICAL HARDSHIP — NOT WILLFUL DISREGARD

1. Mr. Stratmann does not dispute that the second verified status report ordered by ECF No. 91 (due October 6, 2026) was not filed on the October 6, 2026 deadline. He acknowledges the missed deadline and respectfully apologizes to the Court.

2. The delay did not result from disregard for the Court's Order, but from documented financial, technical, and multi-forum litigation hardships affecting Mr. Stratmann as an unrepresented individual litigant of limited means:

- **Lack of Counsel and Paid Compliance/Filing Infrastructure:** Mr. Stratmann lacks the funds to retain counsel or paid e-filing/compliance vendors while simultaneously defending parallel federal and state proceedings in Florida and the Eleventh Circuit. Because his PACER account privileges were suspended for unpaid quarterly fees earlier in 2026, Mr. Stratmann relies on free CourtListener/RECAP docket alerts and manual Electronic Document Submission System ("EDSS") uploads rather than automated CM/ECF counsel docketing.
- **Documented Workstation and Storage Exhaustion During the Compliance Window:** While assembling the multi-exhibit hash tables and screenshot verifications for the second verified status report during the first week of October 2026, Mr. Stratmann's primary local workstation experienced repeated system-drive exhaustion events (reaching 0 bytes free on October 7, 2026 and requiring manual recovery across six revisions of the status report packet between October 6 and October 11, 2026), compounded by utility and billing disruptions (including a documented five-hour Florida Power & Light service disconnection on October 16, 2026, and an AT&T Business Wireless invoice dated October 11, 2026 demanding $1,137.85 immediately — following an $800 returned-payment reversal on October 5, 2026 — and warning of service interruption on the wireless account that carries the telephone contact line listed in Mr. Stratmann's filings).

## <u>II. SUBSTANTIAL AND CONTINUING REMEDIATION PERFORMED PRIOR TO AND FOLLOWING ECF No. 92</u>

3. The preliminary injunction concerns references to Plaintiff's marks on web and social-media surfaces. Prior to and following entry of ECF No. 92, Mr. Stratmann conducted a documented, hash-verified remediation program across every surface within his individual control:

- **a. Obscuring Blur Applied to Flagged Media Assets (`Exhibit A` to Second Verified Status Report):** Every source image and video identified in the figures to ECF Nos. 77

and 78 was processed with obscuring blur over all SEAKEEPER wordmarks, dealer signage, and award logos, with SHA-256 source-and-replacement hashes recorded in the Remediation Evidence Supplement.

- **b. Social-Media and Linktree Remediation:** Seven blurred replacement figures were published to the accessible Facebook destination pages on September 1, 2026 (`Salty Marine Service`, `HelmLegal`, `Starboard Group Holdings`, `Salty Marine Batteries`, and `UpgradeGyro`), and the flagged Linktree thumbnails on `linktr.ee/starboardyacht` were deactivated on October 8, 2026. The historical figure on the legacy `Starboard Yacht Group` Facebook page remains open solely because that page is not linked to the currently connected publishing account.
- **c. Owner-Session and Third-Party Platform Constraints (`Instagram` & `Yelp`):** The Instagram media replacements could not be performed through Meta's API (which does not permit media substitution on existing posts) and required owner-session actions on the account-holding device. Those replacements were executed October 21–22, 2026: Figures D, G, F, and H were each archived and republished with mark-obscured media under scrubbed captions (the grid post count was measured increasing from 764 to 767 following republication, and permalink capture for the record supplement is in progress), the third-party tags in Figure E were removed through the owner session on October 22, 2026, and three additional flagged own-grid items were likewise archived and republished with obscured media on October 22, 2026. Figure E remains a third-party account not owned, administered, or controlled by Mr. Stratmann or Starboard Yacht Group, LLC — only the tag association was within the owner session's reach. The remaining open items are awaiting third-party platform support (`Yelp` business photo removal requests submitted July 14, 2026 and September 2, 2026; listing returns `HTTP 403` to unauthenticated requests) or are gated on access that does not currently exist (the legacy `Starboard Yacht Group` Facebook page and the `@captainsalty` Figure HX item).
- **d. Live Website Remediation Deployed and Re-Measured (`October 9–18, 2026`):** On the controlled web domains, remediation was deployed on October 9–10, 2026 and re-measured via automated unauthenticated HTTP/HTML verification through October 18, 2026: (i) `helmlegal.net/seakeeper-genesis` and `www.helmlegal.net/seakeeper-`

genesis return a permanent HTTP 301 redirect to a non-enjoined page (/records/, 0 mark occurrences, sha256=d07458d611d22e43); (ii) the string "seakeeper" occurs **zero (`0`) times** on the public starboardyacht.com homepage, /gyro-ride, and /blog surfaces (sha256=451ec4bacd32b13f); and (iii) on saltymarine.com (which transitioned from a billing-gated HTTP 402 deployment to GitHub Pages, HTTP 200, 48,666 bytes, sha256=22a603ef9eb665d3 (re-measured October 20, 2026), with robots.txt Disallow: /seakeeper deployed), all dealer-status language was removed, while five text-only battery-sizing compatibility references ("Sized for Seakeeper 1-3, Quick MC2 X, and Humphree fin power profiles", technical bulletin citation TB-90621-3, and a third-party trademark-attribution disclaimer) were measured during the October 16–18, 2026 audit and were scrubbed to zero (0) occurrences in the repository HTML source files, deployed to the live site on October 20, 2026, and re-measured post-deployment at zero (0) "seakeeper" occurrences across index.html, battery-sizing.html, gyro-kits.html, services.html, technology.html, compare.html, and faq.html.

## II-A. WHY CERTAIN ITEMS SURVIVED THE JUNE 27 SWEEP — CREDENTIAL CUSTODY AND ACCESS RECOVERY

3a. As previously verified (ECF No. 90 ¶ 5E), Starboard Yacht Group did not maintain centralized enterprise credentials for its social-media properties. Documentary records recovered from the Company's marketing workstation establish why: the accounts had been administered by the Company's former marketing director, Ms. Rosario Chinchilla, together with third-party marketing vendors holding direct publishing access (an SEO vendor that posted monthly to the Company's Facebook and Instagram pages, and a paid-advertising vendor that ran the Plaintiff-marked campaign) and a contracted video creator who produced the published footage. Administrative credentials were kept in a shared passwords document maintained on the Company's SharePoint, which proved incomplete — the workstation's own administrator credential and several critical platform passwords were never recorded on any handover list.

3b. Following the marketing director's September 2024 transition (documented by her dated written handoff of September 18–19, 2024), the unlisted credentials remained solely in her

former possession. Mr. Stratmann later recovered administrator access to that workstation — and, through it, the additional unlisted critical credentials — using the Company's own data-recovery tooling. Thereafter, platform access was re-established individually rather than as a bundle: Facebook Page administration was restored September 1, 2026; LinkedIn and Linktree access followed in September–October 2026; and the Instagram owner session on the Company device was measured in use October 21–22, 2026. Each documented remediation action in the Second Verified Status Report occurred within days of the corresponding access being re-established. The items that remain open (Yelp, the legacy Facebook page, and Figure HX) are those for which access still does not exist.

## III. PRIOR STATEMENTS OF LAW, UNRULED MOTIONS, AND THE DISTINCTION BETWEEN WRITTEN ORDERS, HEARING DISCUSSIONS, AND PLAINTIFF'S STATUS REPORTS

4. **Applicable Contempt Standard and Rule 65(d) Specificity:** Civil contempt requires clear and convincing proof of a knowing violation of a definite and specific court order (*In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995); *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020)), and good-faith inability to comply or dependence on third-party platform actions beyond a party's control is a recognized defense (*United States v. Rylander*, 460 U.S. 752, 757 (1983)). Under Federal Rule of Civil Procedure 65(d)(1)(B)–(C), an injunction binds only to the extent it states its terms specifically and describes in reasonable detail — not by referring to the complaint or another party's status report — the acts restrained or required (*CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 459 (4th Cir. 2000)).

5. **Prior Filings and Unruled Requests on the Docket:** Prior to ECF No. 92, Mr. Stratmann placed before the Court multiple verified declarations, motions, and statements of law seeking clarification, narrowing, or modification of the compliance and bond regime and identifying the technical distinction between active commercial use of a trademark and historical, third-party, or descriptive references:

• **Pending and Unruled Motions:** Mr. Stratmann's *Motion to Order Transcript of the May 11, 2026 Preliminary Injunction Hearing* (**ECF No. 42**, filed June 2, 2026; supplemented by **ECF No. 45**, June 3, 2026) and *Motion to Increase Wrongful-Injunction Bond* under Rule 65(c) (**ECF No. 56**, filed June 10, 2026, addressing the initial `$1.00` bond in ECF No. 26 and `$12,000.00` bond in ECF No. 49 despite stopping inventory sales) remain pending without a ruling. Likewise, Plaintiff's *Motion for Default Judgment* as to Starboard Yacht Group, LLC (**ECF No. 69**, filed July 8, 2026) and Plaintiff's *Motion to Dismiss Counterclaims* (**ECF No. 80**, filed August 5, 2026 — fully briefed through Mr. Stratmann's 26-page *Opposition*, **ECF No. 85**, filed August 21, 2026, *Notice of Filing Exhibits*, **ECF No. 88**, filed September 2, 2026, and Plaintiff's *Reply*, **ECF No. 89**, filed September 4, 2026) remain pending and unruled.

• **Prior Verified Compliance Filings Requesting Scope Clarification:** In **ECF No. 43** (June 2, 2026), **ECF Nos. 61, 62, and 63** (June 30, 2026), **ECF No. 72** (July 13, 2026), and **ECF No. 90** (September 4, 2026), Mr. Stratmann repeatedly documented vendor-controlled, platform-gated, and historical archive constraints and sought guidance on how to reconcile the May 11, 2026, June 3, 2026, June 30, 2026, and July 15, 2026 hearing discussions (**ECF Nos. 19, 44, 64, 74**) with the written orders (**ECF Nos. 26, 49, 65, 82**). Indeed, in **ECF No. 82** (August 12, 2026), the Court *denied without prejudice* Plaintiff's request (**ECF No. 79**) for an order directing third-party platform compliance because the record did not support that relief.

6. **Distinction Between the Written Injunction, Hearing Discussions, and Plaintiff's Unilateral Status-Report Expansions:** A critical distinction exists across three different layers of this record:

• **(a) What the Written Orders Actually Enjoin (`ECF Nos. 26, 49, 65, 82`):** The written orders enjoin use or display of the `SEAKEEPER` marks, holding out as an authorized Seakeeper dealer, or marketing Seakeeper products or services on websites and social media controlled by SYG or Mr. Stratmann, including the platform items referenced in ECF Nos. 77 and 78.

• **(b) What Was Discussed at the Hearings (`ECF Nos. 19, 44, 64, 74`) vs. What Remains Unresolved:** Without the requested May 11, 2026 hearing transcript (**ECF No. 42**, unruled), Mr. Stratmann has had to navigate complex technical questions without

counsel — including whether dated historical references to a 2021 industry award that do not name "Seakeeper", independence/non-affiliation disclaimers, or alphanumeric model-size designators (SK2–SK40 / SK6 battery-load profiles) are prohibited or constitute lawful comparative/descriptive speech under the First Amendment and nominative-use principles (*CPC Int'l*, 214 F.3d at 459). Out of caution, Mr. Stratmann scrubbed all seakeeper strings and compatibility references across starboardyacht.com, /gyro-ride, /blog, and saltymarine.com (0 occurrences) and flagged the SK-series designator question candidly in his Second Verified Status Report (Rev. G, ¶¶ 6, 29).

- **(c) What Plaintiff's Status Reports (`ECF Nos. 38, 58, 66, 73, 77, 78, 86, 86-1`) Assert as "Willful Non-Compliance":** Plaintiff's Sixth Status Report (**ECF Nos. 86 & 86-1**) treats every legacy or third-party artifact as "willful defiance," without distinguishing between: (i) items already remediated (Figure B Facebook cover closed September 3, 2026; Figure C Linktree closed October 8, 2026; Figure I LinkedIn banner blurred September 3, 2026; helmlegal.net/seakeeper-genesis 301-redirected; starboardyacht.com and saltymarine.com at 0 mark occurrences); (ii) third-party accounts neither owned nor controlled by Mr. Stratmann (Figure E); (iii) third-party platforms that have not granted owner access despite written requests since July 14, 2026 (Yelp Figures 1–4); and (iv) historical posts where obscured/blurred replacements are already prepared and hashed (Exhibit A Supplement) awaiting owner-session authentication (Figure A Facebook; Figures D, F, G, H Instagram; Figures I–L LinkedIn text fields). Treating third-party platform friction or unruled scope questions as "willful defiance" conflates inability and good-faith caution with contumacious conduct.

## IV. CURE FILINGS AND COMMITMENT SCHEDULE

7. In compliance with ECF Nos. 91 and 92, Mr. Stratmann submits his Second Verified Status Report (Rev. G) and Remediation Evidence Supplement documenting each completed remediation action and each remaining third-party platform access barrier.

8. Mr. Stratmann commits to completing any remaining owner-session media replacements and text edits within his individual control within **seven (7) days** of this filing (and removing or replacing the SK-series model designators on starboardyacht.com within

the same seven-day window unless the Court or counsel confirms they do not implicate the injunction) and filing a supplemental verification with the Court.

## V. INDIVIDUAL PRO SE POSTURE (ROWLAND v. CALIFORNIA MEN'S COLONY)

9. Corporate Defendant Starboard Yacht Group, LLC is a Florida limited liability company that cannot appear or file papers pro se in federal court (*Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993); D. Md. Local Rule 101.1(a)). No licensed Maryland counsel has appeared for Starboard Yacht Group, LLC due to the entity's lack of operating funds following the events at issue in the parallel Southern District of Florida proceedings. Accordingly, this Response and Verification are submitted solely by Charles Jacob Stratmann in his individual capacity to show cause why he personally should not be held in contempt.

WHEREFORE, Charles Jacob Stratmann, appearing pro se individually, respectfully requests that the Court discharge the Order to Show Cause (ECF No. 92) as to him individually, accept his Second Verified Status Report and Remediation Evidence Supplement, and decline to impose contempt sanctions.

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Charles Jacob Stratmann, declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing statements of fact within my personal knowledge are true and correct.

Executed on October 22, 2026 in Fort Lauderdale, Florida.

______________________________

CHARLES JACOB STRATMANN, Pro Se (Individually)

545 NE 17th Avenue

Fort Lauderdale, FL 33301

Telephone: (954) 873-8546

Email: jake@starboardyacht.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October ____, 2026, the foregoing Response to Order to Show Cause (ECF No. 92) and Verified Declaration was submitted for filing via the Court's Electronic Document Submission System ("EDSS") / Clerk's intake, which generates electronic service via CM/ECF upon all registered counsel of record, and that a courtesy copy was also transmitted by electronic mail to Plaintiff's counsel of record:

Emilee P. Schipske, Esq. (local counsel), Elizabeth A. Wurm, Esq., & Traci T. McKee, Esq. (pro hac vice) — Faegre Drinker Biddle & Reath LLP — emilee.schipske@faegredrinker.com, elizabeth.wurm@faegredrinker.com, traci.mckee@faegredrinker.com

________________________________________

CHARLES JACOB STRATMANN, Pro Se (Individually)